Mary C. Richardson (Bar No. 208586)
Port Attorney
mrichrdson@portoakland.com
Kimberly I. McIntyre (Bar No. 184648)
Deputy Port Attorney
kmcintyre@portoakland.com
**PORT OF OAKLAND**
530 Water Street
Oakland, California  94607
Tel: (510) 627-1572 / (510) 627-1205

Eugene M. Pak (Bar No. 168699)
epak@fennemorelaw.com
**FENNEMORE WENDEL**
1111 Broadway, 24th Floor
Oakland, California  94607
Tel: (510) 834-6600 / Fax: (510) 834-1928

Stephen C. Willey (Bar No. 209164)
swilley@fennemorelaw.com
Brandi B. Balanda (appearance *Pro Hac Vice*-pending)
bbalanda@fennemorelaw.com
Christopher J. Lindemeier (appearance *Pro Hac Vice*-pending)
clindemeier@fennemorelaw.com
**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101
Tel: (206) 749-0500 / Fax: (206) 749-0500

Attorneys for Defendant and Counterclaimant City of Oakland,
a municipal corporation, acting by and through its Board of Port
Commissioners (Port of Oakland)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND AND PORT OF OAKLAND,<br><br>Defendant. | Case No. 3:24-cv-02311-TSH<br><br>**ANSWER TO COMPLAINT AND COUNTERCLAIM OF DEFENDANT CITY OF OAKLAND, A MUNICIPAL CORPORATION, ACTING BY AND THROUGH ITS BOARD OF PORT COMMISSIONERS (PORT OF OAKLAND)**<br><br>**JURY TRIAL DEMANDED** |

1

2   CITY OF OAKLAND, A MUNICIPAL
    CORPORATION, ACTING BY AND
3   THROUGH ITS BOARD OF PORT
    COMMISSIONERS (PORT OF OAKLAND),

4                   Counterclaimant,

5   v.

6   CITY AND COUNTY OF SAN FRANCISCO,

7                   Counterclaim Defendants.

8

9          Defendant City of Oakland, a municipal corporation, acting by and through its Board of

10   Port Commissioners, erroneously sued and served as "Port of Oakland" (the "Port" or "Port of

11   Oakland"), hereby responds to Plaintiff City and County of San Francisco's (the "City") First

12   Amended Complaint ("Complaint") by the below Answer and Counterclaim against the City.[1]

13          The Port's Counterclaim begins at page 10 of this pleading.

14                                          **ANSWER**

15          The Port of Oakland denies the allegations contained in lines 1-12 of page 2 of the

16   Complaint. Regarding the allegations contained in lines 13-14 of page 2 of the Complaint, the

17   Port of Oakland denies the allegations as set forth herein, and denies any remaining allegations

18   contained in those lines. The Port further denies the allegations contained in any headings of the

19   Complaint that are not specifically addressed herein and which purport to contain an allegation

20   against the Port.

21                                      **INTRODUCTION**

22          1.       The Port of Oakland admits that it is an independent department of the City of

23   Oakland and that the Port of Oakland owns and operates an airport located on San Francisco Bay

24   that at times has used the name "Metropolitan Oakland International Airport" (the "Oakland

25   Airport" or "Airport" or "OAK"). The Port of Oakland admits that it issued a press release on

26   March 29, 2024, and states that this press release speaks for itself. The Port of Oakland admits

27

28   _____
     [1] The Answer and Counterclaim are on behalf of the Defendant Port only, not the Defendant City
     of Oakland.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                           CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

that it made available to the public an agenda for a meeting of the Board of Port Commissioners that was held on April 11, 2024, and states that this agenda speaks for itself. The Port of Oakland denies all remaining allegations in Paragraph 1 of the Complaint.

2.      The Port of Oakland admits that including "San Francisco Bay" in the full name of the Oakland Airport incorporates an accurate geographic descriptor of the Oakland Airport's location on San Francisco Bay and that the Port has made public statements in this regard. The Port of Oakland admits that by changing Oakland Airport's full name from Metropolitan Oakland International Airport to San Francisco Bay Oakland International Airport, the Port seeks to increase awareness of Oakland Airport's geographic location on San Francisco Bay among potential travelers and thus increase passenger traffic at Oakland Airport, create jobs, and boost economic activity in Oakland and the wider San Francisco Bay Area. The Port is without knowledge sufficient to admit or deny the allegations regarding the City's goals or positions and therefore denies the City's allegations regarding the same on this basis. The Port denies all remaining allegations in Paragraph 2 of the Complaint.

3.      Denied.

4.      Denied.

5.      The Port of Oakland admits that the Board of Port Commissioners held a meeting on April 11, 2024 at which the Board unanimously approved the first reading of a certain Ordinance, which speaks for itself, the final approval of which requires a second vote by the Board. The Port denies all remaining allegations in Paragraph 5 of the Complaint.

