COOLEY LLP
BOBBY GHAJAR (198719)
JOHN HEMANN (165823)
JUDD D. LAUTER (290945)
3 Embarcadero, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (650) 843-5000
Email: bghajar@cooley.com
       jhemann@cooley.com
       jlauter@cooley.com

DAVID CHIU (189542)
City Attorney
JESSE SMITH (122517)
Chief Assistant City Attorney
YVONNE R. MERÉ (173594)
Chief Deputy City Attorney
JULIE VEIT (209207)
CHRISTOPHER STUART (262399)
Deputy City Attorneys
City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4700
Facsimile:    (415) 554-4757
Email: Cityattorney@sfcityatty.org
       Jesse.Smith@sfcityatty.org
       Yvonne.Mere@sfcityatty.org
       Julie.Veit@sfcityatty.org
       Christopher.Stuart@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF OAKLAND AND PORT OF OAKLAND,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 3:24-cv-02311-TSH<br><br>**DECLARATION OF JESSICA WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

COOLEY LLP
ATTORNEYS AT LAW

I, Jessica Williams, declare:

1.  I am an associate with the law firm Cooley LLP, counsel for Plaintiff in this matter. I submit this declaration in support of Plaintiff's Motion for Preliminary Injunction filed by City and County of San Francisco ("the City" or "Plaintiff") against Defendants City of Oakland ("Oakland Defendant") and Port of Oakland ("Port Defendant" or the "Port", and together referred to as "Oakland" or "Defendants").  I declare that the following is true to the best of my knowledge, information, and belief, and that if called upon to testify, I could and would testify to the following.

**Background on San Francisco International Airport and its Trademark**

2.  Based on my review of public data published by the City's airport ("SFO") concerning its finances, SFO has earned an average annual operating revenue of approximately $1 billion between 2019 and 2023.  Attached hereto as **Exhibit A** are true and correct copies of excerpts of relevant Annual Operating Reports published by SFO and available on https://www.flysfo.com/about/finances.  These reports reflect the foregoing.

3.  On or around September 15, 2024, I conducted a search of references to "San Francisco International Airport" using the "major publications" search available via the legal research service Lexis.  Lexis describes the "major publications" search on its website as containing "selected prestigious newspapers, newswires, and magazines from around the world."  The search returned over 10,000 separate articles dating between 1975 and the present.  A true and correct screenshot of the excerpts of the first search results is attached hereto as **Exhibit B**.

4.  On or around September 15, 2024, I conducted a search on Google using the following combination of the following terms: "san francisco international airport" travel blog.  A true and correct copy of the first three pages of the search results are attached hereto as **Exhibit C**.

5.  On or around September 12, 2024, I conducted a review of references to San Francisco International Airport on online materials published by the popular travel publications Frommer's and Lonely Planet on their respective websites, https://www.frommers.com and https://www.lonelyplanet.com/.  True and correct screenshots of examples of references to "San Francisco International Airport" on those websites are attached hereto as **Exhibit D**.

6.  On September 16, 2024, I conducted a search of the United States Patent &

COOLEY LLP
ATTORNEYS AT LAW

1  Trademark Office ("USPTO") records for trademark filings owned by the City.  USPTO records
2  indicate that the City filed an application for the SAN FRANCISCO INTERNATIONAL
3  AIRPORT mark ("the SF Mark") in connection with "airport services" on September 13, 2011.
4  These records also indicate that the mark matured to registration on August 14, 2012, and was
5  assigned Registration No. 4,189,396.  Attached hereto as **Exhibit E** is a true and correct screenshot
6  of the USPTO's summary of the prosecution history of the '396 registration as well as a copy of
7  the registration certificate for the SF Mark.

8      7.    According to the same USPTO records, on August 30, 2017, the City submitted its
9  combined Declaration of Use and Incontestability under Sections 8 and 15 of the Trademark Act.
10 The submissions were accepted on September 30, 2017.  Attached hereto as **Exhibit F** is a true and
11 correct copy of the USPTO's Notice of Acceptance of the City's submissions, which I captured
12 from the USPTO website.  The USPTO's records indicate that the SF Mark is actively registered.

