# EXHIBIT BB

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-09-17 03:56:46 EDT |
| **Mark:** | DENVER INTERNATIONAL AIRPORT |

Denver International Airport

| | | | |
|---|---|---|---|
| **US Serial Number:** | 98149421 | **Application Filing Date:** | Aug. 24, 2023 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** |  | | LIVE/APPLICATION/Published for Opposition<br><br>A pending trademark application has been examined by the Office and has been published in a way that provides an opportunity for the public to oppose its registration. |
| **Status:** | Application has been published for opposition. The opposition period begins on the date of publication. | | |
| **Status Date:** | Jul. 23, 2024 | | |
| **Publication Date:** | Jul. 23, 2024 | | |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | DENVER INTERNATIONAL AIRPORT |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |
| **Disclaimer:** | "INTERNATIONAL AIRPORT" |
| **Acquired Distinctiveness Claim:** | In whole |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Airport services | | |
| **International Class(es):** | 039 - Primary Class | **U.S Class(es):** | 100, 105 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Jan. 01, 1994 | **Use in Commerce:** | Jan. 01, 1994 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | The Department of Aviation, City and County of Denver Colorado |
| **DBA, AKA, Formerly:** | AKA Denver International Airport |
| **Owner Address:** | AOB #9810 8500 Pena Blvd.<br>Denver, COLORADO UNITED STATES 80249 |
| **Legal Entity Type:** | municipal corporation |
| **State or Country Where Organized:** | COLORADO |

## Attorney/Correspondence Information

**Attorney of Record**

| | |
|---|---|
| **Attorney Name:** | Vianes Rodriguez |
| **Attorney Primary Email Address:** | vianes.rodriguez@flydenver.com |
| **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Vianes Rodriguez<br>DENVER CITY ATTORNEY'S OFFICE<br>8500 PENA BLVD<br>DENVER, COLORADO United States 80249 |
| **Phone:** | 303-342-2566 |
| **Fax:** | 303-342-2552 |
| **Correspondent e-mail:** | vianes.rodriguez@flydenver.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 23, 2024 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Jul. 23, 2024 | PUBLISHED FOR OPPOSITION | |
| Jul. 03, 2024 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jun. 14, 2024 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jun. 13, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jun. 13, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jun. 13, 2024 | TEAS REQUEST FOR RECONSIDERATION RECEIVED | |
| Jun. 12, 2024 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Jun. 12, 2024 | FINAL REFUSAL E-MAILED | |
| Jun. 12, 2024 | FINAL REFUSAL WRITTEN | |
| May 15, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| May 15, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| May 15, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Apr. 18, 2024 | ASSIGNED TO EXAMINER | |
| Mar. 26, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| Mar. 26, 2024 | NON-FINAL ACTION E-MAILED | |
| Mar. 26, 2024 | NON-FINAL ACTION WRITTEN | |
| Mar. 25, 2024 | ASSIGNED TO EXAMINER | |
| Sep. 25, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Aug. 28, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

**TM Staff Information**

| | |
|---|---|
| **TM Attorney:** | KERTGATE, AMY |
| **Law Office Assigned:** | LAW OFFICE 113 |

**File Location**

| | |
|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION |
| **Date in Location:** | Jun. 17, 2024 |

| | |
|---|---|
| **To:** | Vianes Rodriguez(vianes.rodriguez@flydenver.com) |
| **Subject:** | U.S. Trademark Application Serial No. 98149421 - DENVER INTERNATIONAL AIRPORT |
| **Sent:** | March 26, 2024 07:53:59 AM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

Denver - MW.jpg
Denver - TripAdvisor.jpg
Denver - Colorado Tourism Office.jpg
Denver - Visit Denver Convention & Visitors Bureau.jpg
International Airport - Cambridge.jpg
Airport - MW.jpg
International - MW.jpg
LAS - International Airport.jpg
JFK - International Airport.jpg
ORD - International Airport.jpg

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 98149421

**Mark:** DENVER INTERNATIONAL AIRPORT

 **Correspondence Address:**
 VIANES RODRIGUEZ
 DENVER CITY ATTORNEY'S OFFICE
 8500 PENA BLVD
 DENVER CO 80249
 UNITED STATES

**Applicant:** The Department of Aviation, City and County of Denver Colorado

**Reference/Docket No.** N/A

**Correspondence Email Address:** vianes.rodriguez@flydenver.com

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** March 26, 2024

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## Search Results - No Conflicting Marks Found

The trademark examining attorney has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §1052(d); TMEP §704.02.

