**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>               Plaintiff,<br><br>   vs.<br><br>CITY OF OAKLAND, AND PORT OF OAKLAND<br><br>             Defendant.<br><br>CITY OF OAKLAND, A MUNICIPAL CORPORATION, ACTING BY AND THROUGH ITS BOARD OF PORT COMMISSIONERS (PORT OF OAKLAND),<br><br>             Counterclaimant,<br><br>   vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO<br><br>             Counterclaim Defendants. | Case No.: 3:24-cv-02311-TSH |

# REPLY REPORT OF SARAH BUTLER

# REPLY REPORT OF SARAH BUTLER

## Table of Contents

**I.  QUALIFICATIONS**   3

**II.  DOCUMENTS REVIEWED**   3

**III.  SUMMARY OF OPINIONS**   3

**IV.  RESPONSE TO SCOTT DECLARATION**   5

   A. The Survey Targeted the Relevant Universe of Consumers   5

   B. The Survey Tests Oakland International Airport's Use of "San Francisco Bay Oakland International Airport" in a Real World Setting   12

   C. The Survey Stimuli Are Realistic, Reflect the Marketplace, and Are Correctly Designed to Isolate the Impact of Oakland International Airport's Use of "San Francisco Bay Oakland International Airport"   20

   D. The Survey Questions Appropriately Measure Potential Confusion Associated with Oakland International Airport's Use of "San Francisco Bay Oakland International Airport"   25

**V.  CONCLUSIONS**   28

# I.    QUALIFICATIONS

1.      I am the same Sarah Butler who submitted an expert report in this matter.[1]

2.      NERA is being compensated for my services in this matter at my standard rate of $825 per hour. Members of the staff at NERA have worked at my direction to assist me in this engagement. No part of my compensation or NERA's compensation depends on the outcome of this litigation. Throughout this report, I have used the terms "I" and "my" to refer to work performed by me and/or others under my direction.

# II.    DOCUMENTS REVIEWED

3.      As part of my work, I reviewed the declaration submitted by Dr. Carol A. Scott.[2] A list of the specific materials I reviewed and relied upon for this report can be found in **Exhibit B.**

# III.   SUMMARY OF OPINIONS

4.      In their response to Plaintiffs' Motion for Preliminary Injunction, Defendants hired Dr. Carol A. Scott to respond to my survey. Dr. Scott did not conduct her own survey. In her report, Dr. Scott mischaracterizes and misrepresents the survey I designed. Dr. Scott focuses much of her report on the population included in my survey and the particular versions of webpages shown to respondents. Dr. Scott claims my survey under-represents Oakland International Airport's "current" market and she bases this criticism on the state of residence for my survey respondents. While I did sample respondents from states that Oakland International Airport suggested it would target with its name change, respondents were not screened out on a basis of their current awareness of, or familiarity with, Oakland International Airport or San Francisco International

---

[1] Declaration of Sarah Butler in Support of the City's Motion for Preliminary Injunction, dated September 10, 2024 (hereinafter, *"Butler Declaration"*).

[2] Declaration of Dr. Carol A. Scott, dated October 8, 2024 (hereinafter, *"Scott Declaration"*).

Airport. In fact, I designed the survey to ensure that half of my respondents have previously traveled by air to Northern California (including those who have flown to San Francisco International Airport, Oakland International Airport, or both). Moreover, surveying both past and prospective purchasers is appropriate for a likelihood of confusion survey.[3] Dr. Scott presents no data to demonstrate that some other set of states would have yielded different results and ignores my data demonstrating that even consumers who have previously traveled to Northern California (again including those who have previously flown to Oakland International Airport and San Francisco International Airport) were confused by the name San Francisco Bay Oakland International Airport.

    5.    Further, to ensure that my survey represented a range of possible ways in which consumers might encounter the name, I tested two different platforms which realistically depicted the appearance of "San Francisco Bay Oakland International Airport." While Dr. Scott does not generally take issue with showing respondents results from searches for flights to the Bay Area, Dr. Scott does criticizes the specific stimuli shown and argues that these platforms currently do not display (or would never display at all) Oakland International Airport's new name. But these arguments are irrelevant as my survey was not testing whether Southwest or Google Flights, specifically, cause consumers to be confused. My survey appropriately tested whether Oakland Airport's new name "San Francisco Bay Oakland International Airport," when appearing in a realistic manner, causes confusion. Respondents in my survey were shown realistic depictions of the name, similar to the manner in which names are displayed in other locations with multiple airports (e.g., New York or Washington, D.C.). Moreover, because Oakland International Airport

---

[3] Diamond, S. S. (2011). "Reference Guide on Survey Research," Reference Manual on Scientific Evidence, Committee on the Development of the Third Edition of the Reference Manual on Scientific Evidence; Federal Judicial Center; National Research Council, pp. 359-423 at p. 239.

only implemented the name change in early May of 2024,[4] it is impossible to know how precisely each website or platform will display the name.

6.      Dr. Scott also claims that asking respondents about the primary airport is inappropriate because it does not provide data as to the geographic location or identity of the airport. Of course, my survey includes a question to determine where respondents believe the San Francisco Bay Oakland International Airport is located and whether they believe this airport is the San Francisco International Airport. Dr. Scott ignores the fact that my survey demonstrates a net confusion rate of 18.5 percent without including results from the question about the "primary" airport.

