COOLEY LLP
BOBBY GHAJAR (198719)
JOHN HEMANN (165823)
JUDD D. LAUTER (290945)
RYAN C. STEVENS (306409)
3 Embarcadero, 20th Floor
San Francisco, CA 94111-4004
Telephone: (650) 843-5000
Email: bghajar@cooley.com
jhemann@cooley.com
jlauter@cooley.com
rstevens@cooley.com

DAVID CHIU (189542)
City Attorney
JESSE SMITH (122517)
Chief Assistant City Attorney
YVONNE R. MERÉ (173594)
Chief Deputy City Attorney
JULIE VEIT (209207)
CHRISTOPHER STUART (262399)
Deputy City Attorneys
City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4700
Facsimile: (415) 554-4757
Email: Cityattorney@sfcityatty.org
Jesse.Smith@sfcityatty.org
Yvonne.Mere@sfcityatty.org
Julie.Veit@sfcityatty.org
Christopher.Stuart@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND AND PORT OF OAKLAND,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 3:24-cv-02311-TSH<br><br>**REPLY TO DEFENDANT CITY OF OAKLAND'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: November 7, 2024<br>Time: 10:00 AM<br>Courtroom: E – 15th Floor<br>Judge: Thomas S. Hixson |

## I.   INTRODUCTION

The Court should not allow the strange procedural diversion urged by the City of Oakland ("Oakland")[1] to distract in any way from the substance of Plaintiff San Francisco's Motion for a Preliminary Injunction. The City of Oakland, in suggesting this detour, does not dispute the merits of San Francisco's motion, other than to claim that it should not be involved. It should be involved, for the simple and obvious reason that the Oakland Airport belongs to the City of Oakland, even though it is managed by the Port Commission under the City of Oakland Charter. But more fundamentally, the City of Oakland's opposition has nothing to do with whether an injunction should issue, and the Court should defer the precise nomenclature used to identify each proper defendant to another day.

Oakland is properly named in this lawsuit because even if the Port of Oakland (the "Port") exercises day-to-day control over the operations of the airport, the Port is a department of Oakland. City of Oakland Charter ("Charter") § 700. Under the plain language of the Charter, the Port exercises power and carries out enumerated duties "on behalf of the City" of Oakland. *Id.* § 706.

When the Port engages in litigation, it does so on behalf of the City of Oakland. Similarly, when the Port conducts business, it does so in the name of the City of Oakland. Oakland does not cite a single case holding that the City of Oakland is not a proper party when the conduct complained of was committed by the Port, or an entity subject to the Port's control.

Oakland makes no attempt to argue against the merits of San Francisco's trademark claim, arguing only that it should not be subject to an injunction because the conduct at issue was perpetrated by one of its departments and not directly by its City Council. This is a distraction, not a basis for denying an injunction. As explained in the San Francisco's motion, the requested injunction should issue and the municipal entity to which the Port Commission belongs and derives its authority most certainly should be subject to it.

---

[1] Although San Francisco disagrees with Defendants' division of the Port of Oakland and City of Oakland as separate entities, San Francisco refers to each separately throughout this reply brief for clarity. San Francisco has filed a separate reply to the Port of Oakland's Opposition brief.

REPLY TO DEFENDANT CITY OF OAKLAND'S
OPPOSITION TO PLF'S MOTION FOR PI                    1
Case No. 3:24-cv-02311-TSH

## II. FACTS

### A. The Port is a department of the City of Oakland, conducts business "on behalf of" the City of Oakland, and its Commissioners serve at the pleasure of the City of Oakland.

The City of Oakland devotes several pages to describing the Charter and the establishment of the Port of Oakland but obscures the most salient provisions of the Charter. The Port of Oakland is a "department of the City of Oakland." Charter § 700. Port Commissioners are nominated by the Mayor of Oakland and then appointed by the Oakland City Council. *Id.* § 701. Port Commissioners may be "removed from office by the affirmative vote of six (6) members of the Council. . . ." *Id.* § 701. The Port is required to submit an annual budget that must be "filed with the Council, [] with the City Administrator, and [] with the Auditor." *Id.* § 715. Furthermore, all personnel employed by the Port must be "included within the personnel system of the City . . . ." *Id.* § 714. Surplus income from the Port can be used to pay "the principal of and interest on *any or all general obligation bonds of the City of Oakland* heretofore and hereafter issued for port purposes" or simply "transfer[ed] to the General Fund of the City . . . ." *Id.* § 717(3) (emphasis added).

