# EXHIBIT B

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Saturday, October 5, 2024 6:28 PM
**To:** Stuart, Christopher (CAT)
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland
**Attachments:** 2018.10.05 Court Order re City Not Indispensable Party.pdf

Hi Chris,

I believe that if the City of Oakland stipulates as you propose, and Oakland is dismissed before the preliminary hearing injunction, then the court order itself would only bind the Port. This is of course because the court would not have jurisdiction over Oakland anymore. The court order would also require a factual finding that the Port has control/jurisdiction of OAK. The proposed stipulation, to additionally have Oakland voluntarily be bound by the court order with respect to OAK, feels like would imply that Oakland also has control/jurisdiction of OAK. So, your proposed stipulation isn't actually Oakland complying with a court order, because the court order would not have included Oakland; the proposed stipulation would be the mechanism binding Oakland, and the proposed stipulation would be Oakland making a statement that it has control/jurisdiction of OAK.

There is already a lot of confusion regarding the relationship between Oakland and the Port, and this proposed stipulation could be used in the future by other parties to support a disbelief that Oakland and the Port are independent of each other.

I also found the attached, which I hope will be helpful. Particularly, there is a brief discussion in the court order distinguishing the Port and Oakland, finding that Oakland is not an indispensable party to an action regarding property owned by the Port, although Oakland may be a party to the extent that it shares ownership of the property. It also finds that Oakland as a leaseholder is also not an indispensable party to actions against the Port. In the case of OAK, I think we are undisputed that the Port has exclusive control/jurisdiction in OAK and Oakland does not have any shared ownership, so Oakland is not a necessary party in actions regarding OAK.

---

**From:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Sent:** Saturday, October 5, 2024 3:22 PM
**To:** Lum, Christina <CLum@oaklandcityattorney.org>
**Subject:** Re: City and County of SF v. City of Oakland and Port of Oakland

CAUTION: This email originated from outside of the City of Oakland. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Christina,
Thank you for getting back to me. I don't mean to beat a dead horse here, but I am just wondering what is the thinking behind this concern? How does Oakland stipulating that it will abide by a federal court injunction (whether preliminary or permanent) with respect to the name of OAK imply that Oakland has control over OAK? I think it shows that it will comply with a court order over a matter that it argues it really has no control over anyway. If the Port is legally unable to use the name as a result of the injunctive relief, and it is not in use, then, if the Port is truly independent, it would follow that Oakland would follow and not use the name.

With respect to binding the Council, if the injunction is issued, and the Port is no longer able to use the new name, then again, if the Port is truly independent with respect to matters under its jurisdiction, as is your position, then it would seem to me that the Council could not really do anything under the Charter in violation of the injunction with respect to the name.

Thanks for listening one more time. Thanks, Chris

---

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Saturday, October 5, 2024 9:21 AM
**To:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

Thanks for the clarification Chris. The City of Oakland cannot stipulate to that, because it implies Oakland has jurisdiction, or some control, over OAK, and we still have the problem with the ability to bind Council. I appreciate the dialogue and have a good weekend!

---

**From:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Sent:** Friday, October 4, 2024 6:44 PM
**To:** Lum, Christina <CLum@oaklandcityattorney.org>
**Subject:** Re: City and County of SF v. City of Oakland and Port of Oakland

CAUTION: This email originated from outside of the City of Oakland. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Christina, I should clarify that the stipulation would need to cover any permanent injunction as well. With that in mind, please see my responses below in bold italics. Thanks very much.

If we stipulate, the following are the possible scenarios:

1. If the court enjoins the Port from using the name, then Oakland is also enjoined from using the name to the same extent, but Oakland would no longer be in the litigation, and there is no stipulation for Oakland to be bound by any final outcome of the matter; - ***Oakland would need to stipulate to be bound by any permanent injunction or other final resolution of the litigation***.
2. If the Port is not enjoined, the Oakland is also not enjoined and Oakland would be dismissed from the matter. - ***If the Port is not enjoined, then Oakland would not be enjoined, but again, even if the preliminary injunction is not granted, we need the stipulation to cover an eventual permanent injunction if one is granted***.

If we opt to not stipulate and proceed with opposing the motion for preliminary injunction, the following could happen:

1. The court grants the preliminary injunction as to both the Port and Oakland, and Oakland is still in the case; - **Yes**
2. The court grants the preliminary injunction as to only the Port, but not to Oakland, but Oakland is still in the case and would need to file an MSJ to get out; or – **This is unlikely, as the PI will be decided as to both parties likely before the Oakland MSJ is heard in late November.**
3. The court denies the preliminary injunction as to both the Port and Oakland, but Oakland is still in the case and would still need to file an MSJ to get out. – **Yes, Oakland would still be in the case and would need to file its motion.**

---

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Friday, October 4, 2024 5:19:10 PM
**To:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

Hey Chris,

I realize it's difficult to be absolutely clear orally over the phone, so I wanted to make sure I understand your proposal:

Your proposal is for Oakland to agree to be bound by the preliminary injunction only to the extent the court grants the preliminary injunction against the Port, such that:

If we stipulate, the following are the possible scenarios:

1. If the court enjoins the Port from using the name, then Oakland is also enjoined from using the name to the same extent, but Oakland would no longer be in the litigation, and there is no stipulation for Oakland to be bound by any final outcome of the matter;
2. If the Port is not enjoined, the Oakland is also not enjoined and Oakland would be dismissed from the matter.

If we opt to not stipulate and proceed with opposing the motion for preliminary injunction, the following could happen:

1. The court grants the preliminary injunction as to both the Port and Oakland, and Oakland is still in the case;
2. The court grants the preliminary injunction as to only the Port, but not to Oakland, but Oakland is still in the case and would need to file an MSJ to get out; or
3. The court denies the preliminary injunction as to both the Port and Oakland, but Oakland is still in the case and would still need to file an MSJ to get out.

