BARBARA J. PARKER, City Attorney, SBN 069722
MARIA BEE, Chief Assistant City Attorney, SBN 167716
JOHN A. BURKE, Supervising Deputy City Attorney, SBN 148385
CHRISTINA LUM, Deputy City Attorney, SBN 278324
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-4483; Fax: (510) 238-6500
Email: clum@oaklandcityattorney.org
X05557/3375493v1

Attorneys for Defendant,
CITY OF OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY and COUNTY of SAN FRANCISCO,<br><br>Plaintiff,<br><br>v.<br><br>CITY of OAKLAND and PORT OF OAKLAND,<br><br>Defendants. | Case No. 3:24-cv-02311-TSH<br><br>**DEFENDANT CITY OF OAKLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: December 5, 2024<br>Time: 10 a.m.<br>Courtroom: E – 15th Floor |

# TABLE OF CONTENTS

Page No(s).

I. INTRODUCTION ..................................................................................................... 4
II. FACTUAL BACKGROUND ..................................................................................... 5
    A. History of the City of Oakland and Port of Oakland ..................................... 5
    B. This Lawsuit .................................................................................................. 6
III. LEGAL STANDARD ................................................................................................ 7
IV. ARGUMENT .............................................................................................................. 8
    A. The City of Oakland does not own, control, operate, or otherwise have jurisdiction over OAK. ................................................................................. 8
        1. The Charter of the City of Oakland establishes the Port of Oakland as a separate and independent entity from the City of Oakland. ................. 8
        2. Courts have recognized the separate and independent legal status of the Port of Oakland, and its exclusive jurisdiction over Port matters ......................................................................................... 10
        3. The City of Oakland and the Port of Oakland both intend to be and conduct themselves as separate and independent entities and parties .......................................................................................... 11
        4. The Port of Oakland has exclusive jurisdiction over OAK. ................ 12
V. CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................... 6

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) ................................................................................... 6

*City of Oakland v. Hogan*,
 41 Cal. App. 2d 333 (1940) .................................................................................... 7, 9

*City of Oakland v. Williams*,
 206 Cal. 315 (1929) .................................................................................................. 9

*Dzung Chu v. Oracle Corp.*,
 627 F.3d 376 (9th Cir. 2010) ..................................................................................... 6

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
 462 U.S. 611 (1983) .................................................................................................. 8

*Greyhound Lines, Inc. v. Dep't of California Highway Patrol*,
 213 Cal. App. 4th 1129 (2013) ............................................................................. 8, 10

*Haggerty v. City of Oakland*,
 161 Cal.App.2d 407 (1958) ....................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) .................................................................................................. 6

*McKee v. Los Angeles Interagency Metro. Police Apprehension Crime Task Force*,
 134 Cal. App. 4th 354 (2005) .................................................................................... 8

*Scott v. Harris,*
 550 U.S. 372 (2007) .................................................................................................. 6

*Taylor v. List*,
 880 F.2d 1040 (9th Cir. 1989) ................................................................................... 6

*Tolan v. Cotton*,
 134 S. Ct. 1861 (2014) .............................................................................................. 6

*Westsiders Opposed to Overdevelopment v. City of Los Angeles*,
 27 Cal. App. 5th 1079 (2018) .................................................................................. 10

**Statutes**

Fed. R. Civ. P. 56..................................................................................................................6

Cal. Gov't Code § 34458 .......................................................................................................7

**Other Authorities:**

Cal. Const. art. XI, § 3, 5 .......................................................................................................7

## I. INTRODUCTION

Plaintiff City and County of San Francisco ("San Francisco") purports to have filed this lawsuit against two defendants – the "City of Oakland" and the "Port of Oakland." Defendant City of Oakland is not a proper party to this lawsuit, and there is no legal basis for Plaintiff to bring this lawsuit against Defendant City of Oakland. The only proper defendant in this lawsuit is the Co-Defendant Port of Oakland, also known as City of Oakland, acting by and through the Board of Port Commissioners ("Board"), which has "the complete and exclusive power . . . [and] duty for and on behalf of the City of Oakland . . . [t]o sue and defend in the name of the City in all actions and proceedings wherein there is involved any matters within the jurisdiction of the Board." Charter of the City of Oakland (herein sometimes referred to as the "Charter") § 706(1).

