October 17, 2025

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *City and County of San Francisco v. Port of Oakland*; Case No. 3:24-cv-012311-TSH

Dear Judge Hixson:

      Plaintiff City and County of San Francisco ("SF" or "Plaintiff") and Defendant Port of Oakland ("Oakland" or "Defendant") jointly submit this letter brief regarding Oakland's responses and objections to Plaintiff's Requests for Production ("RFPs") Nos. 54–64. Relevant excerpts of Oakland's Responses and Objections to Plaintiff's Second Set of Requests for Production are attached herewith as **Exhibit A.** The parties met and conferred on September 19, 2025 and were unable to reach a resolution. Plaintiff now seeks an order compelling Oakland to produce documents responsive to RFPs 54–66.

**I.    PLAINTIFF'S STATEMENT**

SF filed this lawsuit to prevent Oakland from using a confusingly similar name for its competing airport. Nearly a year ago, the Court issued a preliminary injunction (Dkt. 77) ordering Oakland to cease use of the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT trademark (the "Enjoined Mark"). In response, Oakland initially transitioned back to using its airport's original name—OAKLAND INTERNATIONAL AIRPORT—which it continued to use for several months. Then, in July, it publicly announced a new name: "Oakland San Francisco Bay Airport" (the "New Mark"). Its PR proudly touted that the New Mark puts "Oakland first," while achieving Oakland's purported goal of increasing "awareness" of its airport's location in the Bay Area.[1] That name now appears on Oakland airport's website, social media, and advertisements. None of Oakland's public statements indicate an intent to revert to the Enjoined Mark. Meanwhile, Oakland continues to fight over a name that it has not used since last year, calling into question the sincerity of its motives, including whether Oakland intends to use the Court to "clear" its trademarks seriatim.

As the Court is aware, SF's Complaint seeks damages and a permanent injunction against Oakland's use of the Enjoined Mark and any other name likely to cause confusion with SF's incontestable **San Francisco International Airport**® trademark. Dkt. 1 at 15. In August 2025, SF served discovery (*e.g.* **RFPs 54–64**) to understand the origins of and plans for the New Mark and how adoption of the New Mark affects Oakland's plans for the Enjoined Mark. Oakland has stonewalled that discovery. It objects to ***any*** request directed at its latest name iteration, arguing lack of relevance because Plaintiff "has not filed suit regarding the [New Mark] and there is no pending claim in this action regarding that name." *See generally,* Exhibit A. It has since taken weeks to nail down Oakland's final position, and even after a lengthy meet and confer during which Plaintiff explained various grounds of relevance, Oakland waited another seven days – only to again decline production on "relevance" grounds.

SF need not file a new lawsuit to get discovery on Oakland's post-injunction marketing strategy, the sincerity of its plans around the "new name," and the effects of that name compared to the year prior with the "old" and "enjoined" names – including Oakland's expenditures and approach towards each. Pursuant to Fed. R. Civ. Pro. Rule 26, SF is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." As Oakland has not articulated any undue burden caused by these requests and there is no dispute that the requested documents are exclusively within Oakland's possession, resolution of this motion turns on relevance alone.

Oakland's current marketing and branding of its airport raises numerous questions that have significant implications. Among other things, was the New Mark previously considered by Oakland before its adoption of the Enjoined Mark? If so, why was the Enjoined Mark selected and not the New Mark? And even if not, does Oakland prefer the Enjoined Mark to the New Mark? Does it believe that the New Mark is equally capable of achieving its purported objectives as the Enjoined Mark and why? Was there discussion around relative similarity between the New Mark and Enjoined Mark, on the one hand, and SF's trademark, on the other? Documents and communications concerning these questions are highly relevant to Oakland's reasoning and intent behind its adoption of the Enjoined Mark.