6.      Denied.

**PARTIES**

7.      The Port admits that the City is a municipal corporation organized and existing under the laws of the State of California, with its principal place of business at City Hall, 1 Dr. Carlton Goodlett Place, San Francisco, California 94102-4682. The Port admits that the City has a Charter, and that the Charter speaks for itself. The Port admits that the City owns and operates SFO, through which the City provides airport services to people traveling domestically and/or internationally. The Port denies all remaining allegations in Paragraph 7 of the Complaint.

FINNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM

CASE NO. 3:24-CV-02311-TSH

47623983.2/504638.0215

8.      The Port admits that the City of Oakland is a municipal corporation organized and existing under the laws of the State of California, with its principal place of business at 1 Frank H. Ogawa Plaza, Oakland, CA 94612, and that the City of Oakland conducts business in California and within the Northern District of California. The Port denies all remaining allegations in Paragraph 8 of the Complaint.

9.      The Port admits that the Port of Oakland is an independent department of the City of Oakland, which acts through its own legislative body, the Board of Port Commissioners, and is governed by a Charter, which speaks for itself. The Port admits that it conducts business in California and within the Northern District of California. The Port admits that it owns and operates the Oakland Airport, through which the Port of Oakland provides airport services to people traveling domestically and/or internationally. The Port denies all remaining allegations in Paragraph 9 of the Complaint.

**JURISDICTION AND VENUE**

10.      Denied.

11.      Admitted.

12.      The Port denies that the purported events described in the City's Complaint give rise to the claims asserted herein, but admits the allegations remaining in Paragraph 12 of the Complaint.

13.      The Port admits that Civil Local Rule 3-2 exists and answers that this rule speaks for itself, but denies that the purported events described in the City's Complaint give rise to the claims asserted therein.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

14.      The Port admits that there is a Certificate of Registration No. 4,189,396 for a federal trademark, and that this Certificate speaks for itself. The Port denies all remaining allegations in Paragraph 14 of the Complaint.

15.      Denied, including because the Port lacks information sufficient to answer portions of this paragraph.

16.      The Port admits that there is a Certificate of Registration No. 4,189,396, and that

- 4 -

the Certificate speaks for itself. Portions of Paragraph 16 of the Complaint call for a legal

conclusion, to which no answer is required, and therefore the Port denies those allegations on this

basis. The Port denies all remaining allegations in Paragraph 16 of the Complaint.

17.     The Port admits that the City owns and operates San Francisco International

Airport (SFO). The Port denies all remaining allegations in Paragraph 17 of the Complaint,

including because the Port lacks information sufficient to answer portions of this paragraph.

18.     The Port admits that the City owns and operates SFO. The Port denies all

remaining allegations in Paragraph 18 of the Complaint, including because the Port lacks

information sufficient to answer portions of this paragraph.

19.     The Port admits that it issued a press release on March 29, 2024, and states that the

press release speaks for itself. The Port denies all remaining allegations in Paragraph 19 of the

Complaint.

20.     Denied.

21.     The Port admits that it received certain correspondence and states that any such

correspondence speaks for itself. The Port denies all remaining allegations in Paragraph 21 of the

Complaint.

22.     Denied.

23.     Denied.

24.     The Port admits that its Board of Port Commissioners held a public meeting on

April 11, 2024, and that a public meeting of its Board of Port Commissioners was scheduled for

May 9, 2024. The Port denies all remaining allegations in Paragraph 24 of the Complaint.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

FENWICK WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM
47623983.2/504638.0215

CASE NO. 3:24-CV-02311-TSH

32.     The Port admits that it owns and operates the Oakland Airport. The Port denies all remaining allegations in Paragraph 32 of the Complaint.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

<strong>CLAIMS FOR RELIEF</strong>

39.     The Port incorporates its answers to each of the above paragraphs as its answer to the allegations in Paragraph 39 of the Complaint.

40.     The Port admits that there is a Certificate of Registration No. 4,189,396, and that the Certificate speaks for itself. The Port denies the allegations remaining in Paragraph 40 of the Complaint.

41.     Denied.

42.     Denied.

43.     The Port admits that there is a Certificate of Registration No. 4,189,396, and that the Certificate speaks for itself. The Port denies the allegations remaining in Paragraph 43 of the Complaint.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     The Port incorporates its answers to each of the above paragraphs as its answer to the allegations in Paragraph 49 of the Complaint.

50.     Denied.

51.     Denied.

Fennemore Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM
47623983.2/504638.0215

CASE NO. 3:24-CV-02311-TSH

52.     The Port admits that there is a Certificate of Registration No. 4,189,396, and that the Certificate speaks for itself. The Port denies the allegations remaining in Paragraph 52 of the Complaint.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     The Port incorporates its answers to each of the above paragraphs as its answer to the allegations in Paragraph 61 of the Complaint.