13 **Background on the Oakland Airport and Its Trademark**

14     8.    In or around September 9, 2024, I conducted a review of the Oakland airport's
15 website.  According to the webpage located at https://www.oaklandairport.com/business/news-
16 media/media-kit/oak-backgrounder/, the airport first opened in 1927 and later opened for
17 commercial activity in 1962.  Attached hereto as **Exhibit G** is a true and correct copy of a
18 screenshot that webpage.

19     9.    Also, in or around September 9, 2024, I conducted a search of the USPTO records
20 for information regarding Oakland's efforts to register the trademark OAKLAND
21 INTERNATIONAL AIRPORT.  USPTO records indicate that the Port of Oakland applied to
22 register the OAKLAND INTERNATIONAL AIRPORT mark in connection with "airport services"
23 on July 9, 2019.  In the application, the Port of Oakland claimed first use of the mark in commerce
24 as early as October 1963.  Attached as **Exhibit H** is a true and correct copy of the Port of Oakland's
25 registration certificate for the OAKLAND INTERNATIONAL AIRPORT mark.

26     10.    Based on my review of USPTO records, on October 1, 2019, the USPTO issued an
27 office action against the Port of Oakland's trademark application, initially refusing to register the
28 OAKLAND INTERNATIONAL AIRPORT mark on the ground that it is primarily geographically

descriptive. On April 20, 2020, the Port of Oakland submitted a response to the Office Action stating that "OAKLAND INTERNATIONAL AIRPORT has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement." The USPTO accepted that response, and the application proceeded to registration. Attached hereto as **Exhibit I** is a true and correct copy of the Port of Oakland's office action response.

11. On or around September 9, 2024, I also visited the social media accounts of the President of the Oakland Port Board of Commissioners Michael Colbruno, including his LinkedIn. While on his LinkedIn page, I observed a post from August 2024 wherein Mr. Colbruno shared a shirt made by Port of Oakland interns that was "inspired by [his] tweets that needled SF for suing us [the Port of Oakland] over the San Francisco Bay Oakland International Airport name change." Attached hereto as **Exhibit J** is a true and correct copy of the post, which I captured from https://www.linkedin.com/posts/michael-colbruno-ab9393_aviation-activity-7217508966900097025-Hwjk/?utm_source=share&utm_medium=member_desktop.

12. On or around September 13, 2024, I reviewed recordings of the Oakland Board of Port Commissioners ("Board") meetings concerning the rebranding of the Oakland International Airport, which took place on April 11, 2024, and May 9, 2024, and which are published on the website located at https://www.portofoakland.com/board/board-meetings/. Based on my review of these recordings, several individuals expressed opposition to or concern about the name change including the NAACP and its Oakland chapter, local frequent flyers, and Oakland residents; they cited the Board's failure to engage the Oakland community prior to the change, erasure of Oakland identity, and likelihood of confusion among the reasons for their opposition. During the April 11, 2024 meeting, the Board voted unanimously in favor of the motion renaming the Oakland airport under the SAN FRANCISCO BAY OAKLAND INTERNATIONAL trademark. The Board also approved a motion to hold the second reading of the ordinance to take place four weeks after the initial reading (May 9, 2024), rather than the customary 2 weeks after the initial reading, citing a desire to allow input from stakeholders whom the Board had not previously engaged. Based on my

COOLEY LLP
ATTORNEYS AT LAW

3

1  review and understanding of the May 9 meeting, the name change was approved during that
2  meeting.

### Oakland's Use the New Trademark

3
4  13.    On or around September 9, 2024, I reviewed the Oakland airport website for its use
5  of the International Air Transport Association ("IATA") code OAK when using the SAN
6  FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT mark (called the "Infringing
7  Mark" in the City's brief and that term is used here for consistency).

8  14.    During this review, I observed that Oakland does not always refer to the Infringing
9  alongside the IATA code. For example, in press releases, the Infringing Mark often appears in the
10 title of the release without the code. Attached hereto as **Exhibit K** are true and correct screenshots
11 of examples of press releases wherein the Infringing Mark is not displayed alongside the IATA
12 code OAK.