## Summary of Issues

- Section 2(e)(2) - Geographically Descriptive Refusal
- Advisory: Amendment to Claim Acquired Distinctiveness under Section 2(f) or Amendment to the Supplemental Register to Overcome Refusal
- Advisory: Disclaimer of Generic Wording if Amending to Claim Acquired Distinctiveness under Section 2(f) or to the Supplemental Register
- Specimen Issue

## Section 2(e)(2) - Geographically Descriptive Refusal

Registration is refused because the applied-for mark is primarily geographically descriptive of the origin of applicant's goods and/or services. Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

A mark is primarily geographically descriptive when the following is demonstrated:

> (1) The primary significance of the mark to the purchasing public is a generally known location;

> (2) The goods or services originate in the place identified in the mark; and

> (3) The purchasing public would be likely to believe that the goods or services originate in the geographic place identified in the mark; that is, to make a goods-place or services-place association.

*See Spiritline Cruises LLC v. Tour Mgmt. Servs., Inc.*, 2020 USPQ2d 48324, at *5 (TTAB 2020) (citing *In re Nantucket, Inc.*, 677 F.2d 95, 96-97, 213 USPQ 889, 891 (C.C.P.A. 1982)); *see also In re Newbridge Cutlery Co.*, 776 F.3d 854, 860-61, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015); *In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re JT Tobacconists*, 59 USPQ2d 1080, 1081 (TTAB 2001)); TMEP §1210.01(a).

Applicant has applied to register the mark DENVER INTERNATIONAL AIRPORT for use in connection with "Airport services" in International Class 039. In this case, the term DENVER is primarily geographically descriptive. DENVER, as shown by the attached dictionary and internet evidence, is a known geographic location as the capital city of Colorado. *See* attached evidence from Merriam-Webster's Dictionary, TripAdvisor, Colorado Tourism Office, and Visit Denver Convention & Visitors Bureau.

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place. *See In re Chalk's Int'l Airline Inc.*, 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03. In this case, the application shows that applicant's address is located in Denver, Colorado. Therefore, the services are rendered at least in part in Denver, Colorado.

A goods-place or services-place association may be presumed where (1) the location in the mark is generally known to the purchasing public, (2) the term's geographical significance is its primary significance, and (3) the goods and/or services do, in fact, originate from the named location in the mark. TMEP §1210.04; *see, e.g.*, *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1705 (TTAB 1988) (finding a services-place association was presumed between applicant's restaurant services and California because the services originated in California); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 850 (TTAB 1982) (finding a goods-place association was presumed between applicant's t-shirts and Denver because the goods had their geographical origin in Denver); *see also In re Nantucket, Inc.*, 677 F.2d 95, 102, 213 USPQ 889, 895 (C.C.P.A. 1982) (Nies, J., concurring) ("[W]e must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business. There is a public goods/place association, in effect, presumed." (internal footnote removed)).

Here because the primary significance of DENVER is to identify a geographic location and applicant's services originate in , purchasers will presume that the term identifies the place from which the services originate.

Although the applied-for mark also includes the wording INTERNATIONAL AIRPORT, this does not change the overall primarily geographic significance of the mark.

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g.*, *Spiritline Cruises LLC v. Tour Mgmt. Servs., Inc.*, 2020 USPQ2d 48324, at *6-7 (TTAB 2020) (holding CHARLESTON HARBOR TOURS primarily geographically descriptive of various travel tour and cruise services because TOURS is generic for the services and CHARLESTON HARBOR is a well-known harbor in Charleston, South Carolina); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853-54 (TTAB 2014) (holding HOLLYWOOD LAWYERS ONLINE primarily geographically descriptive of attorney referrals, online business information, and an online business directory).