7.      Finally, throughout her report, Dr. Scott offers numerous theories and hypotheses as to different rates of confusion, but she has no data to support these theories, has not conducted her own survey, and provides no evidence that any alternative set of questions or stimuli would have achieved different results. In total, Dr. Scott offers criticisms that incorrectly characterize the appropriate survey population and stimuli used in my survey, and she ignores data presented throughout my original report that contradict her conclusions.

8.      My detailed response to Dr. Scott is below.

## IV.   RESPONSE TO SCOTT DECLARATION

### A.    The Survey Targeted the Relevant Universe of Consumers

9.      Dr. Scott claims that my sample is under-inclusive and does not include markets that currently account for the largest number of Oakland passengers.[5] For a number of reasons, Dr.

---

[4] https://www.cnn.com/2024/05/10/travel/oakland-airport-name-lawsuit-san-francisco/index.html, last accessed October 21, 2024.

[5] *Scott Declaration*, ¶ 8.

Scott's criticisms are without merit, and she ignores facts and data relevant to the claims in this matter.

10.    First, Dr. Scott's criticism depends on the relevant survey population being that which encompasses Oakland International Airport's "current" markets. In this case, it was important to survey relevant consumers (i.e., those who have or will travel to Northern California by air) in areas where Oakland International Airport itself has suggested its name change will have an impact. Many documents indicate that Oakland International Airport's name change is driven by the desire to solicit passengers from markets it currently does not reach. For example, a March 2024 article by Aviation Week indicated that the name change is "part of efforts to increase geographic awareness among inbound travelers." [6] The article goes on to quote Oakland's mayor, who stated, "Considering a name modification to highlight our location within the vibrant San Francisco Bay Area could offer several benefits. ... Notably, it could support the airport's efforts to secure more direct flights to additional destinations, enhancing convenience for travelers and potentially boosting tourism in Oakland." [7] An April 2024 study commissioned by the Port of Oakland posed this information to local consumers about the reasons for a name change:

> Here is a bit more information. Oakland International Airport is limited in its ability to have airlines offer more flights to international and domestic destinations in the Midwest, the South, and the East Coast, despite demand from outbound Bay Area-based customers. This is due to a lack of demand from inbound passengers from other parts of the country. Many international and domestic passengers that don't live in the Bay Area are unfamiliar with Oakland International Airport and its location. Oakland International Airport has already lost flights and destinations because of this issue. A new name would allow Oakland International Airport to attract more passengers and add more domestic and international flights and destinations to the airport. [8]

---

[6] See, e.g., "Oakland Airport Seeks To Boost Inbound Traffic with Name Change," https://aviationweek.com/air-transport/airports-networks/oakland-airport-seeks-boost-inbound-traffic-name-change, last accessed October 21, 2024.

[7] *Ibid.*

[8] OAK-Branding-Survey-Key-Findings.pdf, p. 2, *emphasis added.*

11.     Press releases from the Port of Oakland indicated that the name change is intended to "boost inbound travelers' geographic awareness of the airport's location,"[9] and reported that the proposed name change was supported by research demonstrating Oakland International Airport's inability to sustain new routes due to travelers' "lack of geographic awareness."[10] The Port of Oakland's Agenda Report from April 11, 2024, described background reasoning for name change as follows:

> However, the further away travelers are from the San Francisco Bay Area region, the less familiar they are with OAK's geographic location and convenience of access to destinations throughout all Northern California.[11]

12.     These materials suggest that Oakland International Airport intended its name change to target individuals unfamiliar with Oakland and its location, and/or consumers who are in markets far from the Bay Area (e.g. Midwest, East Coast, the South). Therefore, despite Dr. Scott's claims that a survey of over 600 consumers from eleven states[12] represents only a "small portion of relevant consumers searching for flights to Northern California who potentially would be exposed to the new name during a search," comments from Oakland International Airport suggest that the name change is specifically directed to those who do not know Oakland and who have not traveled to the Bay Area.[13]

13.     Despite Oakland International Airport's targeting of consumers unfamiliar with the Bay Area, my survey did not target or seek to include only consumers unfamiliar with Oakland or its location. In fact, I designed the survey to ensure that half of my sampled respondents were

---

[9] 2024-03-29 Port Press Release.pdf.

[10] Agenda Report.pdf, p. 1.

[11] *Ibid.*

[12] This includes Washington, D.C.

[13] Dr. Scott does not demonstrate that consumers from Los Angeles or San Diego, for example, would use general search terms, such as "Bay Area" or "Northern California" when looking for flights.

consumers who have traveled to Northern California by air, including respondents who have flown into San Francisco International Airport and/or Oakland International Airport. As a result, the majority of respondents who have traveled to Northern California in my sample had flow to one or both of the airports in this matter and more than one quarter of my respondents indicated that they have flow into Oakland International Airport (27.5 percent). Therefore, while I collected data from respondents living in states that Oakland International Airport suggests it is targeting with its name change, I certainly did not limit my sample to consumers unfamiliar with Oakland or San Francisco.[14]

14.     Dr. Scott both mischaracterizes and misunderstands the sample of consumers in my survey. For example, she claims that my survey sample "excludes entirely 57% of the U.S. population."[15] But this data point is meaningless as it assumes (without foundation) that individuals in these states have all traveled or will travel by air to Northern California. In fact, less than half of the U.S. population *as a whole* has traveled by air in the last year and of course, not all of those travelers have visited Northern California.[16]