Section 706 of the Charter makes clear that the Port's powers are exercised, and duties carried out "on behalf of the City." *Id.* § 706. The Charter requires the Port to "appoint a Port Attorney, whose duty it shall be to pass upon the form and legality of all contracts within the jurisdiction of the Board, give legal advice to the Board on official matters, defend and (subject to direction from the Board) prosecute or compromise all actions at law or in equity and special proceedings *for or against the City* or any officers thereof in the Port Attorney's official capacity, pertaining to matters within the jurisdiction of the Board." *Id.* § 706(20) (*emphasis added*). And the Port's jurisdiction is subject to change as "with the approval of the Council the Board may relinquish to the Council control of portions of the said area, and likewise, upon request of the Board, the Council may, by ordinance, enlarge the Port Area." *Id.* § 706(4).

### B. The City of Oakland Refused San Francisco's Reasonable Attempts to Stipulate to a Dismissal that Would Bind the City of Oakland.

San Francisco originally filed suit against the City of Oakland. Dkt 1. On April 29, 2024,

1  counsel for Oakland emailed counsel for San Francisco seeking clarification on whether it was San
2  Francisco's intention to "name and serve only the Port of Oakland." Declaration of Christopher
3  Stuart ("Stuart Decl.") ¶ 2 Ex A. San Francisco amended the complaint to include the Port of
4  Oakland but was unconvinced by Oakland's position and continued to engage in meet and confer
5  discussions with Oakland over the ensuing months. Dkt.15, Stuart Decl. ¶ 3.

6  After San Francisco filed its Motion for a Preliminary Injunction, the City of Oakland again
7  asked to be dismissed as a defendant. Stuart Decl. ¶ 4. In an attempt to avoid an unnecessary
8  sideshow, San Francisco offered to dismiss the City of Oakland as a named defendant by
9  stipulation, *provided that Oakland would agree to be bound by any injunctive relief entered by this*
10 *Court*. *Id.* ¶ 5, Ex. B. Oakland refused to enter any such stipulation, citing a concern over being
11 bound by an order of this Court as to the airport name. *Id.*

## III. ARGUMENT

### A. The City of Oakland Is a Proper Party.

Although the City of Oakland argues that it is a "separate and independent legal entity from the Port of Oakland," the authority cited by it demonstrates that the Port is simply a department of Oakland that operates on the City of Oakland's behalf.

First, the City of Oakland's citations to the Charter omit the numerous provisions of the charter that demonstrate that the Port is part of the City of Oakland. Oakland's Mayor and City Council nominate and appoint the Port Commissioners and may remove them. Charter § 700. The Port must submit budgets to the City. *Id.* § 715. Revenue from the Port can be used to pay debts incurred by the City of Oakland. *Id.* § 717(3). Port employees are City employees. *Id.* § 714. If the Port and City Council want to, they can cede areas under Port control back to the City. *Id.* § 706(4). Perhaps most importantly, the Port's legal counsel litigates on behalf of "the City." *Id.* § 706(20). Plainly, the Port is not a separate entity—it is a department of the City of Oakland.

The Port is not a "third party" to the City of Oakland and the two should be considered a single entity. *Debro v. Turner Constr. Co.*, No. A117338, 2008 WL 772889, at *7 (Cal. Ct. App. Mar. 25, 2008). In *Debro*, the court explained that "[b]y Charter, the Port is a department of the City and not, as Debro appears to believe, a third party agent." *Id.* The court went on to hold that

1  a contract entered into by the Port was "indeed a contract between Turner and the City [of Oakland]
2  because the Port itself is a city department." *Id.*