Please let me know if I misunderstand or there's something I missed.

---

**From:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Sent:** Friday, October 4, 2024 11:33 AM
**To:** Lum, Christina <CLum@oaklandcityattorney.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

CAUTION: This email originated from outside of the City of Oakland. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you Christina for checking. We'll discuss on our end and get back to you. Best, Chris



**Christopher W. Stuart** *(he/him)*

Deputy City Attorney

Office of City Attorney David Chiu

(650) 821-5075 Direct

(650) 455-7920 Mobile

www.sfcityattorney.org

**NOTE:** I work remotely on certain days and email is the best way to reach me. Please avoid leaving voicemail messages.

*The information in this e-mail is confidential and protected by the attorney/client and/or work product privileges. If you received this email in error, please notify the sender and delete it.*

---

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Friday, October 4, 2024 11:21 AM
**To:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

Hi Chris,

Following up with our conversation yesterday, I ran the stipulation idea up the chain, and it was not approved. My apologies for speaking optimistically too soon on that issue.

The only other alternative that I can think of right now, is that we can offer a stipulation that the City of Oakland toll the statute of limitations for a dismissal without prejudice, so that SF can bring the Oakland back in should SF later determine the Oakland is a necessary party.

Otherwise, I was directed to file an MSJ.

---

**From:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Sent:** Thursday, October 3, 2024 12:06 PM
**To:** Lum, Christina <CLum@oaklandcityattorney.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

---

CAUTION: This email originated from outside of the City of Oakland. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Actually sorry, would you mind doing 2pm?

 **Christopher W. Stuart** *(he/him)*

Deputy City Attorney

Office of City Attorney David Chiu

(650) 821-5075 Direct

(650) 455-7920 Mobile

www.sfcityattorney.org

**NOTE:** I work remotely on certain days and email is the best way to reach me. Please avoid leaving voicemail messages.

*The information in this e-mail is confidential and protected by the attorney/client and/or work product privileges. If you received this email in error, please notify the sender and delete it.*

---

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Thursday, October 3, 2024 11:45 AM
**To:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

Hi Chris – 1:30 works best for me. Thanks!

---

**From:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Sent:** Thursday, October 3, 2024 11:44 AM
**To:** Lum, Christina <CLum@oaklandcityattorney.org>
**Subject:** RE: City and County of SF v. City of Oakland and Port of Oakland

CAUTION: This email originated from outside of the City of Oakland. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning Christina,

Thank you for your patience in us getting back to you. Would you have some time this afternoon to discuss this? I could do 1:30 to 2:30 or 3:30 or later. I also am pretty open tomorrow morning if that works better. Thanks, Chris



**Christopher W. Stuart** *(he/him)*

Deputy City Attorney

Office of City Attorney David Chiu

(650) 821-5075 Direct

(650) 455-7920 Mobile

www.sfcityattorney.org

**NOTE:** I work remotely on certain days and email is the best way to reach me. Please avoid leaving voicemail messages.

*The information in this e-mail is confidential and protected by the attorney/client and/or work product privileges. If you received this email in error, please notify the sender and delete it.*

**From:** Lum, Christina <CLum@oaklandcityattorney.org>
**Sent:** Thursday, September 26, 2024 5:57 PM
**To:** Stuart, Christopher (CAT) <Christopher.Stuart@sfcityatty.org>
**Subject:** City and County of SF v. City of Oakland and Port of Oakland

Hi Chris,

Receiving your Motion for Preliminary Injunction, I think the City will proceed with filing an MSJ. I think I already shared the legal basis for our MSJ, and I wanted to ask whether San Francisco would be filing an opposition, and what your grounds would be.

7



**Christina Lum, Senior Deputy City Attorney**

Office of Oakland City Attorney Barbara J. Parker

One Frank Ogawa Plaza, Sixth Floor

Oakland, CA 94612

Phone: (510) 238-4483

Fax: (510) 238-6500

Email: clum@oaklandcityattorney.org

Website: www.oaklandcityattorney.org

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use,

disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

This is a confidential attorney-client communication. This email contains confidential attorney-client privileged information and is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. [v1.3]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DERRON THIBODEAUX,

            Plaintiff,

     v.

PORT OF OAKLAND,

            Defendant.

Case No. 18-cv-03353-KAW

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 8

On June 7, 2018, Plaintiff Derron Thibodeaux filed the instant case against Defendant Port of Oakland, asserting violations of the Clean Water Act ("CWA"). (Compl. ¶ 1, Dkt. No. 1.) Defendant now moves to dismiss the case. (Def.'s Mot. to Dismiss, Dkt. No. 8.) Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel at the September 20, 2018 hearing, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss.

## I. BACKGROUND

On September 26, 2016, Plaintiff sent Defendant a "Notice of Violations and Intent to File Suit Under the Clean Water Act." (Blanchard Decl., Exh. A ("9/26/2016 Notice"), Dkt. No. 8-2.) On October 4, 2016, Defendant requested to meet with Plaintiff, seeking additional information on the CWA allegations. (Blanchard Decl. ¶ 4.) On March 22, 2017, Plaintiff sent Defendant an "AMENDED Notice of Violations and Intent to File Suit Under the Clean Water Act." (Blanchard Decl., Exh. D ("3/22/2017 Notice").)

The Amended Notice first provides a general overview of the CWA. (3/22/2017 Notice at 1-2.) Next, the Amended Notice states that sewage transmission pipes servicing Buildings 803 and 804 and running adjacent to 19th Street "have a chronic history of inflow and infiltration . . .

as well as cracks in the piping in the system [that] releas[e] raw and untreated sewage underground into the soil, thereby releasing untreated wastewater and raw sewage into the ground water and San Francisco Bay." (*Id.* at 2.)