Defendant City of Oakland, acting by and through its City Council, ("City of Oakland") has no jurisdiction over the "San Francisco Bay Oakland International Airport" ("OAK") and therefore no authority to provide the relief Plaintiff seeks, i.e. to enjoin the renaming of OAK. This issue of jurisdiction and authority is a matter of law.

Co-Defendant Port of Oakland is a separate legal entity with exclusive jurisdiction over OAK for purposes of suing and defending in the name of the City of Oakland in all actions and proceedings involving matters within the Board's jurisdiction as mandated by the Charter. Both the City of Oakland and the Port of Oakland have acknowledged this separation in numerous official documents, court proceedings and filings, and in their respective government operations and conduct.

Even Plaintiff has acknowledged that the Port of Oakland is the actor that renamed OAK. Plaintiff's Amended Complaint specifically identifies the "Port of Oakland" and the "Board of Port Commissioners" as engaging in the renaming of OAK. (Dkt. 12, 7-11.) Plaintiff's Motion for Preliminary Injunction also identifies the "Port Defendant" or "the Board of Port Commissioners" as the entity that took the steps to rename OAK. (Dkt. 35, at 5-6.) And the OAK renaming is the conduct that Plaintiff seeks to enjoin in this lawsuit.

There is simply no dispute as to any of these facts. Plaintiff did not provide any law or evidence to dispute this issue in its Motion for Preliminary Judgment (Dkt. 35, Dkt. 61), because

Plaintiff cannot do so. Likewise, Plaintiff will not be able to do so with respect to this Motion for Summary Judgment.

Accordingly, the Court should grant this Motion for Summary Judgment, dismissing the City of Oakland. It does not serve judicial economy to subject the City of Oakland, which has no dog in this fight, to this litigation.

## II. FACTUAL BACKGROUND

### A. History of the City of Oakland and Port of Oakland

In 1927, the Port of Oakland was established by a voter-approved amendment to the Charter, "assigning and placing said department and all matters, employments, contracts, and properties of the city relating to the port and harbor under the control and management of a Board of Port Commissioners." (Request for Judicial Notice, ("RFJN") 1, 1.) Ordinance No. 3825 N.S. vested in the Board "complete and exclusive jurisdiction and control as to all matters concerning the port and harbor of the city, and over the 'Port Area' . . ." *Id.* The ordinance also stated that the Board "shall have and exercise full control and jurisdiction over all lawful ordinances, resolutions, regulations, employments, duties, contracts, claims, leases, and obligations pertaining to or related to harbor work or harbor construction, port development, its management and operation, and to any and all other matters included in the said ARTICLE XXV [of the Charter])." *Id.* at 2. In addition, the Board "shall have and exercise full control and jurisdiction over all litigation, proceedings or actions, at law or in equity, and special proceedings, for or against the city, pertaining or related to any matters within its jurisdiction." *Id.* at 5. Simultaneously, Ordinance No. 3826 N.S. officially "conferred upon, delegated to, and vested exclusively in the Board of Port commissioners, subject to its approval, the power and authority in its discretion to acquire, establish, equip, maintain and operate an airport within the port area of the City of Oakland . . . ." (RFJN 2.)

Fast forwarding to present day, Article VII of the Charter reflects the independent status conferred to the Port of Oakland from almost a century earlier. Charter of the City of Oakland §§ 700, 701 and 706. (RFJN 3.)

B. **This Lawsuit**

On April 18, 2024, Plaintiff City of San Francisco filed this action against the City of Oakland challenging the Port of Oakland's decision to rename OAK. (Dkt. 1, ¶ 23.) Counsel for the City of Oakland, the Oakland City Attorney, informed counsel for Plaintiff that the City of Oakland was the wrong party. Plaintiff then amended the complaint to add the "Port of Oakland," but declined to dismiss the City of Oakland. (Dkt. 12.) Counsel for the Port of Oakland, the Port Attorney, answered and admitted that the Port of Oakland is an independent department with exclusive ownership and control over OAK. (Dkt. 15.) Plaintiff nevertheless declined to dismiss the City of Oakland, resulting in the City of Oakland filing an answer. (Dkt. 27.)

Plaintiff's factual allegations regarding the City of Oakland's involvement in the renaming of the OAK in this action are that the "City of Oakland owns Oakland Airport and the federal trademark registration." (Dkt. 12, ¶ 8.) Against the Port of Oakland, Plaintiff alleges that the Board of Port Commissioners "exclusively controls and manages the Port of Oakland," a department of the City of Oakland that "provid[es] airport services through Oakland Airport." (Dkt. 12, ¶ 9). These factual allegations are incomplete and incorrect as a matter of law.