---

[1] https://www.portofoakland.com/port-board-approves-oakland-airport-name-change;

Moreover, in issuing the preliminary injunction, the Court noted that "San Francisco's Mark is entirely subsumed in the Port's allegedly infringing mark" and that "the words 'San Francisco' in OAK's new name are prominent and meaningful for airline customers" in finding that the Enjoined Name and SF's registered mark are confusingly similar.  Dkt. 77 at 12–13.  Rather than continue using the airport's original name until resolution of this action, or selecting a new name altogether, Oakland instead proceeded with the next worst option – a name that merely flips the order of "Oakland" and "San Francisco Bay," while retaining the "San Francisco" name, and deletes "International" even as the airport touts itself as an "international airport."  Oakland's maneuvering around the limitations of the preliminary injunction and its renewed emphasis on "San Francisco" in the New Mark thus directly bear on its intent when it selected the Enjoined Mark.

Documents and communications concerning the New Mark also bear on Oakland's concerns around consumer confusion and the similarities between the at-issue marks.  For example, SF has learned from documents produced in discovery that as far back as 2022, branding consultants retained by Oakland reported concern about risk of confusion caused by names incorporating "San Francisco."  If that was true for the Enjoined Name but not the New Mark, that bears on the trademark similarity analysis and likelihood of consumer confusion.

SF is also entitled to explore and contrast Oakland's approaches to the New Mark and the Enjoined Mark.  Discovery would show whether Oakland cleared *this* name but not the Enjoined Mark.  Oakland is telling the public that "***Oakland is first***."  Is that important to its branding?  Then why press forward with the Enjoined Name, which did the opposite?  Why delete "international" yet market the airport as such?  Moreover, does Oakland intend to display the New Mark with "San Francisco" emphasized in an as-yet introduced logo or marketing?   SF is entitled to this discovery.

Discovery on these topics is also highly relevant to the issue of injunctive relief, including "balance of hardships." Dkt. 77 at 30.  Oakland's airport cannot simultaneously have two names.  If Oakland has effectively abandoned the Enjoined Mark in favor of the New Mark, then the parties need not litigate the issue of permanent injunctive relief as to the former, focusing instead on the narrower issue of damages – saving the Court's and the parties' time and resources.  *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 906 (N.D. Cal. 2023) ("By allowing litigants to access evidence prior to trial, discovery narrows the issues" for trial.).  If the New Mark is permanent, that is directly relevant to the "hardship" Oakland might claim with respect to future use of the Enjoined Mark.  Discovery may similarly reveal whether the New Mark is merely a façade, designed to "test the waters" with SF and the Court.

Finally, SF's discovery is also relevant to damages, as it provides the ability to gauge Oakland's marketing spend and revenue before adopting the Enjoined Mark, and with the two iterative names thereafter – which may bear on apportionment (disgorgement) and corrective advertising.

For all of these reasons, the Court should order Oakland to produce documents responsive to RFPs 54–64.

## II. THE PORT'S STATEMENT: The Court Should Deny the City's Motion for Discovery About the Oakland Name Not at Issue in this Case

The City filed this lawsuit in April 2024, alleging that the name "San Francisco Bay Oakland International Airport" (the "SF Bay Name") for the Port's airport (OAK) infringes on the City's trademark for SFO, the "San Francisco International Airport." The City served 161 discovery requests regarding the sole mark at issue: the SF Bay Name. *See* Exhibit B. The Port has been diligently responding to those requests. To date, the Port has produced over 11,000 pages of documents and is preparing additional voluminous productions.

The City's Motion is not about discovery relevant to its trademark infringement claim – its claim that the SF Bay Name is likely to cause consumer confusion – or any purported reputational or other harm allegedly caused by the Port using the SF Bay Name for OAK. Instead, the City now seeks discovery about a wholly different name – one that is not the subject of this case – "Oakland San Francisco Bay Airport" (the "Oakland Name"). OAK's name had been the "Metropolitan Oakland International Airport" until the Port passed an ordinance modifying that name to the SF Bay Name in May 2024. On November 12, 2024, the Court preliminarily enjoined the Port from using the SF Bay Name. Thus, the Port did not have an official name for OAK it was authorized to use. After a second failed mediation in April 2025, the Port could not continue to wait months and perhaps years until final resolution of the litigation to have a legislatively authorized name for OAK. So, in July 2025, the Board passed an ordinance adopting the Oakland Name for OAK while litigation continues. This is public information.