62.     Paragraph 62 of the Complaint calls for a legal conclusion to which no answer is required, and the Port therefore denies the allegations in Paragraph 62 of the Complaint.

63.     Paragraph 63 of the Complaint calls for a legal conclusion to which no answer is required, and the Port therefore denies the allegations in Paragraph 63 of the Complaint.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

## PRAYER FOR RELIEF

1.     The Port denies that the City is entitled to any of the relief it seeks in Paragraph 1 of the Prayer for Relief, including each of the subsections (a) through (g) therein.

2.     The Port denies that the City is entitled to any of the relief it seeks in Paragraph 2 of the Prayer for Relief.

Fennemore Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM

47623983.2/504638.0215

CASE NO. 3:24-CV-02311-TSH

3.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 3 of the Prayer for Relief.

4.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 4 of the Prayer for Relief.

5.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 5 of the Prayer for Relief.

6.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 6 of the Prayer for Relief.

7.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 7 of the Prayer for Relief.

8.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 8 of the Prayer for Relief.

9.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 9 of the Prayer for Relief.

10.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 10 of the Prayer for Relief.

11.      The Port denies that the City is entitled to any of the relief it seeks in Paragraph 11 of the Prayer for Relief.

### AFFIRMATIVE AND OTHER DEFENSES

The Port of Oakland asserts the defenses below based upon the information known to it and without admitting or acknowledging that it bears the burden of proof as to any of such defenses. The Port of Oakland reserves all applicable rights, including the right to assert additional defenses, under Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case, as applicable.

1.      Lack of subject matter jurisdiction.

2.      Failure to state a claim upon which relief can be granted.

3.      Descriptive Fair Use. The City's claims are barred, in whole or in part, by the

doctrine of descriptive fair use, because the Port uses the words "San Francisco" as part of the complete term "San Francisco Bay," which describes the geographic origin of its services given the Airport's physical location on San Francisco Bay.

4.      Misrepresentation of Source. The City's claims are barred, in whole or in part, because the City uses its purported SAN FRANCISCO INTERNATIONAL AIRPORT mark to misrepresent the source of the services as being located in the City and County of San Francisco, when SFO is actually located in San Mateo County, south of the City and County of San Francisco.

5.      Unclean Hands. The City's claims are barred, in whole or in part, by the doctrine of unclean hands because the City uses its purported SAN FRANCISCO INTERNATIONAL AIRPORT mark to misrepresent the source of the services as being located in the City and County of San Francisco, when SFO is actually located in San Mateo County, south of the City and County of San Francisco.

6.      Failure to mitigate alleged damages. If the City has been damaged, which the Port denies, then the City has failed to mitigate any such alleged damages.

7.      Sovereign Immunity. The City's Third Cause of Action fails to state facts sufficient to constitute a cause of action against the Port of Oakland because it seeks recovery on a state common law theory of liability for trademark infringement, and the Port, as a public entity, is not subject to liability on a common law theory. The Port of Oakland invokes California Government Code §§ 815 et seq.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Fennemore Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM                                   CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNTERCLAIM

Defendant and Counterclaimant the Port of Oakland (formally known as the City of Oakland, a municipal corporation, acting by and through its Board of Port Commissioners, erroneously sued and served as Port of Oakland), (the "Port of Oakland" or the "Port"), hereby counterclaims against Plaintiff and Counterclaim-Defendants City and County of San Francisco (the "City") as follows:

## INTRODUCTION

1.      Today, May 9, 2024, the Board of Port Commissioners of the Port of Oakland voted to change the full name of its Airport from "Metropolitan Oakland International Airport" to "San Francisco Bay Oakland International Airport" (referred to herein as the "Airport," "Oakland Airport," or "OAK"). By replacing the generic word "Metropolitan" with the geographic location "San Francisco Bay," the Port aims to bring awareness of Oakland Airport's location on the shores of San Francisco Bay to travelers worldwide, while retaining the entirety of the Port's registered mark, "Oakland International Airport," in the new name.

2.      The Airport's "I FLY OAK" branding and logo will remain the same, reinforcing the Oakland Airport's distinctive brand:



3.      The Airport's three letter IATA code – OAK – will also remain the same. This airport code is the key marker for flight routing, logistics, and connections to ancillary airport services. The Airport's use of its distinct airport code (OAK) provides smooth operations for travelers into the San Francisco Bay Area,[2] and will continue to do so going forward.