13 15.    On or around September 9, 2024, I also reviewed several popular websites used for
14 booking flights, including but not limited to Expedia, TripAdvisor, Google Flights, Agoda, and
15 Skyscanner, among others. I also reviewed the websites of popular car rental services, such as
16 Enterprise and Budget, and the rideshare app Uber. As to each, I observed that the IATA code
17 OAK is often displayed only after the Infringing Mark or the OAKLAND INTERNATIONAL
18 AIRPORT mark, if at all. I also observed a number of published articles referring to the Oakland
19 airport that do not refer to the airport's IATA code or display the airport's logo. True and correct
20 screenshots of these websites, example articles, and/or mobile applications are attached hereto as
21 **Exhibit L**.

22 16.    I also conducted a Google search on or around September 9, 2024, for "SAN
23 FRANCISCO BAY AIRPORT." The first result in response to that search was the City's
24 Wikipedia page, followed by Oakland's website and the City's website for SFO. In addition, SFO
25 is prominently referenced in multimedia search results on the right side of the search results. A
26 true and correct screenshot those search results is attached hereto as **Exhibit M**.

27 17.    I reviewed the Oakland airport's social media accounts and websites from my
28 mobile phone. On X (fka Twitter), the Infringing name truncates in some instances to "San

1  Francisco Bay O…"  A true and correct screenshot of truncated Infringing Mark on X is attached
2  hereto as **Exhibit N.**

3  18.  I also reviewed other references to Oakland's airport online via mobile.  Below is a
4  true and correct screenshot of a reference to SFO in Google search results displaying a truncated
5  version of the Infringing Mark under the "Explore more" banner.



**The City's Evidence of Confusion**

19.  In or around September 2024, I conducted searches across several social media platforms to identify confusion resulting from the Oakland airport's name change.  Based on these searches, I observed several instances of consumer confusion, each of which I captured screenshots of, discussed below.

20.  As a part of this review, I reviewed a reddit post in which a user identified as "orangecatsocialclub" represents that they "picked the wrong airport" despite having flown to both "many times."  Attached hereto as **Exhibit O** is a true and correct screenshot of this post.

21.  I also reviewed several posts on Facebook in which users expressed confusion caused by the Oakland airport's name change.  Attached hereto as **Exhibit P** is a true and correct screenshot of a post by Facebook user Steve Olsch in response to an August 6, 2024 Facebook post

COOLEY LLP
ATTORNEYS AT LAW

1  by the Port, in which Mr. Olsch expresses confusion about the relationship between the parties'
2  airports.

3    22.    Attached hereto as **Exhibit Q** is a true and correct screenshot of a post by Facebook
4  user Jen Pilot in response to a July 19, 2024 Facebook post by the Port, in which Ms. Pilot expresses
5  confusion about the relationship between the parties' airports.

6    23.    As a part of this review, I also looked at posts on Instagram. I observed several
7  Instagram posts in which individuals located at the City's airport tagged their photo using the
8  Infringing Mark. True and correct screenshots of these posts are attached hereto as **Exhibit R**.

9    24.    On September 5, 2024, the San Francisco Bay area media outlet *SFGATE* published
10 an article entitled "OAK Flyers Are Mistakenly Going to SFO Following Airport Rebrand" by Silas
11 Valentino. A true and correct copy of the article is attached as **Exhibit S**, which I collected from
12 the following URL: https://www.sfgate.com/travel/article/sfo-tracks-passenger-confusion-oak-
13 name-change-19742827.php.

14   25.    A user of the social media app Threads described, in response to the *SFGATE* article,
15 having witnessed a woman at SFO who was having a hard time understanding that she unwittingly
16 purchased a ticket to depart from Oakland. A true and correct screenshot of this post is attached
17 hereto as **Exhibit T**.

18   26.    Another commenter, posting on an *SFist* article discussing the *SFGATE* piece,
19 described how a non-native-English speaking member of his partner's family was confused trying
20 to book tickets to SFO for a wedding, and had to be picked up from the Oakland airport. A true and
21 correct screenshot of this post is attached hereto as **Exhibit U**.

22   27.    Multiple individuals described confusion in response to an Instagram post about the
23 *SFGATE* article. One individual described how someone they know "is flying into town tomorrow
24 for the first time and accidentally went to sfo [sic] instead of Oakland," while another nearly
25 reserved transit to the Oakland airport via the rideshare app Lyft, intending to get a ride to SFO. A
26 true and correct screenshot of these posts are attached hereto as **Exhibit V**.

27   28.    In several other instances, commenters responding to a Facebook post about the
28 *SFGATE* article described situations in which they or their friends and family were directed to the

wrong airport by digital assistants and rideshare apps. True and correct screenshots of these posts are attached hereto as **Exhibit W**.