In this case, the wording INTERNATIONAL AIRPORT immediately conveys that applicant's airport services are used by international airlines. The term INTERNATIONAL means "of, relating to, or

affecting two or more nations," and the term AIRPORT means "a place from which aircraft operate that usually has paved runways and maintenance facilities and often serves as a terminal." *See* attached dictionary evidence from Merriam-Webster's Dictionary. Individually, these terms convey that applicant's services are international in nature and provide airport services. Taken together, the wording INTERNATIONAL AIRPORT means "an airport used by international airlines, with flights to and from different countries." *See* attached dictionary evidence from Cambridge Dictionary. Further, the wording INTERNATIONAL AIRPORT is commonly used to describe entities that provide such services. *See* attached evidence from John F. Kennedy International Airport, Harry Reid International Airport, and O'Hare International Airport.

Therefore, for the foregoing reasons, the mark is primarily geographically descriptive of the origin of applicant's services, and registration is refused pursuant to Section 2(e)(2) of the Trademark Act.

### Advisory: Amendment to Claim Acquired Distinctiveness under Section 2(f) or Amendment to the Supplemental Register to Overcome Refusal

The applied-for mark has been refused registration on the Principal Register. Applicant may respond by submitting evidence and arguments against the refusal. In addition, applicant may respond by doing one of the following: (1) amending the application to seek registration under Trademark Act Section 2(f), or (2) amending the application to seek registration on the Supplemental Register. *See* 15 U.S.C. §§1052(f), 1091(c).

To seek registration on the Principal Register based on a claim of acquired distinctiveness under Section 2(f), applicant generally may (1) submit actual evidence that the mark has acquired distinctiveness of the goods and/or services, (2) claim ownership of an active prior U.S. registration for the same mark for sufficiently similar goods and/or services, or (3) provide the following verified statement of five years' use: "**The mark has become distinctive of the goods and/or services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least five years immediately before the date of this statement.**" *See* 15 U.S.C. §1052(f); 37 C.F.R. §2.41(a); TMEP §§1212.03-.06 *et seq*.

To amend the application to the Supplemental Register, applicant must provide a written statement requesting that the application be amended to the Supplemental Register. TMEP §816.01; *see* 15 U.S.C. §1091(c); 37 C.F.R. §2.47.

Although registration on the Supplemental Register does not afford all the benefits of registration on the Principal Register, it does provide the following advantages to the registrant:

> (1)    Use of the registration symbol ® with the registered mark in connection with the designated goods and/or services, which provides public notice of the registration and potentially deters third parties from using confusingly similar marks.

> (2)    Inclusion of the registered mark in the USPTO's database of registered and pending marks, which will (a) make it easier for third parties to find it in trademark search reports, (b) provide public notice of the registration, and thus (c) potentially deter third parties from using confusingly similar marks.

> (3)    Use of the registration by a USPTO trademark examining attorney as a bar to registering confusingly similar marks in applications filed by third parties.

(4) Use of the registration as a basis to bring suit for trademark infringement in federal court, which, although more costly than state court, means judges with more trademark experience, often faster adjudications, and the opportunity to seek an injunction, actual damages, and attorneys' fees and costs.

(5) Use of the registration as a filing basis for a trademark application for registration in certain foreign countries, in accordance with international treaties.

*See* 15 U.S.C. §§1052(d), 1091(c), 1094; J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §§19:33, 19:37 (rev. 4th ed. Supp. 2017).

**Advisory: Disclaimer of Generic Wording if Amending to Claim Acquired Distinctiveness under Section 2(f) or to the Supplemental Register**

Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant will be required to disclaim "INTERNATIONAL AIRPORT" because such wording appears to be generic in the context of applicant's goods and/or services. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 144, 196 USPQ 7, 8 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766, 768 (TTAB 1986); TMEP §1213.03(b).

Applicant may submit a disclaimer in the following format:

> **No claim is made to the exclusive right to use "INTERNATIONAL AIRPORT" apart from the mark as shown.**

TMEP §1213.08(a)(i).

For an overview of disclaimers and instructions on how to provide one using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.
Applicant should note the following additional ground for refusal.