15.     Dr. Scott also suggests that my survey is unreliable because it excluded areas that she claims *currently* provide the "most passengers"[17] for Oakland International Airport. But areas such as Los Angeles, Las Vegas, and San Diego have had press coverage related to this litigation in a number of news outlets. It would be inappropriate to survey consumers who may have been

---

[14] Dr. Scott declares that the underserved markets presented in the Port of Oakland's PowerPoint file "41124 Presentation.pptx" refer to "certain airports with no non-stop flights to Oakland" (*Scott Declaration*, ¶ 11). While this may be the case, I did not sample individuals traveling from specific airports but rather screened for consumers in the state who have or will travel to Northern California. Oakland International Airport has non-stop flights from airports in many of these states included in my survey, including Texas, Illinois, and Louisiana, and non-stops flights servicing New York (Newark airport) and Washington, D.C. (BWI). https://www.iflyoak.com/fly/airlines-and-destinations/, last accessed October 21, 2024.

[15] *Scott Declaration,* ¶ 11.

[16] https://www.airlines.org/dataset/air-travelers-in-america-annual-survey/, last accessed October 21, 2024.

[17] *Scott Declaration,* ¶ 11. Dr. Scott provides no data to demonstrate what share of passengers come from the areas she has identified.

exposed to information about the lawsuit, as this may bias the results. For example, consumers in Los Angeles,[18] San Diego,[19] and Las Vegas[20] could have seen reports detailing the dispute in major newspapers and/or television.

16.    Dr. Scott ignores the fact that my sample did include survey respondents from Arizona,[21] and she presents no data to demonstrate that respondents from states such as South Carolina, Maryland, Connecticut, Kansas, or Virginia (not included in the survey and not specifically listed as targeted states by Oakland International Airport), would have differing impressions compared to respondents from North Carolina, Washington D.C., New York, Texas, Louisiana, Ohio, Michigan, Pennsylvania, Florida, or Illinois (all states identified as having a target market that were included in the survey).

17.    Dr. Scott further claims that my sample was "more geographically constrained" because 53 percent of my respondents came from one of three states: New York, Texas, and Florida.[22] Of course, the relative populations of these three states compared to states like North Carolina or Louisiana (also states included in the survey) are significantly larger and therefore would reasonably comprise a larger share of the sample. The relative population distributions (i.e., the population in sample compared to the population of the state 18 years and older) are shown in Table 1 below. These data demonstrate that it is reasonable for my sample to be more heavily weighted to the more populous states.

---

[18] https://kyma.com/news/california-news/2024/04/13/oakland-city-officials-vote-on-airports-name-change/, last accessed October 17, 2024; https://www.latimes.com/california/story/2024-04-18/san-francisco-sues-oakland-over-airport-name-change, last accessed October 18, 2024.

[19] https://fox5sandiego.com/news/national-news/will-cause-confusion-san-francisco-airport-officials-push-back-against-oakland-airports-proposed-name-change/, last accessed October 17, 2024.

[20] https://www.8newsnow.com/news/national-news/will-cause-confusion-san-francisco-airport-officials-push-back-against-oakland-airports-proposed-name-change/, last accessed October 17, 2024.

[21] *Scott Declaration,* ¶ 11.

[22] *Scott Declaration,* ¶ 11.

**Table 1. Comparison of Survey Population to State Population[23]**

| State | Butler Survey | | 2023 Census Estimate | |
|---|---|---|---|---|
| | Count | Percent | Count | Percent |
| New York | 137 | 22.6% | 19,571,216 | 13.6% |
| Texas | 104 | 17.1% | 30,503,301 | 21.3% |
| Florida | 81 | 13.3% | 22,610,726 | 15.8% |
| Pennsylvania | 53 | 8.7% | 12,961,683 | 9.0% |
| Ohio | 52 | 8.6% | 11,785,935 | 8.2% |
| Illinois | 43 | 7.1% | 12,549,689 | 8.7% |
| North Carolina | 41 | 6.8% | 10,835,491 | 7.5% |
| Michigan | 37 | 6.1% | 10,037,261 | 7.0% |
| Arizona | 36 | 5.9% | 7,431,344 | 5.2% |
| Louisiana | 19 | 3.1% | 4,573,749 | 3.2% |
| District of Columbia | 4 | 0.7% | 678,972 | 0.5% |
| **Total Respondents** | **607** | **100.0%** | **143,539,367** | **100.0%** |

Source: NERA Airport Survey, May-June 2024; U.S. Census Bureau

18.     Dr. Scott focuses on the extent to which my sample included specific states and, without foundation or evidence, suggests that the results would have been different had I included other areas. At a minimum, Dr. Scott could have examined the rates of confusion for different geographic areas in my sample, but she did not.

19.     As noted above, my survey included consumers who have flown to Oakland International Airport and San Francisco International Airport (as well as other airports in Northern California). In her focus on state of residence, Dr. Scott further ignores the fact that my sample was comprised of a wide variety of travelers, including[24]:

- 59.5 percent men, 40.4 percent women;

- 45.8 percent ages 18 – 34, 41.5 percent ages 35 – 54, 12.7 percent 55 or older;

---

[23] The total 2023 population estimate from the U.S. Census Bureau was 334,914,895. The states included in our sample would have comprised 42.9 percent of the total U.S. population in 2023. See, https://www.statsamerica.org/sip/rank_list.aspx?rank_label=pop1, last accessed October 18, 2024.