3  The City of Oakland attempts to create a sense of separation between Oakland and its
4  department by pointing to the ability of the Port to separately file lawsuits, but ignores the fact that
5  when the Port litigates, it does so *in the name of Oakland*, not the Port. The cases in which the Port
6  litigates as a plaintiff are styled "**the City of Oakland, a municipal corporation**, acting by and
7  through its Board of Port Commissioners," and the caption for these cases is often shortened to
8  simply refer to the "City of Oakland." *See, e.g.*, *City of Oakland, Cal. ex rel. Bd. of Port Comm'rs*
9  *(Port of Oakland) v. FERC*, 754 F.2d 1378 (9th Cir. 1985); *City of Oakland v. Nestle USA, Inc.*,
10 No. C-98-3963 SC, 2000 WL 1130066, at *1 (N.D. Cal. Aug. 8, 2000); *City of Oakland ex rel. Bd.*
11 *of Port Comm'rs v. SSA Terminals, LLC*, No. 11-CV-01446-YGR, 2012 WL 2501101, at *1 (N.D.
12 Cal. June 27, 2012); *City of Oakland v. Hogan*, 41 Cal. App. 2d 333, 337 (1940). These cases
13 explicitly recognize that when the Port does file suit, it "sue[s] in the name of the municipality."
14 *City of Oakland v. Hogan*, 41 Cal. App. 2d at 344.

15 The City of Oakland's other arguments are similarly unpersuasive. It argues that the Port
16 essentially acts as "the agency of its principal, the city." Dkt. 49 at 8. But even if that were the
17 case, it does not compel dismissal of the principal because a principal is liable for the acts of its
18 agent. *See Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1212 (9th Cir. 2024) (holding "[a]
19 principal who conducts an activity through an agent is subject to liability for harm to a third party
20 *caused by the agent's conduct*" (quoting Restatement (Third) of Agency § 7.05 (2006))). The City
21 of Oakland does not save this argument by claiming that it does not own the airport trademark,
22 because it is registered to the "**City of Oakland, a municipal corporation**, acting by and through
23 its Board of Port Commissioners." Dkt. 36-8, Williams Decl. Ex. H (emphasis added).

24 The legal authority submitted by the City of Oakland highlights the very concerns that have
25 led San Francisco to keep Oakland in the case. The City of Oakland relies on the *Thibodeaux* case
26 for the proposition that "the City of Oakland is not an indispensable party to an action regarding
27 property owned only by the Port of Oakland." Dkt. 49 at 8 (citing *Thibodeaux v. Port of Oakland*,
28 No. 18-CV-03353-KAW, 2018 WL 4853299, at *1 (N.D. Cal. Oct. 5, 2018)). It ignores, however,

that in that litigation the City of Oakland filed a motion to dismiss the case based on ***its argument that Oakland was in fact an indispensable party***. *Thibodeaux*, 2018 WL 4853299, at *2, *10. That the City of Oakland lost that argument before Judge Westmore in the *Thibodeaux* case does not suggest that it is somehow immune from suit if the Port's conduct is at issue. Indeed, Judge Westmore held that "Plaintiff may name the City of Oakland, acting through its City Council, if he believes it is warranted to fully address his claims." *Id*.

That is the case here. San Francisco's concern is that the if the City of Oakland, the owner of the airport, is ***not*** a party to this case, it will attempt to sidestep any relief issued by arguing that it is not bound by orders issued by the Court. This concern is exacerbated by the City of Oakland's steadfast refusal to enter into a simple stipulation to be bound by any order issued by this Court regarding San Francisco's motion. *Thibodeaux* does not compel dismissal of the City Oakland; it demonstrates why it should be a party. If the City of Oakland were in fact a disinterested third party, it could have secured dismissal by stipulating to be bound by any injunction issued by the Court. It refused to do so.

### IV.  CONCLUSION

The City of Oakland's separate opposition to San Francisco's motion is a distraction that should be ignored by this Court. Its failure to dispute the merits of San Francisco's trademark infringement claim also confirms that this Court should issue an injunction.

Dated: October 22, 2024                                  COOLEY LLP

                                                         By: */s/John Hemann*
                                                         John Hemann
                                                         Bobby Ghajar
                                                         Ryan Stevens

                                                         Attorneys for Plaintiff
                                                         CITY AND COUNTY OF
                                                         SAN FRANCISCO