The Amended Notice then describes "107,500 linear feet of storm drains and 25,000 feet of sanitary sewers within the 366 acre OGDA property," which Plaintiff asserts has been shown by several studies to be in poor condition and to have defects. (3/22/2017 Notice at 2.) Defects are defined as pipes with sags, plant root intrusion, cracked sections, holes or collapses, joints that have been separated or become misaligned, or blockages caused by sediment accumulation. The poor condition of the drains has resulted in contaminated sediment within the pipes and catch basins, as well as contaminated soil and groundwater adjacent to portions of the defective pipes. (*Id.*) Of concern are chemicals including petroleum hydrocarbons, polycyclic aromatic hydrocarbons, lead and other heavy metals, polychlorinated biphenyls, pesticides, and raw sewage. The Amended Notice asserts that materials from the contaminated soil and sanitary sewers are leaking into the storm drains that empty into the Bay.

Additionally, the Amended Notice discusses Defendant's "history of major discharges from the facility's collection system, caused by ruptured pipelines due to inflow and infiltration during periods of heavy rainfall and because the [Defendant']s freshwater delivery lines also leak causing a back of head pressure which in turn, forces the leaked raw effluent into Bay waters." (3/22/2017 Notice at 2.) The Amended Notice explains that these discharges of raw sewage and treated effluent violate the CWA because the discharge is occurring without a National Pollution Discharge Elimination System ("NPDES") permit. (*Id.* at 2-3.)

Finally, the Amended Notice notes that the "sewage collection lines are over 100 years old and in need of immediate replacement," and that Defendant and the City of Oakland are under a Clean Up and Abatement Order issued by the Regional Water Quality Control Board ("RWQCB") concerning the former Oakland Army Base, Order No. R2-2004-0086. (3/22/2017 Notice at 3.)

Based on the Amended Notice, Plaintiff filed the instant action against Defendant. (Compl. ¶ 2.) In his complaint, Plaintiff describes Defendant as "an industrial facility hosting an industrial railway storage yard, hog export terminal, asphalt recycling, fumigation services, truck

United States District Court
Northern District of California

United States District Court
Northern District of California

repair, truck operations, and multiple industrial warehouse rentals totaling 283,896 square feet[1] (hereinafter the 'Facility')." (Compl. ¶ 30.) The complaint then restates the assertions of the Amended Notice. (Compl. ¶¶ 31-35.) Based on these allegations, Plaintiff brings four causes of action: (1) discharge of pollutants without a NPDES permit, (2) discharges of contaminated storm water in violation of permit conditions and the CWA, (3) failure to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP") and best available and best conventional control technologies, and (4) failure to develop and implement an adequate monitoring and reporting program. (Compl. at 9-12.)

On August 9, 2018, Defendant filed the instant motion to dismiss, asserting that dismissal was warranted because: (1) the Court lacked jurisdiction over the case because Plaintiff's notice was defective, (2) Plaintiff failed to state a claim, (3) certain claims were moot, (4) Plaintiff did not adequately plead standing, and (5) Plaintiff failed to name indispensable parties. (Def.'s Mot. to Dismiss at 2.) Defendant also filed a request for judicial notice. (Def.'s RJN, Dkt. No. 8-1.) On August 23, 2018, Plaintiff filed his opposition, as well as a request for a judicial notice. (Plf.'s Opp'n, Dkt. No. 16; Plf.'s RJN, Dkt. Nos. 17-18.) On August 30, 2018, Defendant filed its reply, along with a supplemental request for judicial notice. (Def.'s Reply, Dkt. No. 20; Def.'s Supp. RJN, Dkt. No. 20-1.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Rule 12(b)(1) Motion to Dismiss

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

---

[1] Approximately 6.5 acres.

3

1  to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion tests whether a complaint

2  alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of subject

3  matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to

4  establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

5  1039 n.2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the

6  face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve

7  factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d

8  558, 560 (9th Cir. 1988).  Once a party has moved to dismiss for lack of subject matter jurisdiction

9  under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction.

10  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

11      **C.    Rule 12(b)(6) Motion to Dismiss**

12      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

13  on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule

14  12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

15  F.3d 729, 732 (9th Cir. 2001).

16      In considering such a motion, a court must "accept as true all of the factual allegations

17  contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

18  omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

19  there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

20  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

21  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

22  marks omitted).

23      A claim is plausible on its face when a plaintiff "pleads factual content that allows the

24  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

25  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

26  "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

27  will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

28      "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th

2  Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

3  a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a

4  probability requirement, but it asks for more than a sheer possibility that a defendant has acted

5  unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's

6  liability, it stops short of the line between possibility and plausibility of entitlement to relief."

7  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

8          Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

9  request to amend is made "unless it determines that the pleading could not possibly be cured by

10  the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

11  omitted).

12  <center>**III.    DISCUSSION**</center>

13     **A.    Request for Judicial Notice**

14          Defendant and Plaintiff each requests that the Court take judicial notice of various

15  documents created by and available from public agencies. [2]  Neither party challenges the requests

16  for judicial notice, except that Plaintiff challenges to what extent the Connection Agreement

17  submitted as Exhibit 15 covers the claims at issue.  (Plf.'s Opp'n at 1.)  Less than a week before the

18  hearing, Plaintiff also filed an objection to Defendant's supplemental request for judicial notice.

19  (Dkt. No. 21.)  The objection was, however, focused solely on the introduction of "new evidence"

20  with the reply brief, but did not assert that the materials at issue were not judicially noticeable.

21  (*Id.* at 1-2.)