First, the City of Oakland does not own OAK, as stated in Ordinance No. 3826 N.S. (RFJN 2.) Additionally, the Port of Oakland also admitted to exclusive ownership of OAK in its answer, which describes its relationship with OAK as follows:

> ". . . the Board of Port Commissioners has complete and exclusive power to act on behalf of the City of Oakland over the Port Area, defined in the City Charter. . . . **The Port owns and operates Oakland Airport**, which is located in the Port Area in Oakland, Alameda County."

(Dkt. 15, ¶¶ 16-17; emphasis added.) The City of Oakland and the Port of Oakland have historically operated with the understanding that the Port of Oakland owns OAK, pursuant to official land surveys and maps. (RFJN 2 and 4.)

Second, the City of Oakland does not own the federal trademark registration. (Dkt. 27, ¶ 8.) Plaintiff themselves submitted certificates of U.S. Patent and Trademark indicating the marks "Oakland International Airport" belong to the Port of Oakland. (Dkt. 36, Declaration of Jessica

6
DEFENDANT CITY OF OAKLAND'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

3:24-cv-02311-TSH

Williams, Ex. H).

Plaintiff has asserted no other facts nor has Plaintiff provided even a scintilla of evidence of the City of Oakland's involvement in the renaming of OAK, any reason why the City of Oakland should be a defendant in this action, or any relief that the City of Oakland has the authority to provide to Plaintiff.

### III.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[I]nferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At the summary judgment stage, a judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Dzung Chu v. Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010); *see also* Fed. R. Civ. P. 56(c)(1)(B). A "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). Where record evidence exists that blatantly contradicts the opposing party's version of the story such that no reasonable jury could believe it, "a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380-81 (2007).

# IV. ARGUMENT

## A. The City of Oakland does not own, control, operate, or otherwise have jurisdiction over OAK.

### 1. The Charter of the City of Oakland establishes the Port of Oakland as a separate and independent entity from the City of Oakland.

The City of Oakland is a separate and independent legal entity from the Port of Oakland.

City charters may create and regulate a sub-government within a city. Cal. Const. art. XI, § 5. Pursuant to this grant of power, the Charter of the City of Oakland created the Port of Oakland as an independent, self-supporting department within the City of Oakland.[1] Charter of the City of Oakland § 700. The Board of Port Commissioners is the legislative body that has the "exclusive control and management of the Port Department." Charter of the City of Oakland § 701. The Board is composed of seven members who are appointed by the Oakland City Council. *Id.* The "complete and exclusive power" of the Board includes, among other things, a duty to:

(1) sue and defend any matters within the jurisdiction of the Board for and on behalf of the City of Oakland;

(2) take charge of, control, and supervise the Port;

(3) manage the business of the Port; and

(4) perform any and all other acts which may be necessary and proper to carry out the general powers of the City.

See, e.g., *City of Oakland v. Hogan*, 41 Cal. App. 2d 333, 341, 344-45 (1940); Charter of the City of Oakland § 706. Included in the description of Board powers and duties is the duty to appoint a Port Attorney "whose duty it shall be to . . . defend and . . . prosecute or compromise all actions at law or in equity and special proceedings for or against the City or any officers thereof in his official capacity, pertaining to matters within the jurisdiction of the Board . . . ." Charter of the City of Oakland § 706(20). Additionally, the Board enters into and controls contracts on behalf of the Port of Oakland. Charter of the City of Oakland §§ 709-711. The

---

[1] Amendments to a city charter must be adopted by a majority vote of electors. Cal. Gov't Code § 34458; Cal. Const. art. XI, § 3.

Board independently and separately manages its own fiscal matters. Charter of the City of Oakland §§ 715-721. In general, the Board "exercise[s] on behalf of the City, all rights, powers and duties in respect to the subject matter [within the Article]" with respect to the Port. Charter of the City of Oakland § 706(17).

Moreover, such separate and independent relationships are not uncommon. The Supreme Court has recognized that:

> Increasingly during this century, governments throughout the world have established separately constituted legal entities to perform a variety of tasks. The organization and control of these entities vary considerably, but many possess a number of common features. A typical government instrumentality, if one can be said to exist, is ***created by an enabling statute that prescribes the powers and duties*** of the instrumentality, and specifies that it is to be ***managed by a board*** selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the ***powers to hold and sell property and to sue and be sued***.