The City has not asserted any claim that the Oakland Name infringes on its trademark for SFO. Indeed, there was zero public testimony and no statement by any airline that the Oakland Name is likely to cause consumer confusion when the Board considered and passed the Oakland Name ordinance. Only SFO's own spokesperson showed up to make PR statements against it.

The City did not file suit or seek to amend its complaint to make the Oakland Name a subject of this case. Instead, the City propounded discovery specific to the Oakland Name designed to harass and drive up expense as a litigation tactic, and to probe into the Port's litigation plans. But FRCP Rule 26(b) limits discovery to nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case[.]" Accordingly, courts have declined to allow parties discovery into marks or products that are not the subject of the infringement action. *See e.g.*, *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (affirming District Court order limiting discovery to information about specific products that plaintiff identified as the infringing products); *PAJ, Inc. v. Barons Gold Manufacturing Corp.*, 2002 WL 1792069, *2-3 (S.D.N.Y. 2002) (holding documents related to a specific trademark not at issue in the infringement case are irrelevant to the subject matter and need not be produced); *Asetek Danmark A/S v. CoolIT Systems Inc.*, 2021 WL 4699170, at *2 (N.D. Cal. 2021) (recognizing "discovery cannot be a fishing expedition for new claims" and quashing subpoena seeking discovery on inequitable conduct defense not at issue in the case). The Port therefore properly objected to producing documents that ***solely concern*** the Oakland Name about which the City has not asserted any claim.

The City's arguments for why it is nonetheless entitled to that discovery fail.

First, the City claims it needs discovery to uncover the Port's "motives" and "sincerity of its plans" regarding use of the Oakland Name. Intent as to *the SF Bay Name* is relevant to the City's trademark infringement claim, and the Port has already produced thousands of documents about its intent and decision-making regarding the SF Bay Name. The City's argument that the Port's "motives" regarding the *Oakland Name* are somehow relevant to its claim that the SF Bay Name infringes on its trademark is based entirely upon the false assertion that the Port "reverted" back to the name "Oakland International Airport" (which was never OAK's full name) and has "abandoned" the SF Bay Name because "it has not used [it] since last year, calling into question the sincerity of [the Port's] motives." Complying with a Preliminary Injunction Order does not constitute "abandonment" of a name, and certainly does not suggest some kind of unidentified nefarious motive justifying discovery beyond the bounds of FRCP 26(b).

Second, the City attempts to recast the discovery requests specific to the Oakland Name as seeking broader discovery about "Oakland's post-injunction marketing strategy[,]" "marketing spend and revenue before adopting the [SF Bay Name]" and "intent when it selected the [SF Bay Name]." The City propounded other discovery requests on those subjects, to which the Port continues to respond. Again, the Port has objected to discovery specific to the Oakland Name, which is not the subject of the City's trademark infringement claim. It is those requests that are the subject of this motion, not broader topics which are the subject of other discovery requests.

Third, the City argues discovery on the Oakland Name is relevant to evaluating the balance of hardships regarding the issuance of a permanent injunction because it wants to know if the Port really plans to use the SF Bay Name in the future. To make this argument, the City again asserts the Port has "abandoned" the SF Bay Name. Again, the Port has not "abandoned" the SF Bay Name. The Port has not and is not using the SF Bay Name because it has been and continues to comply with the Preliminary Injunction Order.

Regardless, the City's arguments reveal that what it really seeks is to probe the Port's litigation strategy – something the discovery rules do not permit. The City's argument that "Oakland cannot simultaneously have two names" proves the point: it seeks to force the Port to commit to a position on whether the Oakland Name is permanent, temporary, or a façade. Those are not factual inquiries relevant to the City's claims or defenses regarding whether the SF Bay Name infringes on the City's trademark for SFO. They are demands that the Port disclose potential future litigation posture.