4.      Although Oakland International Airport has been located on San Francisco Bay since 1927, many travelers from outside of the Bay Area are unfamiliar with the region's

---

[2] *N.b.*, California law recognizes the San Francisco Bay Area as a specific geographic location defined by certain territorial boundaries. *E.g.*, Cal. Gov. Code § 64502(h) (defining "San Francisco Bay [A]rea" to mean "the entire area within the territorial boundaries of the Counties of Alameda, Contra Costa, Marin, Napa, San Mateo, Santa Clara, Solano, and Sonoma, and the City and County of San Francisco."); Cal. Gov. Code § 66701(i) (defining "San Francisco Bay Area" as meaning and including "the Counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano, and Sonoma.").

FENWICK & WEST
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM
47623983.2/504638.0215

CASE NO. 3:24-CV-02311-TSH

geography. As a result, visitors are often unaware that OAK is a convenient entryway for exploring the San Francisco Bay Area – from its renowned universities, to wine country, to downtown Oakland, Berkeley, San Francisco, and other neighboring cities.

5.      Incorporating OAK's physical location into its formal name will better inform travelers of the Airport's geographic place while retaining its existing branding.

6.      Increased awareness that Oakland Airport is situated on San Francisco Bay will lead to more demand for inbound travel to OAK. This will allow the Airport to attract and maintain more direct routes and flight options for the over 7 million Bay Area residents that the Oakland Airport serves. The majority of those residents are in the East Bay with OAK as their closest airport.

7.      The people who live in San Francisco are also part of the Bay Area community that stands to benefit from more airline route choices and price competition. But rather than support the Port's then-pending name change proposal, the City has expressed aggressive opposition leading up to the Board's vote today.

8.      In addition to a press campaign, the City filed this lawsuit several weeks ago when the Airport was still called the Metropolitan Oakland International Airport.

9.      In its Complaint, the City claims that if the Port incorporates OAK's accurate geographic location on San Francisco Bay into its full name, this will infringe on the City's trademark for its airport (SFO): SAN FRANCISCO INTERNATIONAL AIRPORT.

10.     The City's lawsuit is a disappointing, anticompetitive effort to prevent people from knowing that more than one airport services the San Francisco Bay Area. The City does not own a trademark to "San Francisco Bay." While SFO, which is located south of the City in an unincorporated area of San Mateo County, provides domestic and international flights for travel into the Bay Area and downtown San Francisco, so too does OAK, which sits on waters of the Bay.

11.     Airport passengers can take the San Francisco Bay Area Rapid Transit ("BART") rail directly from both SFO and OAK into numerous locations within the Bay Area, including the City of San Francisco, and beyond.

Fenwick Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

12.     While the City may want to protect SFO from an increase in fair competition that additional airline route choices would bring, changing "Metropolitan" to the accurate geographic identifier "San Francisco Bay" in OAK's full name does not constitute trademark infringement.

13.     By retaining its OAK airport code and visual logos and branding, Oakland Airport stays firmly centered in its Oakland community, while informing prospective travelers and flight search algorithms of its San Francisco Bay location.

14.     Consumers are not likely to be confused about whether SFO and OAK are the same airport.

15.     The Port therefore promptly brings this action seeking a declaratory judgment that: (a) OAK's new full name - SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT - does not infringe on the City's purported trademark for SFO: SAN FRANCISCO INTERNATIONAL AIRPORT (the "SFO Mark"); (b) the name SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT as part of the Airport's I Fly OAK logo does not infringe on the SFO Mark; (c) the name SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT when used with the Airport's IATA code (OAK) does not infringe on the SFO Mark; and (d) that the City does not have trademark rights to SAN FRANCISCO BAY when used in connection with airport services or otherwise.

**PARTIES**

16.     The Port of Oakland is a municipal corporation and independent department of the City of Oakland, duly organized under the laws of the State of California, with its own legislative body and having the powers and duties granted to it by its Charter. Pursuant to Article VII of the Charter of the City of Oakland, the Board of Port Commissioners has complete and exclusive power to act on behalf of the City of Oakland over the Port Area, defined in the City Charter. The Port of Oakland's principal place of business is at 530 Water Street, Oakland, California 94607.

17.     The Port owns and operates Oakland Airport, which is located in the Port Area in Oakland, Alameda County. Through the Oakland Airport, the Port provides airport services to domestic and international travelers.

18.     Plaintiff and Counterclaim Defendant the City is a municipal corporation duly

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM
47623983.2/504638.0215

CASE NO. 3:24-CV-02311-TSH

1  organized under the laws of the State of California, with its principal place of business at 1 Dr.

2  Carlton Goodlett Place, San Francisco, California 94102.

3      19.    The City owns and operates SFO, through which the City provides airport services

4  to domestic and international travelers.

5                        **JURISDICTION AND VENUE**

6      20.    Under 15 U.S.C. § 1121(a), 28 U.S.C. § 1338(a), and 28 U.S.C. § 2201(a), the

7  court has subject matter jurisdiction over the Port's Counterclaims for Declaratory Judgment as

8  alleged herein.

9      21.    The court has personal jurisdiction over the City because the City was formed

10  under the laws of the State of California and resides in this State.