### Use of Certain Brands in the Air Travel Industry

29. On or around September 9, 2024, I consulted data available from the Bureau of Transportation Statistics concerning the largest airlines by domestic market share. The top 5 airlines in this category from June 2023 – May 2024 are Delta, American, Southwest, United, and Alaska. Attached herewith as **Exhibit X** is a true and correct copy of a screenshot of this data collected from https://www.transtats.bts.gov/.

30. On or around September 16, 2024, I searched trademark records for trademark filings owned by American Airlines. I observed that American Airlines owns Registration No. 4939082 for the trademark AMERICAN AIRLINES covering, among other things, "air transport of passengers, cargo, and freight" in Class 39. USPTO records associated with Registration No. 4,939,082 indicate that American Airlines claimed acquired distinctiveness in the AMERICAN AIRLINES mark after the application was refused on March 11, 2015, on the ground that it is geographically descriptive. Attached hereto as **Exhibit Y** is a true and correct screenshot of relevant excerpts of the USPTO's summary of the prosecution history of Registration No. 4,939,082 as well as a copy of the March 11, 2015 office action.

31. On or around September 16, 2024, I searched trademark records for trademark filings owned by Southwest Airlines. I observed that Southwest Airlines owns Registration No. 1738670 for the trademark SOUTHWEST AIRLINES covering, among other things, "transportation services; namely, transportation of cargo and passengers by air" in Class 39. USPTO records associated with Registration No. 1,738,670 indicate that Southwest Airlines claimed acquired distinctiveness in the SOUTHWEST AIRLINES mark. Attached hereto as **Exhibit Z** is a true and correct screenshot of the USPTO's summary of the prosecution history of Registration No. 1,738,670.

32. On or around September 16, 2024, I searched trademark records for trademark filings owned by Alaska Airlines. I observed that Alaska Airlines owns Registration No. 1561416 for the trademark ALASKA AIRLINES covering, among other things, "air transportation services"

in Class 39. USPTO records associated with Registration No. 1,561,416 indicate that Alaska Airlines claimed acquired distinctiveness in the ALASKA AIRLINES mark. Attached hereto as **Exhibit AA** is a true and correct screenshot of the USPTO's summary of the prosecution history of Registration No. 1561416.

33. I also conducted a review of the Airports Council International 2023 Airport Traffic Summary data available from https://airportscouncil.org/. According to this data, the U.S. airports with the highest volume of passengers in 2023 were: (1) Hartsfield-Jackson Atlanta International, (2) Dallas/Fort Worth International, (3) Denver International, (4) Los Angeles International, and (4) Chicago O'Hare International.

34. On or around September 16, 2024, I searched trademark records for trademark filings associated with the Denver International Airport. I observed that The Department of Aviation, City and County of Denver Colorado ("Denver") owns Application No. 9,814,9421 for the trademark DENVER INTERNATIONAL AIRPORT "airport services" in Class 39. USPTO records associated with the application indicate that Denver claimed acquired distinctiveness in the DENVER INTERNATIONAL AIRPORT mark after the application was refused on March 26, 2024, on the ground that it is geographically descriptive. Attached hereto as **Exhibit BB** is a true and correct screenshot of the USPTO's summary of the prosecution history of the application as well as a copy of the March 26, 2024 office action.

35. On or around September 16, 2024, I searched trademark records for trademark filings associated with the Dallas/Fort Worth Airport. I observed that Dallas/Fort Worth International Airport Board ("Dallas") does not own any trademark filings for DALLAS/FORT WORTH INTERNATIONAL AIRPORT. However, it does own Registration No. 7,502,461 for the trademark DFW AIRPORT for "airport services" in Class 39. USPTO records associated with the registration indicate that Dallas claimed acquired distinctiveness in the DFW mark after the application was refused on May 6, 2024, on the ground that it is geographically descriptive. Attached hereto as **Exhibit CC** is a true and correct screenshot of the USPTO's

summary of the prosecution history of the application as well as a copy of the May 6, 2024 office action.

36. On August 27, 2024, the City and Oakland held a mediation before former Magistrate Judge Elizabeth D. LaPorte.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of September, 2024, in Washington, D.C.

*Jessica Williams*