**Specimen Issue**

**Specimen does not show direct association between mark and services.** Registration is refused because the specimen does not show a direct association between the mark and the services and fails to show the applied-for mark as actually used in commerce with the identified services in International Class 039. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a), (b)(2); TMEP §§904, 904.07(a), 1301.04(f)(ii), (g)(i). An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark as actually used in commerce for each international class of services identified in the application or amendment to allege use. 15 U.S.C. §1051(a)(1); 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

When determining whether a mark is used in connection with the services in the application, a key consideration is the perception of the user. *In re JobDiva, Inc.*, 843 F.3d 936, 942, 121 USPQ2d 1122, 1126 (Fed. Cir. 2016) (citing *Lens.com, Inc. v. 1-800 Contacts, Inc.*, 686 F.3d 1376, 1381-82, 103 USPQ2d 1672, 1676 (Fed Cir. 2012)). A specimen must show the mark used in a way that would create in the minds of potential consumers a sufficient nexus or direct association between the mark and the

services being offered. *See* 37 C.F.R. §2.56(b)(2); *In re Universal Oil Prods. Co.*, 476 F.2d 653, 655, 177 USPQ2d 456, 457 (C.C.P.A. 1973); TMEP §1301.04(f)(ii).

To show a direct association, specimens consisting of advertising or promotional materials must (1) explicitly reference the services and (2) show the mark used to identify the services and their source. In re The Cardio Grp., LLC, 2019 USPQ2d 227232, at *2 (TTAB 2019) (quoting In re WAY Media, LLC, 118 USPQ2d 1697, 1698 (TTAB 2016)); TMEP §1301.04(f)(ii). Although the exact nature of the services does not need to be specified in the specimen, there must be something that creates in the mind of the purchaser an association between the mark and the services. In re Adair, 45 USPQ2d 1211, 1215 (TTAB 1997) (quoting In re Johnson Controls Inc., 33 USPQ2d 1318, 1320 (TTAB 1994)).

To show a direct association, specimens showing the mark used in rendering the identified services need not explicitly refer to those services, but "there must be something which creates in the mind of the purchaser an association between the mark and the service activity." In re The Cardio Grp., LLC, 2019 USPQ2d 227232, at *1 (TTAB 2019) (citing In re WAY Media, LLC, 118 USPQ2d 1697, 1698 (TTAB 2016)).

In the present case, the specimen does not show a direct association between the mark and services in that it does not show any reference to the identified "airport services".

**Examples of specimens.** Specimens for services must show a direct association between the mark and the services and include: (1) copies of advertising and marketing material, (2) a photograph of business signage or billboards, or (3) materials showing the mark in the sale, rendering, or advertising of the services. *See* 37 C.F.R. §2.56(b)(2), (c); TMEP §1301.04(a), (h)(iv)(C). Any webpage printout or screenshot submitted as a specimen must include the webpage's URL and the date it was accessed or printed on the specimen itself, within the TEAS form that submits the specimen, or in a verified statement under 37 C.F.R. §2.20 or 28 U.S.C. §1746 in a later-filed response. *See* 37 C.F.R. §2.56(c); TMEP §§904.03(i), 1301.04(a).

**Response options.** Applicant may respond to this refusal by satisfying one of the following for each applicable international class:

> (1)   Submit a different specimen (a verified "substitute" specimen) that (a) was in actual use in commerce at least as early as the filing date of the application or prior to the filing of an amendment to allege use and (b) shows the mark in actual use in commerce for the services identified in the application or amendment to allege use. A "verified substitute specimen" is a specimen that is accompanied by the following statement made in a signed affidavit or supported by a declaration under 37 C.F.R. §2.20: "The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application or prior to the filing of the amendment to allege use." The substitute specimen cannot be accepted without this statement.

> (2)   Amend the filing basis to intent to use under Section 1(b) (which includes withdrawing an amendment to allege use, if one was filed), as no specimen is required before publication. This option will later necessitate additional fee(s) and filing requirements, including a specimen.

For an overview of the response options referenced above and instructions on how to satisfy these

options using the online Trademark Electronic Application System (TEAS) form, see the Specimen webpage.

**How to Respond**

**Response guidelines.** For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see the Responding to Office Actions webpage for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/Jessica Lanzi/
Jessica Lanzi
Trademark Examining Attorney
Law Office 113
(571) 270-0427
Jessica.Lanzi@uspto.gov

## RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS) system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.