[24] NERA Airport Survey, May-June 2024, presented in *Butler Declaration.*

- Respondents from the Northeast (31.3 percent), the Midwest (21.8 percent), the South (41.0 percent), and the West (5.9 percent).

- Consumers who travel for pleasure (61.4 percent) and those traveling for business and/or business and pleasure (38.3 percent);

- Individuals who would visit a tourist attraction (75.8 percent), rent a car (66.4 percent, or book a hotel room in San Francisco (59.3 percent);

- Infrequent travelers (every 6 months or less, 49.8 percent) and frequent travelers (3 to 4 times a year or more, 49.4 percent);

- Never traveled by air to Northern California (49.6 percent) and those who have traveled by air to Northern California previously (50.4 percent).

20.    Importantly. Dr. Scott ignores the fact that my data demonstrate that confusion rates exceed a net 15 percent for those who have previously traveled to Northern California by air (a net 17.4 percent) and those who are frequent travelers (a net 19.3 percent). These results are shown below in Tables 2 and 3, respectively, and were included in my original report.

**Table 2. Overall Confusion - Respondents Who Have Traveled to Northern California**

| | Has Traveled by Air to Northern California | | | | |
| | Test | | Control | | |
| **Response** | **Count** | **Percent** | **Count** | **Percent** | **Net Percent** |
| Confused[1] | 80 | 53.3% | 56 | 35.9% | 17.4% |
| **Total Respondents** | **150** | | **156** | | |

*S16. Have you traveled by air to Northern California in the past?*
*Q1. Where do you think the [San Francisco Bay] Oakland International Airport is located?*
*Q2. Do you think the [San Francisco Bay] Oakland International Airport is...?*
*Q3. Which of the following, if any, is the primary airport serving the San Francisco Bay Area*

Note: [1] Respondents are confused if they indicated San Francisco at Q1 OR selected "The same airport as the San Francisco International Airport" at Q2, OR selected "[San Francisco Bay] Oakland International Airport" at Q3.

Source: NERA Airport Survey, May-June 2024

**Table 3. Overall Confusion by Frequency of Travel**

| | Travels by Air '3-4 Times a Year' or More Often | | | | |
| | Test | | Control | | |
| Response | Count | Percent | Count | Percent | Net Percent |
| Confused[1] | 85 | 56.7% | 56 | 37.3% | 19.3% |
| **Total Respondents** | **150** | | **150** | | |

*S14. Approximately how often do you travel by air?*

*Q1. Where do you think the [San Francisco Bay] Oakland International Airport is located?*

*Q2. Do you think the [San Francisco Bay] Oakland International Airport is...?*

*Q3. Which of the following, if any, is the primary airport serving the San Francisco Bay Area?*

Note: [1] Respondents are confused if they indicated San Francisco at Q1 OR selected "The same airport as the San Francisco International Airport" at Q2, OR selected "[San Francisco Bay] Oakland International Airport" at Q3.

Source: NERA Airport Survey, May-June 2024

21.      Dr. Scott attempts to mischaracterize my survey population as under-representative by simply focusing on respondents' state of residence. She ignores the data which plainly demonstrate my survey encompassed a broad range of relevant consumers, including more than 50 percent of respondents who have traveled to Northern California by air before and 42.8 percent who have specifically flown into San Francisco International Airport, Oakland International Airport, or both of these airports.

## B.    The Survey Tests Oakland International Airport's Use of "San Francisco Bay Oakland International Airport" in a Real World Setting

22.      Dr. Scott claims my study lacks external validity because it (1) does not replicate how the Southwest or Google Flights pages appear currently; (2) does not allow respondents to look at additional webpages she believes to be relevant; and, (3) is only a test of confusion at one point in time. Dr. Scott's argument is without merit and does not align with the typical standards for establishing a likelihood of confusion. Furthermore, Dr. Scott could have tested some

alternative stimulus (at a different point in time) to evaluate whether there was difference in the rate of confusion, but she did not.

23.      As Dr. Scott herself notes, my survey was conducted within the first "30 days in which the new name was being rolled out to potential consumers."[25] While Dr. Scott suggests this fact undermines the reliability of my data (and it does not),[26] the timing of the survey and the posture of the litigation likely does play a role in how and the extent to which Oakland International Airport's new name appears on particular websites.

24.      As indicated in my initial report, I was hired prior to Oakland International Airport's name change and the survey data were collected between May 9th and June 8th, 2024.[27] At the time of the survey, it was unknown the exact manner in which Oakland International Airport's name would appear in any search or platform.[28] Of course, in general, surveys test consumer perception at a point in time, and while Dr. Scott has alleged the timing of my survey necessarily yields a higher rate of confusion which will decrease over time, she presents no data or evidence to support this conjecture.[29]  In fact, the contrary could easily occur.[30] Dr. Scott could

---

[25] *Scott Declaration*, ¶ 21.

[26] Dr. Scott cites to no authority or literature to support the claim that a likelihood of confusion can only be conducted when some specific or substantial period has passed after infringement.

[27] *Butler Declaration*, Exhibit A, ¶ 20.

[28] I understand that online search results are largely determined by parties other than the San Francisco and Oakland International Airports and likely depend on a variety of individualized factors (including what a consumer has searched for in the past, consumer profile data associated with them or their specific ISP address, etc.). Therefore, it is impossible, without additional evidence, to determine what a typical search would yield or how, given a particular set of searches, Oakland International Airport's new name would appear. While Dr. Scott has conducted eight searches, there is no evidence that her results would be typical or even representative.