22          Because all of the materials are public documents created by public agencies, the Court

23  GRANTS the parties' requests for judicial notice.

24     **B.    Clean Water Act**

25          "Congress enacted the Clean Water Act in 1972 in order to 'restore and maintain the

26

27  _____

28  [2] In total, the parties' requests for judicial notice covered approximately 975 pages of exhibits, the vast majority of which is never cited to by the parties.  In the future, the parties should be judicious when deciding which exhibits will aid the Court's resolution of the motion.

chemical, physical, and biological integrity of the Nation's waters.'" *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 915 (9th Cir. 2004) (quoting 33 U.S.C. § 1251). The CWA "prohibits the discharge of pollutants into United States waters except as authorized by the statute." *Id.* (citing 33 U.S.C. § 1311.) The CWA is administered through the NPDES permit program, and "[t]he discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal." *Id.*

### i. Adequacy of Notice

Defendant challenges the adequacy of the Amended Notice. Under the citizen suit provision, the CWA permits private persons and entities to enforce many of its provisions. *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 799-800 (9th Cir. 2009). Before a citizen suit may commence, however, "the citizen must give a 60-day notice of intent to sue" to the alleged violator, the EPA, and the state where the alleged violation occurred. *Id.* at 800. Part of the purpose of the notice is to give the government agencies the opportunity to enforce environmental regulations, as well as to give the alleged violator the chance to bring itself into compliance, thus obviating the need for legal action. *Id.*

The 60-day notice "is a jurisdictional necessity," *Ctr. for Biological Diversity*, 566 F.3d at 800. If a party does not comply with the notice requirements, the case must be dismissed. *Id.* The EPA requires that the notice:

> include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). "The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." *WaterKeepers N. Cal.*, 375 F.3d at 916 (internal quotation omitted). Thus, "[n]otice is sufficient if it is reasonably specific and if it gives the accused company the opportunity to correct the problem. Although the [CWA]'s notice requirement is strictly construed, plaintiffs are not required to list every specific aspect or detail of every alleged violation." *Id.* at 917 (internal quotations omitted). At the same time, a satisfactory notice must "tell[] a target precisely what it

6

United States District Court
Northern District of California

1  allegedly did wrong, and when.  The target is not required to play a guessing game in that respect."

2  *Ctr. for Biological Diversity*, 566 F.3d at 801.

3         a.   Failure to Mention "Facility," "Storm Water Discharges," or "General Permit"

4  Defendants argue that the Amended Notice is inadequate because it fails to reference the

5  facility, storm water discharges, or the General Permit.  (Def.'s Mot. to Dismiss at 18.)

6              1.   Facility

7  Defendants contend that the Amended Notice does not describe the "facility," which the

8  complaint describes as an "industrial facility" that is 283,896 square feet in size, devoted to certain

9  specified uses.  (Def.'s Mot. to Dismiss at 18; Def.'s Reply at 3.)  Plaintiff does not dispute that he

10  failed to provide the description of the facility.  (Plf.'s Opp'n at 5.)  Ultimately, however, the Court

11  finds that the description of the "facility" is a description of what Defendant is supposed to be,

12  rather than the location of where the violation is happening.  (*See* Compl. ¶ 30 ("The PORT OF

13  OAKLAND . . . is an industrial facility hosting an industrial railway storage yard, hog export

14  terminal, asphalt recycling, fumigation services, truck repair, truck operations, and multiple

15  industrial warehouse rentals totaling 283,896 square feet (hereinafter the 'Facility')").)  The

16  location of the alleged violation, in contrast, is the sewage and storm drain system.  (Compl. ¶¶ 31-

17  34; 3/22/2017 Notice at 2-3.)  The expanded description in the complaint does not modify that;

18  instead, it simply provides more information on what Defendant is alleged to be.  The mere failure

19  to describe the facility does not render the notice defective.

20              2.   Storm Water Discharges

21  Defendant argues that the Amended Notice "focuses solely on sanitary sewer discharges,

22  which falls under a completely different regulatory scheme under the CWA than industrial storm

23  water discharges."  (Def.'s Mot. at 18-19.)  The Court disagrees.  While the Amended Notice does

24  not use the term "storm water discharges," it describes "major discharges from the facility's

25  collection system, caused by ruptured pipelines due to inflow and infiltration during *periods of*

26  *heavy rainfall* . . . ."  (3/22/2017 Notice at 2 (emphasis added).)  Those inflow and infiltration

27  problems then "caused discharges of raw sewage and treated effluent to surface waters in violation

28  of the prohibition of [the CWA]."  (*Id.*)  Such information gives Defendant sufficient notice

United States District Court
Northern District of California

1    because the complained of discharges are allegedly occurring during and caused by storm events.

2                       3.   General Permit

3          Finally, Defendant contends that Plaintiff never refers to the General Permit, thus failing to

4 identify the standard, limitation, or order at issue. (Def.'s Mot. to Dismiss at 18; Def.'s Reply at

5 4.) In California, the state is responsible for administering the NPDES program, including the

6 issuance of individual permits to industrial dischargers. *WaterKeepers N. Cal.*, 375 F.3d at 915.

7 California has also issued a General Permit, which covers dischargers who file a notice of intent

8 with the state. *Id.* at 915-16.

9          The Court agrees that Plaintiff fails to refer to the General Permit. While the Amended

10 Notice generally states that the RWQCB issues NPDES permits and otherwise regulates

11 discharges, it does not identify the General Permit nor assert that Defendant's actions violate the

12 General Permit. At the hearing, Plaintiff conceded that he failed to identify the General Permit,

13 but argued that he did not need to. The Court disagrees. Because Plaintiff fails to identify the

14 General Permit, Plaintiff does not "identify the specific standard, limitation, or order alleged to

15 have been violated." 40 C.F.R. § 135.3(a); *see also Frilling v. Vill. of Anna*, 924 F. Supp. 821,

16 834 (S.D. Ohio 1996) (finding that the plaintiff failed to identify the specific standard at issue

17 where the plaintiff "*completely failed* to identify the Indirect Discharge permit anywhere in their

18 Notice Letter"); *cf. WaterKeepers N. Cal.*, 375 F.3d at 919 (finding notice letter sufficient where it

19 "point[ed] to the specific provisions of the General Permit allegedly violated"). Therefore, the

20 Court lacks jurisdiction to consider Plaintiff's second through fourth causes of actions, which

21 concern Defendant's alleged failure to comply with the General Permit's Discharge Prohibition

22 A(2), Defendant's failure to develop and implement a SWPPP as required by General Permit

23 Section A, and Defendant's failure to develop and implement an adequate monitoring and

24 reporting program as required by General Permit Section B.[3] (Compl. ¶¶ 44, 52, 57.)