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 623-624 (1983) (overruled on other grounds) (emphasis added). To determine whether a separate entity was created, factors for consideration are whether the entity "was intended to be a separate entity," "is governed by a board of directors and executive council, with operations conducted under a separate command structure," "is a fiscally separate entity," and "can enter into contracts." *McKee v. Los Angeles Interagency Metro. Police Apprehension Crime Task Force*, 134 Cal. App. 4th 354, 360-361 (2005). The fact that entities "are departments within one agency does not deprive them of their separate identities." *Greyhound Lines, Inc. v. Dep't of California Highway Patrol*, 213 Cal. App. 4th 1129, 1134 (2013).

Here, the Charter created the Port of Oakland as separate and independent entity, and explicitly granted it control and management powers that are ***exclusive***. In addition to the explicit words of the Charter, the Port of Oakland also has the "complete and exclusive power" to "hold and sell property and to sue and be sued," consistent with the Supreme Court's description of independent legal entities. As clearly delineated in the Charter and consistent with characteristics of separate and independent entities recognized by caselaw, the City of Oakland and the Port of Oakland are separate and independent legal entities.

### 2. Courts have recognized the separate and independent legal status of the Port of Oakland, and its exclusive jurisdiction over Port matters.

Courts have interpreted the Charter as establishing the Port of Oakland as a separate and independent entity, holding that the City of Oakland is not a proper party for matters under the control of the Port of Oakland.

Courts have recognized that the "Port Commission is a legal entity, created by charter and empowered by approval of the state legislature to act as an agency of the municipality." *Hogan, supra,* 41 Cal. App. 2d at 342. "Since the board acts as the agency of its principal, the city, it is a legislative body of the municipal corporation." *Id.* at 343. Courts have acknowledged that Article VII of the Charter of the City of Oakland grants the Board of Port Commissioners "exclusive control over port matters," *Haggerty v. City of Oakland*, 161 Cal.App.2d 407, 414 (1958), vests it "with the exclusive control and charge of said harbor, as the successor of all the rights and powers formerly exercised by" the City of Oakland, and "charge[s]" it "with the performance of all the duties formerly imposed upon said city…" *Hogan*, 41 Cal.App.2d at 343 (citations omitted); see also *City of Oakland v. Williams*, 206 Cal. 315, 328 (1929) ("The board is primarily interested in the development and commercial success of said harbor, and, as to it, it exercises exclusive control."). In short, "the 'Port Department' is not only a legislative body of the municipality of Oakland, but it is the body given exclusive control over port matters." *Hogan*, 41 Cal. App. 2d at 344.

In a recent example, in *Derron Thibodeaux v. City of Oakland, Acting by and Through Its Board of Commissioners*, case no. 18-cv-03359-KAW, the court distinguished the Port of Oakland and the City of Oakland, finding that the City of Oakland is not an indispensable party to an action regarding property owned only by the Port of Oakland. (RFJN 5, at 16-17.) The court also found that City of Oakland as a leaseholder is also not an indispensable party to actions against the Port of Oakland. *Id.*

In these cases, the courts recognized that the Port of Oakland's actions over matters under its exclusive control are not a basis for liability against the City of Oakland. Here, there is no evidence that any other entity other than the Port of Oakland has exclusive ownership and

control over OAK. There is also no evidence indicating that the City of Oakland was involved in any manner with the renaming of OAK. For almost a century, courts have consistently interpreted the Charter as establishing the Port of Oakland as a separate and independent entity from the City of Oakland, and there is absolutely no basis to deviate from this longstanding interpretation.

### 3. The City of Oakland and the Port of Oakland both intend to be and conduct themselves as separate and independent entities and parties.

Consistent with the plain language of the Charter, both the City of Oakland and the Port of Oakland interpret the Charter to mean that they are each separate and independent entities, and each identifies itself and each other as separate and independent entities. There is no reason to impose a different understanding.

"The City's interpretation of its own charter is entitled to great weight and respect unless shown to be clearly erroneous and must be upheld if it has a reasonable basis." *Westsiders Opposed to Overdevelopment v. City of Los Angeles*, 27 Cal. App. 5th 1079, 1087 (2018).