Finally, the City argues that discovery about the Oakland Name is relevant to its claim for damages caused by the SF Bay Name. This assertion is incorrect. Discovery requests about selection of the Oakland Name, adoption of the Oakland Name, or consumer response to the Oakland Name, are plainly not relevant to the City's damages case regarding the SF Bay Name – *i.e.*, the Port's profits while using the SF Bay Name, actual damages the City suffered because of the Port's use of the SF Bay Name, or amounts that **the City** would need to spend on corrective advertising. *See* 15 U.S.C. § 1117; *Binder v. Disability Group, Inc.*, 772 F.Supp.2d 1172, 1180-81 (C.D.Cal. 2011) (discussing corrective advertising awards as allowing the plaintiff to recover the cost of advertising undertaken to restore value of trademark lost due to infringement).

The City's discovery requests specifically about the Oakland Name do not seek relevant discovery proportionate to the needs of the case as required by FRCP Rule 26(b). The Court should deny the City's motion on this basis alone. Additionally, directing discovery toward the Oakland Name not at issue in the case would be burdensome. As noted above, the City has already propounded 161 discovery requests to which the Port continues to respond, collecting data from numerous custodians and non-custodial sources, and producing thousands of documents. The City now seeks discovery on a name not at issue in the case during a period of active litigation. Allowing this discovery would require additional data collection, and labor-intensive review for attorney-client and work product documents – costs and burdens that far outweigh any tenuous benefit of discovery into a name that is not the subject of the City's trademark infringement claim.

### III. PLAINTIFF'S REPLY

Oakland's argument is premised on the disingenuous position that the New Name is "wholly different" from the Enjoined Name. It ignores that (i) the New Name *replaced* the Enjoined Name, which renders the Port's motivations and perceptions around the New Name, and its impact, ripe for comparison; and (ii) the New Name, like the Enjoined Name, incorporates the City's mark. The Port's authorities are inapposite. *Surfvivor*, concerned use of the *same* mark for products that *were not* at issue. 406 F.3d at 635. *PAJ* concerned the *plaintiff's* use of an unasserted mark. 2002 WL 1792069 at *2-3. And in *Asetek*, discovery was sought to assess whether to add an affirmative defense, and not for any other purpose. 2021 WL 4699170, at *2. None involved a defendant's adoption of a replacement name following an injunction, let alone a highly similar name.

The Port largely ignores relevance to, among the other issues noted above, the hardship analysis (i.e., whether a permanent injunction would burden the Port); the Port's understanding that "San Francisco" in the context of airports refers uniquely to SF's airport; and comparison of the Port's approach to and effectiveness of branding, marketing, SEO, etc. before and after it was enjoined. Among the Port's weak responses, it offers the strawman that injunction compliance does not constitute "abandonment"; SF didn't make that argument, but it's entitled to understand the Port's plans for purposes of SF's entitlement to permanent injunctive relief. Finally, the Port deflects by exaggerating the size of its production and volume of SF's discovery, which it improperly attaches as an exhibit hereto. Neither is relevant, and the Port itself has served **over 250 requests**.

| | |
|---|---|
| By: /s/ *Judd Lauter* | By: /s/ *Brandi B. Balanda* |
| **COOLEY LLP** | **FENNEMORE LLP & FENNEMORE CRAIG, P.C.** |
| Bobby Ghajar | Eugene M. Pak |
| Judd Lauter | Stephen C. Willey |
| John Hemann | Brandi B. Balanda |
| Ryan Stevens | Sarah Gohmann Bigelow |
| Jessica Williams | |
| *Attorneys for Plaintiff and Counterclaim Defendant City and County of San Francisco* | *Attorneys for Defendant and Counterclaimant City of Oakland, a municipal corporation, acting by and through its Board of Port Commissioners (Port of Oakland)* |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 17, 2025                                COOLEY LLP

                                                      <u>/s/ Judd Lauter</u>
                                                      Bobby Ghajar
                                                      Judd Lauter
                                                      John Hemann
                                                      Ryan Stevens
                                                      Jessica Williams

                                                      *Attorneys for Plaintiff and Counterclaim Defendant City and County of San Francisco*