11     22.    Venue in this court is proper under 28 U.S.C. § 1391(b)(1) because the City is a

12  resident of the State of California in which the Northern District of California is located, and

13  under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Port's

14  claim occurred in this District.

15                                **FACTS**

16  **A.    The Port of Oakland on San Francisco Bay**

17     23.    The Port of Oakland currently owns and manages a commercial seaport, nearly 20

18  miles of waterfront, and an international airport – all located on the San Francisco Bay.[3]



---

[3] The image below is taken from: HOME | OaklandPortAlliance.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

24.     In doing so, the Port oversees a vital hub for Bay Area transportation, cargo shipping, and commerce.

25.     Indeed, the Port of Oakland's seaport is the Bay Area's largest and busiest port.

26.     Sitting along the waters of San Francisco Bay, Oakland Airport is an integral part of the Port, adding air travel to the Port's sea and rail transportation.



27.     The importance of the Port of Oakland as a strategic connection point given its location on San Francisco Bay has been recognized for over a century.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

28.     In the early 1920s, demand was growing for a comprehensive program to develop the harbor on San Francisco Bay to accommodate shipping by water and rail, as it was a "favorable situs for the transportation of commerce to domestic and foreign ports and countries by both land and sea."[4]

In the words of the California Supreme Court at the time:

> The importance of the development of the natural harbor and seaport advantages which the city of Oakland, situate on the easterly side of San Francisco Bay, with direct and spacious connection with the Pacific Ocean, offers to the immense agricultural and commercial districts of Northern and Central California, is not questioned. . . .[5]

29.     In response to the growing demand, in 1926, the City of Oakland issued a bond for the acquisition, construction and completion of municipal improvements to further develop the port, and voters approved amending the City of Oakland's Charter to establish an independent port department (the Port of Oakland) "'to promote and more definitely insure the comprehensive and adequate development of the Port of Oakland through continuity of control, management and operation.'"[6]

**B.     In 1927, Oakland Airport is Established in the Port Area on the Bay**

30.     Shortly thereafter, the Oakland City Council expanded the Port's authority to include operation of an airport within the Port Area on San Francisco Bay.

31.     In June 1927, construction on the Oakland Airport began.

32.     When completed, the Airport had a 7,020-foot runway – the longest in the world at the time, and which is still in use today.

33.     Located on the shores of San Francisco Bay, and with its long runway, the Oakland Airport became an instant attraction.

34.     In July and August 1927, the Airport hosted historic flights across the Pacific to Hawaii.

---

[4] *City of Oakland v. Williams*, 206 Cal. 315, 319 (1929).

[5] *Id.* at 319.

[6] *Id.* at 320 (quoting City of Oakland Charter (chapter 7, Stats. and Amdts. 1927, p. 1978); the Charter of the City of Oakland, Article VII, Section 700.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

35.     In September 1927, the Airport was dedicated with Colonel Charles A. Lindbergh presiding over the ceremonies.

36.     By the early 1930s, the Airport had grown to have five hangars, a terminal, a restaurant, and America's first airport inn.

37.     In 1935, Amelia Earhart completed the first solo flight between Hawaii and the US mainland by landing at the Airport.

**C.      In the 20th Century, Oakland Airport Expanded as a Convenient Entry for Travel Into the San Francisco Bay Area**

38.     In the years following World War II, the Port expanded the Airport's facilities, including adding a new jet runway and hangar, passenger terminal, control tower, and air cargo building.

39.     With added facilities and enhanced capabilities, Oakland Airport was positioned to grow in response to the rapid increase in general aviation travel.

40.     In 1954, the Board of Port Commissioners authorized use of the name METROPOLITAN OAKLAND INTERNATIONAL AIRPORT for the Airport.

41.     In the 1970s, the Port advertised Oakland Airport as "The Easy Way Around San Francisco Bay" given its geographic location.

42.     In doing so, the Port featured the Airport's position on the Bay, boasting that "Oakland International's main runway is 10,000 feet long on the shore of San Francisco Bay with completely unobstructed overwater approaches at each end."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                                CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15





16    **D.    In 2009, the Port Launched its I Fly OAK Logo and Branding**

17         43.    In the decades that followed, the Port built additional terminals, and routes to OAK

18    increased as commercial fights became more accessible to the general public.

19         44.    Heading into the early 2000s, the Oakland Airport began a substantial expansion

20    and renovation project, including adding a new concourse, baggage claim, and improving

21    roadways and parking lots.