[29] For example, Dr. Scott does not present a single respondent in the Control Group who indicated that they are not confused because they "had knowledge and prior experience with the prior airport name." (*Scott Declaration*, ¶ 21). Furthermore, it is entirely unclear why Dr. Scott believes such a response would somehow artificially "depress" confusion as any respondent who is aware of the difference and knows the Oakland International Airport would not, presumably, be confused in the Test Group.

[30] As noted by the Port of Oakland, the use of the name over time will have an impact. "Incorporating "San Francisco Bay" in a name that also maintains the name "Oakland" will, **over time**, increase the visibility of OAK flights when "San Francisco Bay Area" or similar terms are used in consumer online searches, aiding in the overall retention of flights and destinations." Agenda Report.pdf, *emphasis added*.

have conducted a survey months after I collected data to evaluate whether in fact, confusion has changed, but she did not.

25.     Perhaps more importantly, Dr. Scott's focus on a limited set of search terms and a small set of specific search results is misguided. The survey I designed was not intended to evaluate whether the specific Southwest or Google Flights webpages cause consumers to be confused. Instead, and as was appropriate, the survey was designed to present consumers with a realistic stimulus in which the name San Francisco Bay Oakland International Airport could occur.

26.     Dr. Scott seems to suggest that my survey is invalid because Southwest and other airlines serving Oakland International Airport do not currently,[31] and would not use the name San Francisco Bay Oakland International Airport on their websites.[32] As a simple matter, it would obviously be inappropriate to evaluate the extent to which the infringing name causes confusion by testing something *without* the new name. And while Dr. Scott may have been able to identify webpages where the name does not currently appear, her suggestion that carriers and their webpages will not display San Francisco Bay Oakland International Airport stands in contrast to Oakland International Airport's desire to use the name to increase awareness amongst potential customers. Furthermore, Dr. Scott presents no data or evidence to demonstrate that the pages she identifies in her Exhibit 5 are the primary or typical way in which consumers would book flights to the San Francisco Bay Area.

27.     Moreover, contrary to Dr. Scott claims, Southwest does use the official airport name (not just the city and airport code) to identify a specific airport when a geographic area has more than one. For example, as shown in Figure 1 below, Southwest uses the airport name to

---

[31] It is entirely possible that the new Oakland International Airport name does not appear given carrier's and other third-party platform's awareness of the current litigation.

[32] *Scott Declaration*, ¶ 14.

distinguish *LaGuardia* Airport from the Long Island airport in New York. It also specifically identifies both *Dulles* and *Reagan National* when searching for flights to Washington, DC, and *Midway* and *O'Hare* Airports for flights to Chicago. See Figure 1 below.

**Figure 1. Examples of Southwest Airline's Use of Airport Names[33]**



[33] https://www.southwest.com/, last accessed October 21, 2024.



28.    Therefore, while Dr. Scott may be able to demonstrate that in the first 30 days, with pending litigation, Southwest has not used Oakland International Airport's new name, there is no indication that this will be the case going forward. Further, even assuming Southwest elected to only display the city and call letters, the Test (and Control stimulus) I created for the survey is appropriate for a number of reasons.

29.    Again, as explained above I was not testing whether Southwest, or Google Flights, or any other specific platform, is the cause of consumer confusion. In fact, all aspects of the platform are held constant between the Test and Control groups and the only thing being tested is Oakland International Airport's use of the name San Francisco Bay Oakland International Airport. When I designed and implemented my survey, the name change had only recently been made. Absent the ability to review all of the ways in which the name may be used in the future (for example in promotional materials, in advertisements for flight deals, on travel websites, etc.), I needed to provide consumers with a realistic example of how the new name might appear. Dr. Scott cites to no data or source indicating that a likelihood of confusion survey must test examples of the product or service when it does not use the mark, and she cites no data to demonstrate that

Oakland International Airport's new name will *only* ever appear with the full city name and call letters.

30.    Contrary to Dr. Scott's claim that my survey does not fairly represent the "current real world," my survey stimuli was carefully designed to display Oakland International Airport's use of the name in a real-world environment which included the at-issue name, the city, and the airport call letters. Specifically, my survey was designed to replicate real world consumer experiences in the following ways:

a.    Only consumers who fly Southwest were shown Southwest's page. If a respondent indicated they would use some other airline, they were shown the Google Flights page;

b.    Southwest lists three airports for a search for "san fran" including San Francisco, Oakland, and San Jose. All three of these airports were shown to respondents in both the Test Group and the Control Group;

c.    On the second page shown to respondents in the Southwest search, each airport is listed first with the call letters in large font, followed by the city name, and the airport name is listed last;[34]

d.    Currently, Southwest lists the airport name for the departing flight so it would not be improbable that the airport name would also be listed for the arrival airport.

e.    As was shown in my survey, the Google Flights page lists the city name and then, if multiple airports, the names of the airports (Google Flights does not list the call letters).

---

[34] Dr. Scott incorrectly asserts that on the Southwest website "all airports only indicated by city names and airport codes." (*Scott Declaration*, ¶ 15). In fact, when there are multiple airports serving one metro area, Southwest always includes the airport name for the departing flight (see NY, DC, Chicago, Tampa, and Miami).