25          Contrary to Defendant's suggestion, however, the failure to refer to the General Permit is

26 not dispositive as to the entire case. Plaintiff's first cause of action is not dependent on the General

27

28    [3] The Amended Notice also never mentions that Defendant failed to develop and implement a
SWPPP, or that it failed to develop and implement an adequate monitoring reporting plan.

Permit, but instead concerns Defendant's alleged operations "without NPDES permit coverage for their polluted storm water discharges, a violation of Sections 301(a) and 402(p)(2)(B) of the [CWA] . . . ." (Compl. ¶ 41.) The Amended Notice, likewise, alleges that Defendant violated the CWA "by discharging a pollutant from a point source to waters of the United States *without a NPDES permit*. Clean Water Act § 301(a) . . . ." (3/22/2017 Notice at 2-3 (emphasis added).) Thus, Plaintiff has adequately identified the specific standard or limitation at issue as to his first claim. Therefore, the Court finds dismissal of only the second through fourth causes of actions to be appropriate based on Plaintiff's failure to identify the General Permit.

### b. Time or Place of Discharge

Next, Defendant argues that Plaintiff fails to identify the time or place of discharge. (Def.'s Mot. to Dismiss at 19-21; Def.'s Reply at 4-6.) The Court disagrees.

#### 1. Timing

Defendant contends that the allegations regarding timing are not adequate because the Amended Notice only states that the violations are ongoing and have occurred within the last five years. (Def.'s Mot. to Dismiss at 19.) Plaintiff responds that the Amended Notice also specifies that the alleged discharges occurred "during periods of heavy rainfall." (Plf.'s Opp'n at 7; *see also* 3/22/2017 Notice at 2.) Defendant argues that this additional specification is still inadequate because it should not be required to conduct historic meteorological research and that "it defies meteorological science to suggest that every single time it rained, an illicit discharge was caused." (Def.'s Reply at 6.) The Ninth Circuit, however, has found similar allegations regarding timing to be sufficient.

In *San Francisco BayKeeper, Inc. v. Tosco Corp.*, the plaintiff alleged that the defendant was causing illegal discharges "'on each day when the wind has been sufficiently strong to blow coke from the piles into the slough.'" 309 F.3d 1153, 1159 (9th Cir. 2002). The plaintiff did not provide any specific dates other than the general date range covered by its notice. *Id.* The Ninth Circuit found this sufficient to inform the defendant what it was doing wrong with respect to the wind-related discharges. *Id.* Relying on *Tosco Corp.*, the Ninth Circuit in *WaterKeepers Northern California* likewise found that the plaintiff's notice stating that the defendant violated the

9

CWA by discharging polluted storm water "'during at least every rain event over 0.1 inches'" was sufficient. 375 F.3d at 917-18. While the plaintiff also attached two tables listing daily rain accumulation at the area sites, the Ninth Circuit noted that the plaintiff was not actually "required to include any rain tables." *Id.* Additionally, although the district court had found it significant that the defendant's expert had testified that storm water will not always be discharged from the defendant's facility after a 0.1 inch rainfall, the Ninth Circuit explained that this went to the merits, not the adequacy of the notice letter. *Id.* at 918.

In light of *Tosco Corp.* and *WaterKeepers Northern California*, the Court concludes that Plaintiff provided sufficient notice of the timing by stating that the discharges occurred during the last five years during periods of heavy rainfall. *See N. Cal. River Watch v. Oakland Mar. Support Servs.*, Case No. 10-cv-3912-CW, 2011 U.S. Dist. LEXIS 14551, at *14 (N.D. Cal. Feb. 14, 2011) (finding adequate allegations where the notice did not identify specific dates but stated that the discharges occurred during "every significant rain event" since a specified date).

### 2. Location

Defendant argues that the Amended Notice does not adequately identify a location because its references to "107,500 linear feet of storm drains and 25,000 linear feet of sanitary sewers within the 366 acre OGDA property" and "transmission pipes within the Port of Oakland servicing Buildings 803 and 804 and running adjacent to 19th Street" is too generalized. (Def.'s Mot. to Dismiss at 20.) Specifically, Defendant contends that these areas are vast, with the OGDA containing "tens of thousands of feet of utility across hundreds of acres of land," including areas that are under the exclusive jurisdiction of the City of Oakland. (*Id.*) Likewise, the transmission pipes near Buildings 803 and 804 are serviced by tens of thousands of feet of sewer lines, which Defendant also asserts is "unrelated to the industrial storm water concerns raised in the Complaint." (*Id.* at 21.)

To the extent Defendant argues that it may not be responsible for certain pipes, this is an issue on the merits, not whether notice is adequate. (*See* Def.'s Reply at 4-5.) As to Defendant's contention that Plaintiff's other allegations are too "general," the Court disagrees. Defendant would seem to require that a notice challenging the condition of a sewer system specify every

location where there is a defect, but Defendant cites no authority that requires this level of specificity. Instead, cases in this district concerning storm water conveyance systems or sewer systems have found more general allegations to be sufficient.

In *California Sportfishing Protection Alliance v. Shiloh Group, LLC*, the notice alleged that the defendant was unlawfully discharging polluted storm water "'through numerous discharge points connected to a system of underground storm water conveyances throughout the 31-acre Facility and into Pruitt Creek . . . .'" 268 F. Supp. 3d 1029, 1051 (N.D. Cal. 2017). The district court found that this sufficiently identified the location of the alleged violation as the underground storm water conveyance system. Similarly, in *Northern California River Watch v. Honeywell Aerospace*, the notice identified discharge from "'numerous point sources within the Site including: the above and below ground storage tanks; chemical storage; recycling equipment; waste ponds and solvent transfer equipment identified in the various records of Polluters and the regulatory agencies which have oversight of the Site.'" 830 F. Supp. 2d 760, 768 (N.D. Cal. 2011). The notice also stated that the discharge occurred "through conduits." *Id.* The district court concluded that this sufficiently identified the point sources at issue, despite the lack of specifics about each alleged problematic source.