The City of Oakland and the Port of Oakland each have always identified themselves as separate and independent entities and continue to do so in this action. The City of Oakland and the Port of Oakland each are represented by separate counsel and each filed separate answers. *See Greyhound Lines, supra,* 213 Cal. App. 4th at 1135 (CHP and Caltrans recognized as separate parties because "the two departments have conducted themselves as separate parties. Each party is represented by its own counsel and each filed a separate responsive pleading to the cross-complaint."). The City of Oakland denies any ownership of OAK, as stated in its answer in this case. (Dkt. 27, ¶ 8.) The Port of Oakland admits that the Port of Oakland is an "independent department" with exclusive ownership and control over OAK. (Dkt. 15, ¶¶ 16-17.)

The City of Oakland and the Port of Oakland have also conducted themselves as separate and independent entities. In fact, the City of Oakland and the Port of Oakland have at times been adverse to each other in litigation. See, e.g., *Dickson v. City of Oakland*, Case No. RG15756269 (Alameda Superior Ct.) (City filed cross-complaint for indemnity, contribution, and equitable relief against Port); *City of Oakland v. ABM Indus., Inc. et al.*, Case No. RG10538457 (Alameda

Superior Ct.) (Port intervened as defendant over City's objection); *City of Oakland, acting by and through its Board of Port Commissioners v. City of Oakland*, No. 11-1709 (N.D. Cal.) (Port sued City).

Given that both the City of Oakland and the Port of Oakland identify themselves and each other as separate and independent entities; and their respective government operations and conduct have consistently been separate and independent, there is no reason that they should now be treated as otherwise.

### 4. The Port of Oakland has exclusive jurisdiction over OAK.

Finally, the Port of Oakland, as an independent legal entity, has exclusive jurisdiction over OAK.

Ordinance No. 3826 N.S. officially "conferred upon, delegated to, and vested exclusively in the Board of Port commissioners, subject to its approval, the power and authority in its discretion to acquire, establish, equip, maintain and operate an airport within the port area of the City of Oakland . . . ." (RFJN 2.) The Port of Oakland admitted to exclusive ownership of OAK in its answer in this case:

> ". . . the Board of Port Commissioners has complete and exclusive power to act on behalf of the City of Oakland over the Port Area, defined in the City Charter. . . . **The Port owns and operates Oakland Airport**, which is located in the Port Area in Oakland, Alameda County."

(Dkt. 15, ¶¶ 16-17; emphasis added.) The City of Oakland and Port of Oakland have historically operated with the understanding that the Port of Oakland owns OAK, pursuant to official land surveys and maps. (RFJN 2 and 4.) The Ordinance No. 3826 N.S., the surveys and maps, and the stated positions of the Port of Oakland and City of Oakland, all consistently and definitively prove that OAK is exclusively controlled by the Port of Oakland.

Indeed, even Plaintiff's own pleadings and Motion for Preliminary Injunction specifically identify the "Port Defendant" or "the Board of Port Commissioners" as the actor carrying out the steps to rename OAK. (Dkt. 12, at 7; Dkt. 35, at 5-6.) And the OAK renaming is the conduct that Plaintiff seeks to enjoin in this lawsuit. The action of renaming OAK is distinctly and exclusively controlled by the Port of Oakland.

12

As such, the City of Oakland is not a proper defendant in this action, and should be dismissed.

## V. CONCLUSION

Plaintiff will not be able to carry its burden to show that there is a genuine dispute regarding any material fact. The legal status of the Port of Oakland and the Port of Oakland's exclusive control and jurisdiction over OAK are all matters of law, stated explicitly by the city ordinances (RFJN 1 and 2), the Charter (RFJN 3), and as interpreted by caselaw. The City of Oakland and the Port of Oakland both agree that they are separate and independent entities for the purposes of operating OAK and renaming OAK, that the Port of Oakland is the entity with exclusive jurisdiction over OAK, and that the Board has the sole and exclusive authority to sue and defend in the name of the City in all actions and proceedings such as the instant litigation which indisputably involves matters within the Board's jurisdiction. It is unreasonable for Plaintiff City of San Francisco to continue to seek relief from the City of Oakland that it cannot provide.

For the foregoing reasons, Defendant City of Oakland's Motion for Summary Judgment should be granted.

Dated: October 30, 2024

BARBARA J. PARKER, City Attorney

By: /s/ Barbara J. Parker

Barbara J. Parker
City Attorney
Attorneys for Defendant,
CITY OF OAKLAND