22         45.    In 2009, the Port partnered with the San Francisco Bay Area Rapid Transit District

23    (BART) to announce the BART-Oakland International Airport Connector project. This project

24    would replace the AirBART bus service with a direct rail connection from Oakland Airport to the

25    Coliseum stop on the BART system, allowing passengers traveling to and from OAK the ability

26    to take the BART rail directly from the Airport into the City of Oakland, downtown San

27    Francisco, and throughout the San Francisco Bay Area.

28         46.    In around December 2009, the Port introduced a brand campaign using the

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                          CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

Oakland Airport's OAK airport code, and started using the following logo for the Oakland Airport:

# I ✈ OAK

47.     Along with the above logo, the Port also started using the trademark THE BEST WAY TO SAN FRANCISCO BAY – a reminder to travelers of the Oakland Airport's prime location on San Francisco Bay.

# I ✈ OAK
### The best way to San Francisco Bay.

48.     The Port has federal registrations for the above combination design and word marks as trademarks owned by the Port for use in commerce in connection with airport services: US Serial No. 88506555/US Registration No. 6122118 and US Serial No. 88506558/US Registration No. 6122119, respectively.

**E.      Despite Being Situated on San Francisco Bay and Connected to Regional Transit, Most Out of State Travelers Are Not Aware of Oakland Airport's Location**

49.     In 2014, BART opened the connector to and from the Oakland Airport.

50.     As a result, Oakland Airport became an even more convenient option for passengers flying into the area to efficiently travel directly from the Airport around the Bay Area.

51.     Travelers can now go from Oakland Airport on the waters of San Francisco Bay into downtown San Francisco, through Oakland north and then out to Berkeley or Walnut Creek, or south towards San Jose.

/ / /

/ / /

/ / /

/ / /

/ / /

Fennemore Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM                                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    52.    Around this same time, the Port's Aviation Division began evaluating inbound

20    traveler awareness of the Airport's geographic location on San Francisco Bay and challenges the

21    Airport faced by the fact that its airport code (OAK) and name (Metropolitan Oakland

22    International Airport) meant that the Airport did not readily appear as a San Francisco Bay Area

23    airport when travelers searched for flight options into the region.

24    53.    In doing so, survey information revealed that the majority of travelers from outside

25    of California – and especially international travelers – were not familiar with where the Oakland

26    Airport was located, let alone that it sits on San Francisco Bay and thus is a convenient option for

27    travel into downtown San Francisco, Berkeley, wine country, and other Bay Area destinations

28    and attractions.

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

54.     A lack of awareness regarding Oakland Airport's location means lower inbound flight demands, which can create challenges regarding carrier recruitment, retention, and route development.

**F.     The Port's Aviation Division Ultimately Recommended the Port Modify the Airport's Full Name By Changing "Metropolitan" to "San Francisco Bay"**

55.     In or about late 2021, the Port's Aviation Division decided to study this issue further as part of its ongoing assessment regarding how Oakland Airport can best serve the region.

56.     Approximately two years of work reaffirmed a continued lack of awareness among potential inbound travelers of Oakland Airport's geographic location on San Francisco Bay.

57.     Because of this lack of knowledge, the majority of out of state and international travelers would not think to search for flights into OAK when traveling to the Bay Area, and the lack of any geographic reference to San Francisco Bay in OAK's full name means that back-end algorithms may not include OAK routes as an option in response to searches for flights into the San Francisco Bay region.

58.     Indeed, this challenge regarding the lack of geographic awareness and thus lower demand for inbound flights to OAK resulted in OAK losing 39 of the 54 direct routes it had gained since 2008.

59.     The Aviation Division therefore decided to evaluate potentially recommending that the Port change the full name of the Metropolitan Oakland International Airport to incorporate the Airport's geographic location on San Francisco Bay.

60.     To determine whether and what recommendation it may make in this regard, the Port's Aviation Division commissioned a branding study and voter polls regarding the concept of a potential name change, and engaged with internal and external Airport stakeholders.

61.     The Aviation Division also reviewed approaches taken by airports in other large metropolitan areas across the world that are served by more than one airport.

62.     In many of those places, the several airports which serve the area begin their names with the same geographic identifier. For example,

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                     CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

(a)     the Chicago area is served by three airports with names that begin with "Chicago": Chicago Midway International Airport (MDW); Chicago O'Hare International Airport (ORD); and Chicago Rockford International Airport (RFD);

(b)     Dallas is served by two airports that have names beginning with "Dallas": Dallas/Fort Worth International Airport (DFW) and Dallas Love Field (DAL);

(c)     London, England is served by six airports with names that begin with "London": London City Airport (LCY); London Gatwick Airport (LGW); London Heathrow Airport (LHR); London Luton Airport (LTN); London Stansted Airport (STN); and London Southend Airport (SEN);

(d)     Two major airports that serve Paris, France include the city at the beginning of their name: Paris Charles de Gaulle Airport (CDG) and Paris Orly Airport (ORY); and

(e)     Both Beijing Capital International Airport (PEK) and Beijing Daxing International Airport (PKX) serve Beijing, China.