31.     In addition to the pages I tested, there are a number of other popular search engines that include the full airport name. For example, as shown below in Figure 2, Kayak and Expedia both list the airport name and city.

**Figure 2. Examples of Websites that Use the Airport Name When Booking Flights**

| Kayak[35]<br>New York | Expedia[36]<br>New York |
|---|---|



[35] https://www.kayak.com/, last accessed October 21, 2024.

[36] https://www.expedia.com/, last accessed October 21, 2024.



32.    Dr. Scott's assessment of additional webpages dispelling confusion is pure conjecture and is premised on the fact that currently Oakland International Airport's use of the new name does not appear on the additional pages she has captured.[37]

33.    Dr. Scott argues that had consumers been able to study the pages or had they been provided with additional information "it would be obvious that the airports are different."[38] But the survey tests whether consumers believe, based on the name, the San Francisco Bay Oakland International Airport is, or is related to, the San Francisco International Airport. Survey respondents are presented with additional information, including the name of the other airports, the call letters, the city, and the distance to San Francisco (in Google Flights). Dr. Scott assumes

---

[37] For examples of actual confusion, see Plaintiff City and County of San Francisco's Notice of Motion and Motion for Preliminary Injunction Enjoining Defendants; Memorandum of Points and Authorities in Support Thereof, *City and County of San Francisco v. City of Oakland and Port of Oakland*, United States District Court for the Northern District of California, Case No. 3:24-cv-02311-TSH, dated September 17, 2024, pp. 9 – 11.

[38] *Scott Declaration*, ¶ 20.

that consumers would necessarily view the two names as representing different locations because there are multiple flights and different call letters but has not tested this theory and presents no consumer evidence to support her claim. Indeed, Dr. Scott presents no evidence that consumers generally refer to airports or make travel plans or reservations by searching airport call letters.[39]

34.    Finally, Dr. Scott seems to suggest that identifying any rate of confusion would be difficult because consumers are "likely to be exposed to many types and sources of information."[40] Of course, consumers seeking to purchase many products or services may be exposed to all sorts of information prior to the survey. The fact that consumers have pre-existing beliefs is, in part, the purpose of the Control Group which can hold constant the extent to these beliefs (as opposed to the new name) are driving confusion. In this case, any respondent who believed that the Oakland International Airport was in San Francisco or is the same airport as San Francisco International Airport prior to the survey or based on some other set of information could indicate this in the Control. Furthermore, my survey tested two different forms of contextual information (Google Flights and Southwest) and included consumers who were more sophisticated in terms of travel frequency and flights to Northern California. In each circumstance (i.e., different stimuli or more "informed" populations), the net rates of confusion exceed 15 percent.

## C.    The Survey Stimuli Are Realistic, Reflect the Marketplace, and Are Correctly Designed to Isolate the Impact of Oakland International Airport's Use of "San Francisco Bay Oakland International Airport"

35.    Dr. Scott again mischaracterizes the survey design as one which is testing Southwest's or Google's platform rather than Oakland International Airport's use of the name San

---

[39] Oakland International Airport has indicated that its new name will ensure its airport appears when consumers search for "San Francisco Bay," not "OAK" or "SFO."

[40] *Scott Declaration*, ¶ 22.

Francisco Bay Oakland International Airport. As stated in my original report, and as readily depicted in the questionnaire, the name for Oakland International Airport (and not any other airport's name) is what the survey is intended to test.

36.     Dr. Scott argues that because the Test stimulus for the first page of the Southwest website included the at-issue name and the other airports listed did not, my survey violates the scientific principle of holding everything constant between the Test and Control groups. But this is precisely what the survey does – in the Test stimuli, the at-issue name is shown (along with the airport call letters) and in the Control stimuli it is not. It appears that Dr. Scott is suggesting that the Test and the Control should have included names for the other airports listed. Even if this were correct (which it is not), the inclusion of these additional names would be held constant between the Test and the Control and therefore any impact would be nullified.[41] Further, Dr. Scott's criticism ignores the fact that respondents are shown a second Southwest page in which the listing for each airport is identical in format. As shown below in Figure 3 (second Southwest page, Test Group), each flight listed includes the call letters, the city, and the airport name.

---

[41] Dr. Scott also suggests that the "highlighting" present on the Southwest page is problematic, but this is how Southwest uses highlighting on its actual site. Further, Dr. Scott hypothesizes that confusion in the control may be "too low" and the word "International" may cause consumers to associate OAK with SFO (*Scott Declaration*, FN 34). Again, Dr. Scott provides no data to support this conjecture. I understand that generally any airport with international flights includes "International" in its name, so it is unclear why consumers who travel by air would be confused by this word alone. Moreover, respondents in the Test and the Control were asked about the "San Francisco Bay Oakland International Airport" or "Oakland International Airport" respectively and therefore any potential confusion created solely by the appearance of the word "International" would be measured in the Control (and netted out of the final confusion estimates).

**Figure 3. Southwest Webpage Shown to Survey Respondents in Test Group**



37.     Of course, the difference between the first page of the Test and Control in the Southwest stimuli cannot be the element that explains confusion (as Dr. Scott seems to suggest), as the results from the Google Flights page also show confusion. In the Google Flights page, both airports in the Test and the Control include the full airport names (as well as the mileage to the city) and result in a net rate of confusion of 24.3 percent.