Although the Amended Notice covers a significant area, the Court finds that the allegations regarding location are sufficient. The Amended Notice explains that the sewer system is problematic, points to specific areas of particular concern, and explains that the problems cause leakage from the defective pipes into the Bay. (3/22/2017 Notice at 2-3.)

### c. Activity that Caused Discharge

Finally, Defendant asserts that there is insufficient information about the activity that caused the discharges because it only states that Defendant has serious ongoing violations, owns and operates sewage transmission pipes with a chronic history of inflow and infiltration and cracks, and has a major history of discharges. (Def.'s Mot. to Dismiss at 22.) Again, the Court disagrees. The Amended Notice states that there are cracks in the piping of the sewage transmission pipes servicing Buildings 803 and 804. (3/22/2017 Notice at 2.) It also states that the storm drains and sanitary sewers within the OGDA property have defects, describes those

11

defects, and states that the defects have resulted in the contamination of soil and groundwater by certain specified chemicals. (*Id.*) Those materials then leach into storm drains that empty into the Bay. The Amended Notice further describes problems with the collection system during periods of heavy rainfall, where leakage causes "a back of head pressure which in turn, forces the leaked raw effluent into Bay waters." (*Id.*) In short, the Amended Notice sufficiently describes the alleged problems with the sewage system and storm drains, which in turn cause pollutants to enter the Bay. *Compare with Honeywell Aerospace*, 830 F. Supp. 2d at 768 (finding sufficient allegations where the notice letter explained that solid and hazardous wastes were being discharged from tanks and through conduits to an estuary).

### ii. Failure to State a Claim

Defendant argues that Plaintiff has failed to state a claim because Plaintiff describes Defendant as "an industrial facility hosting an industrial railway storage yard, hog export terminal, asphalt recycling, fumigation services, truck repair, truck operations, and multiple industrial warehouse rentals totaling 283,896 square feet (hereinafter the 'Facility')." (Compl. ¶ 30.) Defendant contends that this description is not accurate, and that there is no location in the Port that contains a facility of 283,896 square feet dedicated to the uses identified by Plaintiff. (Def.'s Mot. to Dismiss at 23-24; Def.'s Reply at 9.)

Plaintiff does not dispute that this description appears to be inaccurate, focusing solely on whether the "Port of Oakland" exists. (Plf.'s Opp'n at 8-9.) At the same time, it is not clear that the failure to adequately describe Defendant is fatal to the complaint when what Defendant is precisely is not at issue as to whether the CWA was violated based on Defendant's maintenance of its sewer systems. At the hearing, Plaintiff agreed to modify the description.

### iii. Mootness

Defendant argues that to the extent Plaintiff is bringing claims based on the RWQCB Order No. R2-2004-00086 ("RWQCB Order") or the cracks in sewage transmission pipes servicing Buildings 803 and 804, these claims are moot. (Def.'s Mot. to Dismiss at 24.)

"Longstanding principles of mootness . . . prevent the maintenance of suit when there is no reasonable expectation that the wrong will be repeated." *Gwaltney of Smithfield v. Chesapeake*

United States District Court
Northern District of California

*Bay Found.*, 484 U.S. 49, 66 (1987) (internal quotations omitted).  Thus, "[a] citizen suit is moot if it is based on wholly past violations, and if there is no reasonable expectation that the alleged wrong will be repeated."  *Shiloh Grp., LLC*, 268 F. Supp. 3d at 1041 (citing *Gwaltney*, 484 U.S. at 66-67).  "In seeking to have a case dismissed as moot, however, the defendant's burden is a heavy one.  The defendant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur."  *Gwaltney*, 484 U.S. at 66 (internal quotations omitted).

a.   Regional Water Quality Control Board Order

Defendant contends that to the extent Plaintiff's suit is based on the RWQCB Order, the case is moot because Defendant has fully complied with the order, relying on a No Further Action letter issued by the RWQCB on December 20, 2013.  (Def.'s Mot. to Dismiss at 25; *see also* Def.'s RJN, Exh. 17.)  Moreover, Defendant states that this order "was issued in relation to former underground and aboveground petroleum storage tanks and had absolutely nothing to do with sanitary sewer lines or any wrongdoing by" Defendant.  (*Id.*)  Plaintiff responds that it is not clear that the December 20, 2013 No Further Action letter covers the entirety of the RWQCB Order.  (Plf.'s Opp'n at 10.)  In its reply, Defendant for the first time presents evidence that every Petroleum case at the former Oakland Army Base has been closed.  (Def.'s Reply at 9-10; Def.'s Supp. RJN, Exh. 21.)

The Court finds that anything covered by the December 20, 2013 No Further Action letter is moot.  Plaintiff does not argue otherwise, as Plaintiff's argument is focused solely on whether the December 20, 2013 No Further Action is for the entire RWQCB Order.