63.     After doing these additional surveys, studies, and stakeholder engagement, the Port's Aviation Division decided to recommend to the Board of Port Commissioners that the Port change the generic word "Metropolitan" in "Metropolitan Oakland International Airport" to "San Francisco Bay" so that the Airport's full name would be "San Francisco Bay Oakland International Airport."

64.     Importantly, the Oakland Airport's airport code (OAK) and its visual brand and logo would remain the same:



65.     In late March 2024, after the Aviation Division decided upon the recommendation it would make to the Board of Commissioners, the Port publicized the proposal and included it as an agenda item for discussion and consideration at its upcoming meeting.

66.     In response, the Port received input from neighboring cities, members of the

Fennemore Wendel
Attorneys at Law
Oakland

ANSWER AND COUNTERCLAIM                                                        CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

1  public, politicians, and community groups.

2      67.    Many of them expressed support for the Port's efforts to orient travelers to OAK's

3  location on San Francisco Bay and its desire to attract and retain more direct domestic and

4  international routes to provide increased flight options for Bay Area residents and travelers.

5      68.    The City, however, responded negatively. The City threatened to sue the Port if it

6  moved forward with any modification of OAK's full name to include reference to the Airport's

7  physical location on "San Francisco Bay."

8      69.    While additional flight choices and corresponding price competition in the Bay

9  Area would benefit the City's residents, expanding options for regional travel through more than

10  one airport could mean that more people may choose to fly through OAK rather than SFO.

11      70.    Although disappointed by the City's rhetoric, the Port considered the City's

12  position, remained open to any potentially productive dialogue, and moved forward with public

13  comment and consideration of the proposed name change.

14  **G.    In April 2024, the Board of Port Commissioners Made the First of Two Required Votes on the Proposed Name Change**

15

16      71.    On April 11, 2024, the Board of Port Commissioners held a public meeting to

17  consider the first reading of the Ordinance for the proposed name change.

18      72.    During that meeting, the Port's Interim Director of Aviation ("Aviation Director")

19  presented the Aviation Division's recommendation to change the word "Metropolitan" to "San

20  Francisco Bay" in the Airport's full name to accurately anchor OAK to the geographic region it

21  serves and where it is physically located. In doing so, he discussed key background information

22  upon which the recommendation was based.

23      73.    The Aviation Director also discussed why this update is an important part of the

24  Port's broader efforts to strengthen and grow the airport as one of Oakland's important economic

25  engines.

26      74.    He emphasized that if this proposed modification of the Airport's full name is

27  approved by the Board, the Airport's code (OAK) and existing logo and branding would remain

28  the same. In this regard, the following slide was displayed at the meeting:

Existing Logo



Proposed Logo



75.     Following the Aviation Director's presentation, the Port's Executive Director provided additional comments and discussed feedback the Port had received since issuing the meeting agenda that contained the name change proposal.

76.     In doing so, he highlighted that the purpose of the proposal to modify Oakland Airport's full name is to include a geographic identifier to clarify to the world that OAK is on San Francisco Bay to increase inbound demand and thus create more non-stop flight options for Bay Area residents.

77.     He also reiterated that Oakland Airport would keep its existing airport code – OAK – and I Fly OAK branding.

78.     The Board then heard comments from over a dozen members of the public, each expressing their own opinions and views regarding the proposal.

79.     After public comments concluded, the Port's Executive Director addressed questions.

80.     Board Commissioners then provided comments and discussion, and voted on the first reading of the Ordinance that would change the full name of the Metropolitan Oakland International Airport to the San Francisco Bay Oakland International Airport.

81.     The Board voted unanimously in favor of the Ordinance on this first reading.

82.     That vote, however, did not mean that the Ordinance or proposed name modification went into effect.

83.     Instead, it meant the Ordinance would be further considered and voted upon by the

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

1  Board in a second public meeting.

2       84.    The Board set that second meeting to be held later in May, on a schedule longer

3  than usual, to provide additional time for the Port to receive further public, community, and

4  stakeholder input before the Board's final vote.

5       85.    The Ordinance would only be effective if and after passage of that second future

6  vote.

7  **H.    The City of San Francisco Sued the Port Before the Board's Final Vote or any Name Change**

8

9       86.    Although no name change had gone into effect, and the democratic process was

10  not complete as the Ordinance regarding the proposal was set for a further public meeting and

11  vote, the City nevertheless rushed to file this lawsuit.

12       87.    In it, the City alleges that the Port's "intended use" of San Francisco Bay Oakland

13  International Airport as the full name of its airport will "very likely" confuse travelers who will

14  book flights into OAK when they intend to book flights into SFO.