38.     Dr. Scott also takes issue with the format of the Google Flights webpage and indicates "For the Google Flights platform, the Butler Survey does not use the actual Google Flights webpages as they currently appear when one enters "San Fran" as the search term."[42] And while Dr. Scott claims she can generate a different set of results for Google Flights, the survey I designed provides a reasonable approximation of how multiple airports located in a similar geographic area appear on this platform.

39.     In designing my survey, I observed that often Google Flights lists airports located in close geographic proximity indented under a subheading, with information about the travel

---

[42] *Scott Declaration*, ¶ 16.

distance to the intended destination. For example, as shown below in Figure 4, when searching for a flight to New York, Google lists three airports under a subheading for "New York" (John F. Kennedy International Airport, LaGuardia Airport, and Newark Liberty International Airport). Notably, Newark Liberty International Airport, which is located in the state of New Jersey, is listed under the "New York" heading.

**Figure 4. Google Flight Search Result for "New York"[43]**



40.    There are a number of similar examples on Google Flights, including a search for "Washington" (shown below in Figure 5) which provides options for Ronald Reagan Washington National Airport and Dulles International Airport (both located in Virginia), and Baltimore/Washington International Thurgood Marshall Airport (located in Maryland).[44]

---

[43] https://www.google.com/travel/flights, last accessed October 21, 2024.

[44] Additional examples can be found in **Exhibit C**.

**Figure 5. Google Flight Search Results for "Washington"**



41.    In her report, Dr. Scott provides an example in which the Oakland airport (using the new name) appears after a Google search for "San Francisco."[45] Notably, conducting this same search now no longer shows the Oakland airport in any format, so it is unclear why Dr. Scott's search yielded the particular results it did, or how her results are typical if they no longer appear. In fact, the variability in how these search results appear demonstrates again why the correct test in this matter is not an evaluation of a particular platform or set of search results, but is a test which presents Oakland International Airport's use of the name "San Francisco Bay Oakland International Airport" in a realistic manner.

---

[45] Dr. Scott's example demonstrates that Google Flights would use the full airport name ("San Francisco Bay Oakland International Airport"), not just the city and airport code the airport, and that the Oakland airport listing would occur *side by side* with the San Francisco airport listing. This is consistent with what was tested in my survey.

42.    Dr. Scott seems to argue that not indenting the Oakland airport result and referencing "Alameda County" would dispel any potential confusion for respondents shown the Google Flights results page. First, Dr. Scott has not presented any examples from my data in which respondents indicate that the airport shown is located in the *county* of San Francisco. Further, Dr. Scott assumes that some set of consumers would know the county of each airport and including this information would provide necessary clarity.[46] Dr. Scott has no data to support this assertion and provides no indication as to why a county name would help travelers (particularly those who may be unfamiliar with the specific counties of the Bay Area) distinguish between Oakland International Airport and San Francisco International Airport or why this information would help consumers identify the actual San Francisco Airport.

### D.    The Survey Questions Appropriately Measure Potential Confusion Associated with Oakland International Airport's Use of "San Francisco Bay Oakland International Airport"

43.    Dr. Scott asserts that Question 3 in my survey, "Which of the following, if any, is the primary airport serving the San Francisco Bay Area?" is unreliable because it is "not directly related to the question of whether consumers would believe that they would be flying into the City of San Francisco or into SFO when they would actually be flying into Oakland if they chose the San Francisco Bay Oakland International Airport."[47] Of course, where the airport is located and whether consumers believe San Francisco Bay Oakland International Airport is the San Francisco Airport are addressed by Questions 1 and 2 of my survey. As noted in my original report, if I calculate confusion solely on these two questions, the net rate of confusion is 18.5 percent.[48]

---

[46] *Scott Declaration*, ¶ 34.

[47] *Scott Declaration*, ¶ 36.

[48] *Butler Declaration*, FN 49.

44.    Again, Dr. Scott offers completely unsupported conjectures as to how consumers may alternatively interpret "primary," including believing this term references the "most centrally located airport in the San Francisco Bay Area or the airport serving the largest portion of the entire San Francisco."[49] Dr. Scott entirely misses the point with this criticism. Any respondent selecting the airport listed as "primary" because they believe Oakland International Airport is centrally located or serves more local residents would indicate this response in the Control Group and would therefore be netted out of the confusion estimate. In other words, the question performs exactly as intended and measures the extent to which the name "San Francisco Bay Oakland International Airport" causes consumers to believe that this is the main or primary airport in Northern California. Responses based on pre-existing understandings or conceptions about which airport (San Francisco International Airport or Oakland International Airport) is primary are measured by the Control and are subtracted from the overall confusion estimate.

45.    Dr. Scott also suggests Question 3 is problematic because it is only asked of respondents who did not indicate that the San Francisco International Airport and San Francisco Bay Oakland International Airport are the same. While Dr. Scott suggests that I have speculated about consumer perceptions, this is not the case. In fact, my data demonstrate there are respondents who answer "unsure" in Q2 (whether San Francisco International Airport and San Francisco Bay Oakland International Airport are the same) who later indicate at Q3 that they believe San Francisco Bay Oakland International Airport is the primary airport.[50]

46.    Finally, Dr. Scott asserts that she can recalculate confusion based solely on the responses to Q1 and demonstrate that there is no confusion, but this is a wholly unreliable

---

[49] *Scott Declaration*, ¶ 36.