It is, however, entirely unclear to the Court why the RWQCB Order is relevant to the claims in this case.  The RWQCB Order appears to be concerned with petroleum releases from underground storage tanks and drums of solvents, paints, or other chemicals.  (Plf.'s RJN, Exh. A ("RWQCB Order") at 4-5.)  At the hearing, Plaintiff also agreed that the RWQCB Order was only relevant to the removal of the underground storage tanks.[4]  The RWQCB also focuses its concerns

---

[4] Plaintiff argued that there may be additional land use controls and covenants being imposed by California's Department of Toxic Substances Control ("DTSC").  (*See* Plf.'s Opp'n at 10.)  It is not

13

United States District Court
Northern District of California

1    on the release of VOCs into groundwater, including vinyl chloride, cis-1,2-dichloroethene, trans-

2    1,2-dichloroethene, trichloroethene, and 1,1,2,2-tetrachloroethane. (*Id.* at 5.) In contrast, the

3    Amended Notice is concerned with storm water and sewage discharges into the Bay, with

4    chemicals of concern being petroleum hydrocarbons, polycyclic aromatic hydrocarbons, lead and

5    other heavy metals, polychlorinated biphenyls, pesticides, and raw sewage. (3/22/2017 Notice at

6    2.) Likewise, the first cause of action is focused on the release of polluted storm water discharges

7    without a NPDES permit. (Compl. ¶¶ 38, 41.) This claim does not raise any concerns about

8    petroleum discharges into groundwater. While this is a distinct issue from mootness, the Court

9    notes that the RWQCB Order does not seem to have any relevance to this case, and it is unclear

10   how Plaintiff can raise any claims based on the RWQCB Order.

           b.   Buildings 803 and 804

12          Defendant also argues that any claims related to Buildings 803 and 804 are moot because

13   work on the sanitary sewer lines servicing these buildings was completed in May 2018, pursuant

14   to a Connection Agreement between Defendant and the City of Oakland. (Def.'s Mot. to Dismiss

15   at 26.) Defendant contends that this work included the replacement, abandonment, and/or slip

16   lining of the subject sewer lines. (*Id.*)

17          The Court finds that at this juncture, Defendant has failed to satisfy its "heavy burden" that

18   it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to

19   recur." *Gwaltney*, 484 U.S. at 66 (internal quotation omitted). Defendant makes no showing as to

20   the full scope of the work of the sewer lines, and whether it would cover the entirety of the cracks

21   discussed by the Amended Notice. Indeed, the Connection Agreement appears to have a very

22   limited scope of "proposed temporary restroom installation/connection work" to update the

23   infrastructure and facilitate connections between the 800 Series Buildings to a new sewer system.

24   (Def.'s RJN, Exh. 15 ("Connection Agreement") at ¶ D.) It is not clear this "proposed temporary

25   restroom installation/connection work" necessarily fixes every alleged cracks in the sewage

26   _____

27   clear how this is relevant to this case either. Such controls are separate from the RWQCB Order,
     the only order specifically mentioned in the Amended Notice. Thus, to the extent Plaintiff is
28   depending on an unspecified DTSC order, the Court will likely lack jurisdiction over any such
     claims.

transmission pipes servicing Buildings 803 and 804 and running adjacent to 19th Street. The Court therefore cannot conclude that Plaintiff's claims related to Buildings 803 and 804 are moot.

### iv. Standing

Defendant argues that Plaintiff has failed to establish Article III standing. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

First, Defendant argues that Plaintiff fails to adequately allege injury. (Def.'s Mot. to Dismiss at 27-28.) The Court disagrees. In his complaint, Plaintiff alleges that he "uses and enjoys the waters of the San Francisco Bay," including "us[ing] these areas to fish, sail, boat, kayak, swim, birdwatch, view wildlife, and engage in scientific studies." (Compl. ¶ 8.) Defendant argues that this is inadequate because Plaintiff cannot perform these activities in the Port or the areas immediately adjacent to the Port. (Def.'s Mot. to Dismiss at 28; Def.'s Reply at 10.) Defendant cites no authority that Plaintiff must perform activities immediately adjacent to the allegedly polluting site, particularly when contaminants are capable of spreading. *Contrast with Laidlaw*, 528 U.S. at 181-82 (finding that injury in fact was adequately documented where one of the plaintiff members alleged that "he would like to fish, camp, swim, and picnic in and near the river between *3 and 15 miles downstream from the facility*").

In the alternative, Defendant argues that the Bay is publicly accessible to and used by millions of people, which means Plaintiff's injury is not "particularized" and no greater than any other member of the public residing in the Bay Area. (Def.'s Mot. to Dismiss at 28.) The Court rejects this argument. The Supreme Court does not require that a plaintiff engage in a use that is different from any other use that members of the public could engage in; it requires that the plaintiff does use or would use the affected area if not for the alleged pollution. In *Laidlaw*, the Supreme Court explained that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values

of the area will be lessened by the challenged activity." 528 U.S. at 183. The Supreme Court did not require that the plaintiffs use the affected area in a unique way; the sole issue was whether their recreational, aesthetic, and/or economic interests were affected. *Id.* at 183-84. Thus, the Supreme Court found that injury in fact was adequately alleged where the plaintiff members asserted that they would use the affected river for fishing, swimming, birdwatching, boating, and other recreational purposes, if not for the pollution. *Id.* at 181-83. As applied here, Plaintiff is not obligated to assert that he would use the Bay differently from how the rest of the public could use it; he need only aver that he does use or would use the area if not for the alleged pollution, which he has done. Therefore, the Court finds that Plaintiff has adequately alleged injury.

Second, Defendant argues that Plaintiff does not allege causation because other entities may also be responsible for discharges. (Def.'s Mot. to Dismiss at 29.) Defendant relies on *Lujan v. Defenders of Wildlife*, in arguing that "[P]laintiff must demonstrate there are not 'independent actors not before the court[] and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" (*Id.* (quoting *Lujan*, 504 U.S. 555, 562 (1992).) This discussion in *Lujan*, however, concerned the specific situation of "[w]hen the suit is one challenging the legality of government action or inaction," specifically when "a plaintiff's asserted injury arises from the government's alleged unlawful regulation (or lack of regulation) of *someone else*." *Lujan*, 504 U.S. at 561-62. In those circumstances, causation is reliant "on the response of the regulated (or regulable) third party to the government action or inaction," who might not be before the court. *Id.* at 562. *Lujan* does not, however, suggest that the fact that other entities may pollute as well absolves a polluter from having caused or contributed to a plaintiff's injury. The Court rejects this argument, and finds that Plaintiff has adequately alleged causation.