15       88.    The City further alleges that as a result, use of the full name San Francisco Bay

16  Oakland International Airport for OAK would purportedly infringe on the City's SFO Mark.

17  **I.    Changing OAK's Full Name from Metropolitan Oakland International Airport to San Francisco Bay Oakland International Airport Will Not Cause Confusion**

18

19       89.    Contrary to the City's assertions, consumers are not likely to be confused that

20  OAK and SFO are the same airport or that the City sponsors or is affiliated with OAK.

21       90.    Passengers booking flights into the region, like travelers to other major

22  metropolitan areas throughout the world, understand that the San Francisco Bay Area can contain

23  more than one airport.

24       91.    Importantly, San Francisco Bay Oakland International Airport is retaining its OAK

25  airport code and its I Fly OAK logo and branding:

26



27

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                  CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

92.     Further, it is an airport's code which is the key marker for flight routing, logistics, and connections to ancillary airport services – not its full formal name.

93.     Including an accurate geographic descriptor of OAK's location on San Francisco Bay in its full name does not infringe on the City's SFO Mark. This is especially so when the Airport's name is used with OAK's logo, branding, or airport code.

94.     In the words of retired California Superior Court Judge of San Mateo County, and former member of the San Francisco Board of Supervisors and California State Senator, Quentin Kopp, "Oakland believes it will attract more passengers with such geographical identification. City Hall asserts it will cause travelers 'confusion' and harm SFO income and 'reputation.' I say 'balderdash!' We don't possess a trademark on or own San Francisco Bay." The City's allegations in this regard are "a contrived rationale to thwart a geographical fact."

## CLAIM FOR RELIEF: DECLARATORY JUDGMENT

95.     The Port realleges each of the above paragraphs as if fully set forth herein.

96.     An actual, substantial, definite and concrete dispute exists between the Port and the City regarding trademark infringement and the scope of the City's rights in its SFO Mark.

97.     More specifically, there is an actual, substantial, definite, and concrete dispute between the Port and the City regarding:

        a)      Whether the name SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT infringes on the City's SFO Mark;

        b)      Whether the name SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT when used with the Port's I Fly OAK logo, depicted below, infringes on the City's SFO Mark;



        c)      Whether the name SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT when used with the Airport's code (OAK), infringes on the City's SFO Mark; and

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM                                    CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215

d)      Whether the SFO Mark extends and applies to other marks containing SAN FRANCISCO BAY when used with airport services or otherwise.

98.      Use of  the Airport's name, SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Oakland Airport or the Port of Oakland with SFO or the City of San Francisco, as to the origin, sponsorship, or approval of the Port of Oakland's Airport.

99.      Use of the Airport's name, SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT together with the Airport's I Fly OAK logo, depicted below, is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of OAK or the Port of Oakland with SFO or the City of San Francisco, as to the origin, sponsorship, or approval of the Port of Oakland's Airport.



100.      Use of the Airport's name, SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT together with the Airport's code (OAK), is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of OAK or the Port of Oakland with SFO or the City of San Francisco, as to the origin, sponsorship, or approval of the Port of Oakland's Airport.

101.      The City's trademark rights in its SFO Mark do not extend to marks that contain SAN FRANCISCO BAY when used in connection with airport services or otherwise.

102.      Accordingly, the Port of Oakland is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 as follows, that: (a) use of the name of its Airport, the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT does not infringe on the City's purported SFO Mark under the Lanham Act or common law; (b) use of the name of its Airport, the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT when used together with the I Fly OAK logo does not infringe on the City's purported SFO Mark under the Lanham Act or common law; (c)

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

ANSWER AND COUNTERCLAIM

CASE NO. 3:24-CV-02311-TSH

47623983.2/504638.0215

use of the name of its Airport, the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT when used together with the Airport's code (OAK) does not infringe on the City's purported SFO Mark under the Lanham Act or common law; and (d) the City's trademark rights in its purported SFO Mark do not extend to marks that contain SAN FRANCISCO BAY when used in connection with airport services or otherwise, such that the Port's use of SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT for its Airport does not infringe on any trademark rights of the City.

## JURY DEMAND

Pursuant to Fed.R.Civ. P. 38 and Civil Local Rule 3-6, Defendant and Counterclaimant the Port of Oakland hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant the Port of Oakland prays for judgment as follows:

1. Entry of judgment in favor of the Port of Oakland;

2. Entry of the Declaratory Judgment in favor of the Port of Oakland as set forth above; and

3. Award the Port of Oakland such other relief as the Court deems just and proper.


Dated: May 9, 2024                                  FENNEMORE WENDEL


                                                    By: */s/ Eugene M. Pak*
                                                    Eugene M. Pak
                                                    Defendant and Counterclaimant City of
                                                    Oakland, a municipal corporation, acting
                                                    by and through its Board of Port
                                                    Commissioners (Port of Oakland)

ANSWER AND COUNTERCLAIM                             CASE NO. 3:24-CV-02311-TSH
47623983.2/504638.0215