[50] See for example, Respondents 2239, 4122, 8945, 9906, 11488, 11788, 15565, 15759, and 21036.

analysis.[51] First, Dr. Scott incorrectly limits her recoding exercise to only the responses to the Google Flights stimulus, despite having no evidence that this presentation is the sole manner in which San Francisco Bay Oakland International Airport would appear. Moreover, simply relying on open-ended responses is problematic as the verbatim answers provided by respondents in Q1 are often not specific enough to determine precisely where they believe the airport is located.[52] For example, some respondents offer answers like "California" or "San Francisco Bay." One cannot determine that such respondents are not confused based on broad or vague answers.

47.     As noted in my original report, I conservatively coded the open-ended responses such that "only respondents who specifically stated that the airport was located in "San Francisco" were counted. Respondents who indicated the airport was located **near** San Francisco, or near the San Francisco Bay Area were categorized as 'Other.'"[53] While this yields a net rate of confusion of 9.4 percent, it underrepresents that actual rate of confusion because respondents who offered imprecise or broader descriptions were not counted. As shown in Table 4 below, there are many respondents who could have been confused at Q1 but were not counted as such because I had additional questions which allowed me to more precisely interpret their understandings. All of the respondents in Table 4 below were not counted as confused in my analysis of Q1 (and presumably

---

[51] Dr. Scott indicated that the coding scheme for Q1 was not produced. These data were not requested by counsel or Dr. Scott, and I have provided them as **Exhibit D**.

[52] "Open-ended and closed-ended questions may elicit very different responses. Most responses are less likely to be volunteered by respondents who are asked an open-ended question…" Diamond, S. S. (2011). "Reference Guide on Survey Research," Reference Manual on Scientific Evidence, Committee on the Development of the Third Edition of the Reference Manual on Scientific Evidence; Federal Judicial Center; National Research Council, pp. 359-423 at p. 392. See also, Bernstein, D.H. and Keller, B. P. (2022). "Survey Evidence in False Advertising Cases," *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*, edited by Diamond, S. S., and Swann, J. B., pp. 187-235 at p. 222; "Open-ended questions are appropriate to gauge consumers' initial reaction… but they may be insufficient to evaluate reactions to more specific or secondary messages, even if consumers generally perceive those messages."

[53] *Butler Declaration*, FN 48.

would not have been counted by Dr. Scott) but indicated that they believed San Francisco Bay Oakland International Airport is the same airport as SFO in the subsequent question.

**Table 4. Examples of Test Group Respondents Not Coded as "Confused" at Q1, But Who Indicated Confusion at Q2**

| Respondent ID | Stimulus Shown | Response at Q1 |
|---|---|---|
| 107 | Southwest | It is in San Francisco Oakland area |
| 2743 | Google Flights | in San Francisco, maybe just outside the city in between SF and Oakland |
| 2847 | Google Flights | Its located at the east of San Francisco. |
| 7883 | Google Flights | Just south of San Francisco off route 101 |
| 9845 | Google Flights | Near to the downtown |
| 10775 | Google Flights | Just outside of SF city |
| 11446 | Google Flights | south of san francisco |
| 11508 | Southwest | near san francisco bay area |
| 11691 | Southwest | San Francisco area airport |
| 11750 | Google Flights | North of the town |
| 19546 | Southwest | san Mateo county, california |

48.     Dr. Scott's "recoding" exercise is improperly limited to one stimulus (Google Flights) and relies wholly on coding that omits respondents who provide evidence of confusion in later questions. Unlike the analysis I conducted, Dr. Scott simply assumes that any respondent who indicated anything other than "San Francisco" (including those who said things like "San Francisco Bay" or "Northern California" or even "I'm not quite sure") would not be counted as confused. This is not an informative or reliable analysis.

## V.    CONCLUSIONS

49.     In total, Dr. Scott has offered a series of criticisms that mischaracterize and misrepresent the sample and survey I designed. Further, she offers a series of hypothetical conjectures about how some other set of consumers might respond to some other set of stimuli with some other set of questions. But Dr. Scott has not designed a survey or tested any of her

claims and provides no data, survey or otherwise, to support her assertions. Dr. Scott's criticisms about the relevant population of interest contradict numerous statements made by Oakland International Airport. Moreover, Dr. Scott ignores survey data that contradict her assumptions, including data demonstrating that: (1) consumers who travel frequently by air and those who have traveled by air to Northern California previously are also confused by the name; (2) consumers are confused regardless of whether the call letters are present or the airport's distance from San Francisco is provided; (3) and consumers are confused when asked where the airport is located and whether the San Francisco Bay Oakland International Airport is the San Francisco International Airport. My survey of 607 relevant consumers who have or are likely to fly to Northern California in the next year demonstrates that there is a substantial likelihood of confusion created by the name "San Francisco Bay Oakland International Airport," and consumers are likely to believe this airport is located in San Francisco, is the San Francisco International Airport, or is the primary airport serving San Francisco.

50.     My opinions and conclusions as expressed in this report are to a reasonable degree of professional and scientific certainty. My conclusions have been reached through the proper application of survey methods, and using standard methodologies relied upon by experts in the field of survey and market and consumer research. My opinions will continue to be informed by any additional material that becomes available to me. I reserve the right to update and or supplement my opinions if provided with additional information. I declare under penalty of perjury that the foregoing is true and correct.

Sarah Butler, Senior Managing Director
October 22, 2024