### v. Indispensable Parties

Finally, Defendants seek dismissal under Rule 12(b)(7) based on Plaintiff's failure to join indispensable parties, including the City of Oakland and private leaseholders. (Def.'s Mot. to Dismiss at 30-31.) "Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests, or would subject any of the parties to the danger of inconsistent obligations." *Barnes & Noble, Inc.*

16

1    *v. LSI Corp.*, 823 F. Supp. 2d 980, 986 (N.D. Cal. 2011).  Where a party is required to be joined

2    but cannot be joined, "the court must determine whether, in equity and good conscience, the action

3    should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

4            As an initial matter, Defendant's motion to dismiss under Rule 12(b)(7) must be denied

5    because Defendant does not assert that the other parties *cannot* be joined to the current action.  In

6    *Barnes & Noble, Inc.*, the district court denied the defendant's motion to dismiss for failure to join

7    necessary parties because the motion "makes no attempt . . . to explain how these parties cannot be

8    joined to the current action . . . ."  823 F. Supp. 2d at 986; *see also Treefrog Devs. v. Klearkase,*

9    *LLC*, Case No. 13-cv-1575 H (KSC), 2013 U.S. Dist. LEXIS 197894, at *12 (S.D. Cal. Oct. 25,

10   2013) ("denial is appropriate because Defendants do not provide the Court with any reasons why

11   either Otter entity cannot be joined").

12           To the extent Defendant argues that Plaintiff should be required to name the City of

13   Oakland, this does not seem to be an issue of joinder, but rather a claim that the "Port of Oakland"

14   is an informal nickname while its proper name is "the City of Oakland, a municipal corporation,

15   acting by and through its Board of Port Commissioners."  (Def.'s Mot. to Dismiss at 30; Def.'s

16   Reply at 11.)  At the hearing, Defendant explained that there are two issues.  First, Defendant

17   stated that "Port of Oakland" is not the proper name, and that this should be modified.  Second,

18   Defendant argued that Plaintiff should be required to add the City of Oakland, the municipal

19   corporation, acting through its City Council.  Defendant contends this addition is necessary

20   because the OGDA is half-owned by the City acting through the City Council, and half-owned by

21   the City acting through the Board of Port Commissioners.

22           The Court agrees that Plaintiff should amend the complaint to name the "City of Oakland,

23   a municipal corporation, acting by and through its Board of Port Commissioners," in place of

24   "Port of Oakland."  At the hearing, Plaintiff also agreed to do so.  With respect to naming the City

25   of Oakland, acting through its City Council, it is not as clear this is a necessary party.  While the

26   OGDA property may be owned by both entities, any claims against the City of Oakland acting

27   through the Board of Port Commissioners would presumably be limited to the property owned by

28   that entity.  Plaintiff may name the City of Oakland, acting through its City Council, if he believes

United States District Court
Northern District of California

1    it is warranted to fully address his claims.

2        As to leaseholders, the Court disagrees that these are indispensable parties.  Plaintiff has

3    alleged that Defendant's failure to maintain its sewage and storm drain systems has resulted in the

4    release of polluted storm water into the Bay.  (*See* Compl. ¶¶ 38, 41.)  Defendant cites no authority

5    that in such circumstances, the leaseholders must be added to the litigation.  Indeed, this argument

6    appears contrary to Ninth Circuit authority, which finds that the CWA "prohibit[s] discharge by

7    those who merely *convey* pollutants, and who do not generate pollutants or add them to storm

8    water."  *Shiloh Grp., LLC*, 268 F. Supp. 3d at 1044.  In *Natural Resources Defense Council, Inc. v.*

9    *County of Los Angeles*, the defendants operated a municipal separate storm sewer system ("MS4")

10   that collected, transported, and discharged storm water.  673 F.3d 880, 899-900 (9th Cir. 2011),

11   *overturned on other grounds by L.A. Cty. Flood Control Dist. v. Nat. Res. Def. Council, Inc.*, 568

12   U.S. 78, 80 (2013) (limiting review of case to the single question of whether flow of water out of a

13   concrete channel within a river constitute a discharge of a pollutant).  The Ninth Circuit rejected

14   the defendants'[5] argument that channeling pollutants created by other municipalities or industrial

15   NPDES permitees did not create liability, explaining that "the [CWA] does not distinguish

16   between those who add and those who convey what is added by others--the Act is indifferent to

17   the originator of water pollution."  *Id.* at 900.  In other words, the CWA "bans the discharge of any

18   pollutant by any person regardless of whether that person was the root cause or merely *the current*

19   *superintendent of the discharge*."  *Id.* (internal quotation omitted).  Thus, Defendant's liability here

20   for failing to maintain its sewage and storm drain systems is not affected by whether the

21   leaseholders were the ultimate creators of the pollutants.  *See also Shiloh Grp., LLC*, 268 F. Supp.

22   3d at 1046.  Because the actions of any leaseholders does not impact Defendant's liability, the

23   Court finds they are not essential parties.

24                          **IV.    CONCLUSION**

25        For the reasons stated above, the Court GRANTS Defendant's motion to dismiss as to the

26   second through fourth causes of action, and DENIES Defendant's motion to dismiss as to the first

27

28   _____
     [5] Notably, the case was brought solely against the county and the county individuals who were
     responsible for the MS4, and not against any of the entities that actually created the pollutants.

United States District Court
Northern District of California

cause of action. The Court, however, ORDERS Plaintiff to file an amended complaint that modifies the description of Defendant and names the "City of Oakland, a municipal corporation, acting by and through its Board of Port Commissioners," in place of "Port of Oakland." The amended complaint shall be filed by **October 22, 2018**, and may not add any new causes of action without Court approval.

IT IS SO ORDERED.

Dated: October 5, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge