BOBBY GHAJAR (198719)
JOHN HEMANN (165823)
JUDD LAUTER (290945)
RYAN STEVENS (306409)
JESSICA WILLIAMS (341492)
COOLEY LLP
3 Embarcardero, 20th Floor
San Francisco, California 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222
Email: bghajar@cooley.com
       jhemann@cooley.com
       jlauter@cooley.com
       rstevens@cooley.com
       jwilliams@cooley.com

DAVID CHIU (189542)
City Attorney
YVONNE R. MERÉ (173594)
Chief Deputy City Attorney
JULIE VEIT (209207)
CHRISTOPHER STUART (262399)
Deputy City Attorneys
City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4700
Facsimile:    (415) 554-4757
Email: Cityattorney@sfcityatty.org
       Yvonne.Mere@sfcityatty.org
       Julie.Veit@sfcityatty.org
       Christopher.Stuart@sfcityatty.org

Attorneys for SF and Counterclaim Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff,<br><br>v.<br><br>PORT OF OAKLAND,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 3:24-CV-02311-TSH<br><br>**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:       December 18, 2025<br>Time:       10:00 a.m.<br>Dept:       Courtroom E – 15th Floor<br>Trial Date: February 22, 2027 |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** at 10:00 a.m. on December 18, 2025, or as soon thereafter as this Motion may be heard in the above-entitled Court, before Magistrate Judge Thomas S. Hixson in Courtroom E of the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff City and County of San Francsico ("SF") will and does hereby move for leave to file a Second Amended Complaint in this action. SF seeks to amend the operative complaint to add claims and allegations seeking relief in connection with Defendant Port of Oakland's ("the Port" or "Defendant") recent adoption and use of the trademark "Oakland San Francisco Bay Airport," which infringes and dilutes SF's SAN FRANCISCO INTERNATIONAL AIRPORT trademark in violation of California State and Federal law. SF's Motion is made pursuant to Fed. R. Civ. P. 15(a)(2) and 16(b)(4) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the proposed Second Amended Complaint, the Declaration of Judd Lauter ("Lauter Decl.") and the exhibits thereto, all matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and other written or oral argument that SF may present to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether good cause exists under Federal Rule of Civil Procedure 16(b)(4) for SF to amend the operative complaint to add claims addressing the Port's recent adoption and use of the "Oakland San Francisco Bay Airport," asserting federal and state claims for trademark infringement and dilution, and seeking relief in connection therewith.

2. Whether SF's proposed amendment of the complaint is proper under Federal Rule of Civil Procedure 15(a).

## STATEMENT OF RELIEF SOUGHT

SF respectfully requests that the Court issue granting it leave to file its proposed Second Amended Complaint.

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ........................................................................ 2

    A. PROCEDURAL HISTORY ................................................................................. 2

    B. RELEVANT SCHEDULING ORDERS .............................................................. 3

    C. THE PORT REVERTS TO ITS ORIGINAL NAME, THEN ADOPTS THE SECOND INFRINGING MARK ........................................................... 4

    D. SF ATTEMPTED TO DISCERN THE PORT'S PLAN FOR THE SECOND INFRINGING MARK BEFORE RESORTING TO FURTHER LITIGATION ........................................................................................ 4

    E. THE PROPOSED AMENDMENTS .................................................................... 6

III. LEGAL STANDARD ....................................................................................................... 6

IV. ARGUMENT .................................................................................................................... 8

    A. GOOD CAUSE EXISTS TO PERMIT MODIFICATION OF THE SCHEDULING ORDER UNDER RULE 16(B)(4) TO ALLOW SF TO FILE THE SECOND AMENDED COMPLAINT .................................................. 8

        1. SF HAS BEEN DILIGENT IN SEEKING AMENDMENT ..................... 8

        2. MODIFICATION OF THE SCHEDULE WILL NOT PREJUDICE THE PORT OR AFFECT THE ORDERLY ADMINISTRATION OF THIS CASE ............................................................................................... 9

        3. REFUSING THE REQUESTED SCHEDULING MODIFICATION WILL PREJUDICE SF .............................................. 11

    B. THE COURT SHOULD GRANT SF LEAVE TO FILE ITS SECOND AMENDED COMPLAINT ................................................................................. 12

        1. THE PORT WILL NOT BE PREJUDICED BY THE PROPOSED AMENDMENT ........................................................................................ 12

        2. THERE IS NO BAD FAITH OR UNDUE DELAY BY SF ..................... 12

        3. SF HAS NOT PREVIOUSLY BEEN UNSUCCESSFUL IN STATING ITS PROPOSED NEW CLAIMS ........................................... 12

        4. AMENDMENT WOULD NOT BE FUTILE ........................................... 13

V. CONCLUSION ............................................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*24/7 Customer, Inc. v. LivePerson, Inc.*,
  2016 WL 6673983 (N.D. Cal. Nov. 14, 2016) ................................................................. 6

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) .......................................................................................... 10

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ............................................................................................ 7

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................................ 12

*Foman v. Davis*,
  371 U.S. 178 (1962) ....................................................................................................... 13

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2014 WL 2730724 (N.D. Cal. June 16, 2014) ............................................................... 13

*Green v. City and County of San Francisco*,
  2019 WL 852990, at *1 (N.D. Cal. Feb. 22, 2019) .......................................................... 8

*Jackson Family Wines, Inc. v. Enovation Brands, Inc.*,
  2018 WL 6981813 (C.D. Cal. Aug. 10, 2018) ............................................................... 14

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ............................................................................................ 6

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  2016 WL 2855260 (N.D. Cal. May 13, 2016) ................................................................. 7

*Kirakosian v. J & L.D. Sunset Wholesale & Tobacco*,
  2017 WL 1380405 (C.D. Cal. Apr. 13, 2017) .............................................................. 7, 8

*LeGrand v. Abbott Lab'ys*,
  2024 WL 4969127 (N.D. Cal. Dec. 3, 2024) ............................................................. 7, 12

*Macias v. Cleaver*,
  2016 WL 8730687 (E.D. Cal. Apr. 8, 2016) .................................................................. 11

*Melingonis v. Rapid Cap. Funding, L.L.C.*,
  2017 WL 1550045 (S.D. Cal. May 1, 2017) .................................................................. 12

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988) .......................................................................................... 13

COOLEY LLP
ATTORNEYS AT LAW

-ii-

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ............................................................................ 7

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
  2019 WL 8403819 (N.D. Cal. Apr. 1, 2019) ............................................................................ 9

*Sudhir v. PHH Mortg. Corp.*,
  2017 WL 3142114 (N.D. Cal. July 25, 2017) .......................................................................... 6

*United States v. First Nat'l Bank of Circle*,
  652 F.2d 882 (9th Cir. 1981) ............................................................................................... 2, 7

*United States v. Webb*,
  655 F.2d 977 (9th Cir. 1981) .................................................................................................. 11

*Wong v. Regents of Univ. of Cal.*,
  410 F.3d 1052 (9th Cir. 2005) ................................................................................................ 11

**Statutes**

15 U.S.C. § 1125(c) ........................................................................................................... 6, 13

15 U.S.C. § 1125(c)(2)(B) ........................................................................................................ 9

Cal. Bus. & Prof. Code §14247 ........................................................................................ 6, 13

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) and 16(b)(4) ..................................................................................... 2, 1

Federal Rule of Civil Procedure 15(a) ............................................................................ 2, 6, 7, 12

Federal Rule of Civil Procedure 16(b)(4) ........................................................................... 2, 6, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 15(a)(2) and 16(b)(4), SF respectfully moves to modify the scheduling order and for leave to amend its complaint to add claims and allegations against the Port for trademark infringement, false designation of origin, and trademark dilution based on the Port's recent adoption of the trademark "OAKLAND SAN FRANCISCO BAY AIRPORT" (the "Second Infringing Mark"). SF's proposed Second Amended Complaint ("SAC"), as well as a redline showing changes to its First Amended Complaint ("FAC"), filed May 3, 2024 (Dkt. 12), are attached as Exhibits A and B, respectively, to the Lauter Declaration.

## I. INTRODUCTION

Less than a year after this Court enjoined the Port from trading on SF's goodwill and sowing confusion by marketing the Oakland airport under the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT trademark (the "Enjoined Mark"), the Port is at it again with a new name: OAKLAND SAN FRANCISCO BAY AIRPORT. The Port touts that this new name puts "Oakland first," but its insistence on emphasizing "San Francisco" – conduct that the Court previously held was "highly likely to be confusing" (Dkt. 77 at 17) – betrays its intent to trade on the public's recognition of SF's trademark. SF brings this Motion now, shortly after the Port's adoption of its Second Infringing Mark, to stop the Port's pattern of infringement and serial attempts to associate the Oakland airport with SF and the SAN FRANCISCO INTERNATIONAL AIRPORT trademark.

Good cause exists to modify the scheduling order to allow SF to file its SAC. The proposed modification would alter a single deadline – the last day to amend pleadings – to permit SF to assert new claims and allegations arising out of the Port's recent adoption of the Second Infringing Mark on July 24, 2025. SF has also been diligent in seeking this amendment. The Port did not adopt the Second Infringing Mark until well after the March 13, 2025 deadline to amend the pleadings under the current scheduling order. Upon the Port's adoption of the Second Infringing Mark, SF promptly served discovery requests directed at the new name in an attempt to, among other things, understand the Port's future plans for the Second Infringing Mark and the prior, Enjoined Mark. Concurrently, SF also sought to revisit settlement discussions with the Port to find a potential solution, but was

rebuffed. After the Court denied SF's motion to compel responses to its discovery requests regarding the Second Infringement Mark on October 20, 2025, SF immediately asked the Port if it would stipulate to SF filing an amended complaint. On November 11, 2025 the Port declined to enter a stipulation, necessitating this Motion.

Each of the factors that courts consider when determining whether to grant leave to amend favor granting leave here. *First*, amending the complaint now, when there are nearly four months left in discovery will not prejudice the Port. Much of the relevant discovery is overlapping with existing claims, and the Port has been on notice of SF's additional discovery directed at the Second Infringing Mark for months. *Second*, there is no bad faith or undue delay on SF's part in seeking leave to amend now, given that the events giving rise to the proposed new claims only just occurred. *Third*, SF has not previously attempted to amend its complaint to add these claims and its proposed amendments are not futile. And certainly, amendment here would be more efficient than forcing a separate lawsuit over the Port's latest name. For these reasons and as explained below, SF respectfully requests that the Court grant it leave to file its SAC.

## II. STATEMENT OF RELEVANT FACTS

### A. Procedural History

SF filed the original Complaint against the City of Oakland on April 18, 2024, shortly after the Port announced its proposal to change the name of its airport from the "Oakland International Airport" to the "San Francisco Bay Oakland International Airport" (the "Enjoined Mark") on March 29, 2024. Dkt. 1. The Complaint brought causes of action under the Lanham Act and California common law for infringement of SF's registered SAN FRANCISCO INTERNATIONAL AIRPORT® name and trademark (the "SF Mark"). *Id.* at 11–15. The Complaint sought damages and injunctive relief against the Enjoined Mark and "any other mark likely to cause confusion with" SF's incontestable mark. *Id.* at 15. On May 3, 2024, before any response to the Complaint was filed, SF amended the complaint ("FAC") to add the Port as a separate defendant. Dkt. 12. The Port filed its Answer to the FAC and a Counterclaim for declaratory judgement on May 9, 2024. Dkt. 15.

On September 17, 2024, after an unsuccessful mediation, SF filed a Notice of Motion and

Motion for Preliminary Injunction ("PI Motion"). Dkt. 35. The PI Motion sought a preliminary injunction preventing the Port from using the SAN FRANCISCO BAY OAKLAND INTERNATIONAL AIRPORT mark or any other colorable imitation of the SF Mark. The PI Motion was heard on November 7, 2024, and on November 12, the Court issued its Order Granting SF's PI Motion as to the Port ("PI Order"). Dkt. 77. The PI Order held that SF was likely to succeed on the merits of its trademark infringement claims, finding that (1) the SF Mark was valid and protectable, (2) SF was likely to prevail on its claim for affiliation, connection, or association confusion, and (3) the Port's fair use defense was likely to fail. *Id.* at 7, 26–28. Notably, the Court found that "including 'San Francisco' in the name of the Oakland airport when there is in fact no affiliation, connection or association between the Oakland airport and San Francisco is contrary to how airports in the United States are normally named and is highly likely to be confusing." *Id.* at 17. The Court further found that the remaining elements entitling SF to a preliminary injunction were met and entered an injunction prohibiting the Port from "using, displaying, or registering the name or trademark 'San Francisco Bay Oakland International Airport' in connection with any products or services, including in connection with advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services." *Id.* at 34.

Following the PI Order, the Parties began discovery and have each served and responded to numerous discovery requests and made document productions. Lauter Decl., ¶ 3. However, no depositions have taken place to date, and only third-party depositions have been noticed. *Id.*, ¶ 4. SF is also expecting a further production of documents and supplemental discovery responses from the Port in response to recent discovery requests. *Id.*, ¶ 5. The current fact discovery cut-off in this case is **February 28, 2026**. Dkt. 111.

### B. Relevant Scheduling Orders

The initial Case Management Order, issued on December 12, 2024, set the "Deadline to Seek Leave to Amend Pleadings" on March 13, 2025. Dkt. 86. The Court granted the Parties' stipulations to modify the case schedule on April 11, 2025 (Dkt. 96), and, again, on September 3, 2025 (Dkt. 111) (the "Scheduling Order"). Both orders were issued after the original deadline to seek leave to amend and neither included a new deadline that supersedes the March 13 deadline.

The Scheduling Order also extended the close of fact discovery to February 28, 2026. As such, under the Scheduling Order, the operative deadline to seek leave to amend the pleadings remains March 13, 2025 and the fact discovery cut-off is still months away.

### C. The Port Reverts to Its Original Name, Then Adopts the Second Infringing Mark

After the PI Order, the Port initially transitioned back to its original OAKLAND INTERNATIONAL AIRPORT trademark, which it then used for nearly eight months. SAC, ¶ 32. Rather than continue to use that name until resolution of this action, the Port informed SF on June 27, 2025, just prior to issuing a press release, that it planned to rebrand its airport once again — this time as the "Oakland San Francisco Bay Airport." *Id.*, ¶ 35.

On July 10, 2025, SF's Airport Director formally expressed SF's opposition to the Port's proposed name change in a letter to the Port. *Id.*, ¶ 36. Nevertheless, later that day, the Oakland Board of Port Commissioners voted unanimously in favor of adopting the Second Infringing Mark, which took effect on July 24, 2025, following a second vote. *Id.*, ¶¶ 36–37; *see also* Lauter Decl., ¶ 6 & Ex. C. SF, once again, attempted to engage the Port in discussing alternatives to litigation but to no avail. *Id.*, ¶ 9.

Although the Second Infringing Mark appears on the airport's website, social media accounts, and advertisements, as of late October 2025, it did not appear on any physical signage at the airport and has not been uniformly adopted by flight aggregator websites and online travel agencies, such as Google and Priceline.com. *Id.*, ¶ 8.

### D. SF Attempted to Discern the Port's Plan for the Second Infringing Mark Before Resorting to Further Litigation

Before bringing new claims directed at the Second Infringing Mark, SF first sought to better understand the Port's commitment to the Second Infringing Mark (*id.*, ¶¶ 10–12), and revisit the prospect of settlement. *Id.*, ¶ 9. On August 7, 2025, SF served its Second Set of Requests for Production of Documents ("RFPs") (Dkt. 113-2), many of which were directed at the Second Infringing Mark, with additional requests on the topic served on August 29, 2025 (Lauter Decl., ¶ 11; *see also id.*, Exs. D–F). The purpose of these RFPs was two-fold. First, because the Second

Infringing Mark is merely a variation on the Enjoined Mark, flipping the order of "Oakland" and "San Francisco Bay" and removing the (implicit) word "International," the Port's considerations around the Second Infringing Mark and corresponding marketing strategy are also highly relevant to SF's claims against the Enjoined Mark.  Second, such discovery would also reveal the Port's motivations behind the Second Infringing Mark, including whether the Port is *genuinely* committed to the current name—a fact in doubt, given (1) the Port's pending appeal of the Court's injunction against the Enjoined Mark; (2) its refusal to engage in discussions to resolve the matter; and (3) its unwillingness to tell SF whether the Port really intends to put "Oakland first" —as touted in its marketing—and complete its rollout of the Second Infringing Mark or whether it is merely an optically and aurally similar stopgap.  Lauter Decl., ¶ 12.

On September 8, the Port objected to SF's Second Set of RFPs directed at the Second Infringing Mark (RFPs 54–64), refusing to produce documents because "there is no pending claim in this action regarding" the Second Infringing Mark, and that mark "is not at issue in this case[.]" Dkt. 113-1.

As the Court is aware from SF's motion to compel (Dkt. 113), SF immediately sought to meet and confer.  Then, as soon as the Port provided its final position refusing to provide the requested documents, SF prepared its motion to compel, waited for the Port's portion, and filed it with the Court on October 17, 2025.  *Id.*; Lauter Decl., ¶¶ 13–17 & Ex. G.  In its portion of the joint letter, the Port argued that SF "did not file suit or seek to amend its complaint to make the [Second Infringing Mark] a subject of this case."  Dkt. 113 at 4.  It also explained, for the first time, that it has not abandoned the Enjoined Mark, yet *declined* to "commit to a position on whether the [Second Infringing Mark] is permanent, temporary, or a façade." *Id.* at 5.

On October 20, 2025, the Court issued an Order denying SF's motion to compel.  Dkt. 114. Although the Order acknowledged that there may be "some slight relevance to portions" of the at-issue RFPs to SF's claims against the Enjoined Mark, it ultimately denied SF's motion to compel, citing the fact the Second Infringing Mark is not, or is "not yet," part of this case. *Id.* at 2–3. *That same week*, SF asked the Port whether it would stipulate to SF filing the SAC.  Lauter Decl., ¶ 19. The Port requested a copy of the SAC before providing its position.  *Id.*, ¶ 20.  SF prepared the

SAC and provided a draft to the Port on November 5, 2025. *Id.*, ¶ 22. Notwithstanding SF's previewing that it intended to seek leave to file the SAC by the end of that week (i.e., by November 7, 2025), on November 6, 2025, the Port responded that it needed more time to review and would provide its position the following week. *Id.* Given the potential for a stipulation, SF indicated that it was prepared to provide the Port until November 11, 2025 to review the SAC and provide its position on a stipulation. *Id.*, ¶ 23. On November 11, 2025, the Port indicated that it would decline to stipulate, and SF promptly filed this Motion the next day. *Id.*, ¶ 24; *see also id.*, Ex. H.

### E. The Proposed Amendments

Copies of SF's proposed SAC, in clean and redline against the FAC, are attached as Exhibit A and B to the Lauter Declaration. The SAC's allegations relating to the Enjoined Mark remain largely unchanged from those in the FAC. The SAC adds factual allegations concerning the Port's more recent adoption and use of the Second Infringing Mark, which are additional bases for the federal and common law trademark infringement claims. SAC ¶¶ 52–73, 86–93). The SAC also adds a new claim for trademark dilution under federal and California statutory law (15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code §14247), with factual allegations to support those claims, and conforming amendments to SF's prayer for relief. *Id.*, ¶¶ 74–85. SF's dilution claim is based on the Port's adoption of yet *another* name that incorporates SF's famous SF Mark, demonstrating a pattern of behavior that deliberately seeks to dilute the distinctive quality of the SF Mark. *Id.*, ¶ 83.

## III. LEGAL STANDARD

A party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b)(4) and, second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). The decision to modify a schedule is subject to the Court's "broad discretion." *Sudhir v. PHH Mortg. Corp.*, 2017 WL 3142114, at *1 (N.D. Cal. July 25, 2017) (citing *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985)).

The good cause inquiry under Rule 16(b)(4) is two-fold. Courts consider whether (1) the moving party was diligent in amending its contentions, and (2) the non-moving party would suffer prejudice if leave to amend were granted. *See 24/7 Customer, Inc. v. LivePerson, Inc.*, 2016 WL

6673983, at *2 (N.D. Cal. Nov. 14, 2016); *Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) ("[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered."). "If the court determines that the moving party was not diligent, the inquiry may end there. However, the court retains discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice to the opposing party." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016) (citation omitted). When "refusal to allow a modification might result in injustice while allowance would cause no substantial injury to the opponent and no more than slight inconvenience to the court, *a modification should ordinarily be allowed*." *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 887 (9th Cir. 1981) (emphasis added).

Once good cause is shown, Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires," and "is to be applied with extreme liberality." *LeGrand v. Abbott Lab'ys*, 2024 WL 4969127, at *3 (N.D. Cal. Dec. 3, 2024) (Hixson, J.) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). That "liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "The Court considers five factors in deciding a motion for leave to amend: (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *LeGrand*, 2024 WL 4969127, at *3 (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013)). Each of these "[f]ive factors" weighs in favor of SF's requested amendment here. *Kirakosian v. J & L.D. Sunset Wholesale & Tobacco*, 2017 WL 1380405, at *1 (C.D. Cal. Apr. 13, 2017) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)).

//
//
//
//
//

COOLEY LLP
ATTORNEYS AT LAW

7

## IV. ARGUMENT

### A. Good Cause Exists to Permit Modification of the Scheduling Order Under Rule 16(b)(4) to Allow SF to File the Second Amended Complaint

#### 1. SF Has Been Diligent in Seeking Amendment

SF acted promptly and diligently after the Port's adoption of the Second Infringing Mark in late July. In particular, SF brings this Motion only after (i) another failed attempt to engage the Port in discussions to understand its naming plans and resolve the matter, (ii) the Court's recent discovery order indicating that SF must bring a claim against the Second Infringing Mark in order to obtain discovery on it (Dkt. 114), and (iii) confirmation, on the basis of the Port's actions, that it is engaged in a pattern of adopting marks calculated to trade on and diminish the distinctiveness of the SF Mark.

As an initial matter, the Port officially adopted the Second Infringing Mark on July 24, 2025, long after the March 13, 2025 deadline to amend had lapsed. SAC, ¶ 37. SF therefore could not have amended the complaint in advance of that deadline. *Green v. City and County of San Francisco* is instructive. 2019 WL 852990, at *1 (N.D. Cal. Feb. 22, 2019) (Hixson, J.). In that case, the plaintiff sought leave to amend after a November 27, 2017 deadline to do so (there, one year after) because his claims concerned harassment that occurred between November 2017 and February 2018 and a wrongful termination in February 2018, among other amendments. *Id.* at *1. The Court granted leave to amend as to those allegations, noting that the plaintiff "obviously . . . could not have amended his complaint by the November 27, 2017 deadline to allege events that had not yet taken place." *Id.* at *2. Similarly, here, SF could not have amended its complaint before the Port's adoption of the Second Infringing Mark. The amended trademark infringement claims and dilution claim in the SAC are premised on the Port's recent rebrand of the Oakland airport under the Second Infringing Mark, and the Port's, now serial, adoption of names that incorporate the dominant elements of the SF Mark.

SF waited only a few months between the Port's announcement and its proposal to file the SAC, both to try to resuscitate moribund settlement discussions (Lauter Decl., ¶ 9), and, concurrently, to attempt to confirm the Port's intentions for the Second Infringing Mark through

discovery. Understandably, SF wanted to know whether the current name (Second Infringing Mark) would be rolled out in earnest or whether the Port had other undisclosed plans. For example, while that name began to appear on the Port's website and social media, as of late-October, it was not on external airport signage. Since the Port refused to answer informal requests for its plans for the Second Infringing Mark, SF believed that seeking discovery as to that mark, which SF continues to believe is highly relevant to its claims against the Enjoined Name, was an opportunity to confirm the Port's intentions and, potentially, avoid litigation over a name to which the Port may not commit and fully deploy. Lauter Decl., ¶ 12. After all, an airport cannot simultaneously have two names.

Once the Port declined to produce documents relating to the Second Infringing Mark in response to SF's Second Set of RFPs, SF was diligent in seeking to meet and confer and moving to compel. *Supra*, II.D. It was in the context of that motion that the Port, for the first time, represented that it had not abandoned the Enjoined Mark but declined to "commit to a position on whether the [Second Infringing Mark] is permanent, temporary, or a façade." Dkt. 113 at 5. Once the Court issued its October 20 Order denying SF's motion to compel, SF immediately asked the Port if it would stipulate to SF filing its SAC; then, at its request, provided a draft of the SAC; and filed this Motion the day after it received the Port's response. Lauter Decl., ¶¶ 19–25 & Ex. H.

### 2. Modification of the Schedule Will Not Prejudice the Port or Affect the Orderly Administration of This Case

The Port cannot legitimately claim that it would be prejudiced by the relief SF seeks, and nor did its counsel suggest that it would suffer any when SF asked whether the Port would stipulate to amending the complaint. Lauter Decl., ¶ 24. Courts are less likely to find prejudice where the timing of the amendments will allow the non-moving party "ample time to investigate[.]" *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 2019 WL 8403819, at *3 (N.D. Cal. Apr. 1, 2019) (citing *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL5632618, at *2 (N.D. Cal. Nov. 5, 2012)). The fact discovery period closes on February 28, 2026, which is nearly *four months away*. SF already served a number of discovery requests directed at the Port's adoption of the new name; the new dilution claim involves overlapping factors with SF's trademark infringement claims and does not require much, *if any*, additional discovery. *Compare*, *e.g.*, 15 U.S.C. § 1125(c)(2)(B) (listing the factors a

COOLEY LLP
ATTORNEYS AT LAW

9

court may consider in determining a mark is likely to cause dilution by blurring) *with AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) (listing likelihood of confusion factors). To the extent additional discovery is needed, it would involve the same relevant time period as the discovery taken to date and, in any event, would likely only cover a few months. It is also significant that no depositions have yet been taken by either party, and the new claims and allegations are unlikely to require deposing witnesses beyond those already disclosed by the Parties. Lauter Decl., ¶ 4. In short, there is ample time for the Port to take any minimal additional discovery required for SF's new claims.

Nor can the Port claim any prejudicial surprise. SF's claim to exclusive rights in the SF Mark is not new. SF owns an incontestable federal registration, and from the start of this case has always asserted that it, alone, is entitled to use the SAN FRANCISCO INTERNATIONAL AIRPORT name for airport services. Dkt. 1. Since the outset, SF's Complaint sought damages and injunctive relief against not only the "San Francisco Bay Oakland International Airport" mark, but "any other mark likely to cause confusion with" SF's incontestable mark (Dkt. 1 at 15), which includes the Port's current, inverted version of the Enjoined Mark. Nor could the Port express surprise over SF's concerns with and opposition to the Second Infringing Mark. *See* SAC, ¶ 36 & Ex. F; *see also* Dkt. 113 at 4 (noting, in the Port's portion of the joint letter on SF's motion to compel, that "SFO's own spokesperson showed up to make PR statements against" the Second Infringing Mark when it was announced). The Port has also been on notice of SF's position that the Second Infringing Mark is relevant to this Action since at least August 7, 2025, when SF served discovery relating to the mark. Lauter Decl., ¶ 11. Thereafter, the Port took the position that the only way for SF to obtain that discovery is for SF to bring a claim based on the Port's use of the Second Infringing Mark, and never once suggested that the time to do so had passed. *See* Dkt. 113 at 4. The Port cannot now argue that it would be prejudiced by the same action it accused SF of not taking just a few weeks ago.

Finally, while causing no prejudice, modifying the Scheduling Order to allow SF to file its SAC will promote the orderly administration of this case. Although SF could file a separate lawsuit to address the Port's adoption of the Second Infringing Mark, amending the complaint to add those

claims in this case will ultimately be more efficient and less disruptive. At base, the Port adopted the Second Infringing Mark in response to the preliminary injunction issued in this case. *See* Dkt. 113 at 4 (explaining that, after being enjoined from using the Enjoined Mark, the Port "could not continue to wait months and perhaps years until final resolution of the litigation[,]" and thereafter adopted the Second Infringing Mark). The Second Infringing Mark, like the Enjoined Mark, contains the words "San Francisco," which this Court already found "highly likely to be confusing" (Dkt. 77 at 17) and in the context of airport services, refers to SF. The same purported and actual motivations underlying the Port's adoption of the Enjoined Mark also appear to apply to the Second Infringing Mark, namely, a purported desire to increase awareness of Oakland's airport, on the one hand, and the Port's desire to trade on and dilute the SF Mark, on the other. As also explained above, the Port continues to hide the ball regarding its plans for both names, claiming that doing so will "disclose potential future litigation posture[,]" which suggests that the Second Infringing Mark is inextricably linked to this action. Dkt. 113 at 5. Addressing both names in the same lawsuit, rather than separate lawsuits will thus promote judicial efficiency.

### 3. Refusing the Requested Scheduling Modification Will Prejudice SF

The law favors adjudication of claims on their merits. *See, e.g., Macias v. Cleaver*, 2016 WL 8730687, at *6 (E.D. Cal. Apr. 8, 2016) ("Rule 16's purpose, essentially, is to get cases decided on the merits of issues that are truly meritorious and in dispute, and to manage the cases efficiently and effectively, not to enforce deadlines mindlessly or for no good reason." (cleaned up; quoting *Allen v. Bayer Corp.*, 460 F.3d 1217, 1227 (9th Cir. 2006), and *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005)). "[A] court must [also] be guided by the underlying purpose of Rule 15 to facilitate decision[s] on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Here, it would be unfair to deprive SF of valid claims that did not arise until just a few months ago, and that directly related to issues already being litigated in connection with the current operative complaint, on the technical ground that the deadline to amend has passed, especially given that plenty of time remains for discovery and resolution on the merits.

### B. The Court Should Grant SF Leave to File Its Second Amended Complaint

As SF has shown good cause under Rule 16(b)(4), the Court should next apply the liberal Rule 15(a) standard in assessing whether to permit the amendment. *Eminence Cap.*, 316 F.3d at 1051. Each of the factors that courts consider in deciding a motion for leave amend weight in favor of granting leave. *See supra* at III (listing factors).

#### 1. The Port Will Not Be Prejudiced by the Proposed Amendment

For the reasons already discussed, the Port cannot show that it would be prejudiced by SF's SAC. *See Melingonis v. Rapid Cap. Funding, L.L.C.*, 2017 WL 1550045, at *2 (S.D. Cal. May 1, 2017) ("The party opposing amendment bears the burden of showing prejudice." (citation omitted)) Undue prejudice refers to "substantial prejudice or substantial negative effect" on the opposing party. *Hip Hop Beverage Corp. v. RIC Representacoes Importacao e Comercio Ltda.*, 220 F.R.D. 614, 622 (C.D. Cal. 2003). No substantial prejudice or negative effect exists here. *Supra* at IV.A.2.

#### 2. There Is No Bad Faith or Undue Delay by SF

The Port cannot show any bad faith, dilatory motive, or undue delay on SF's part. "Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early." *LeGrand*, 2024 WL 4969127, at *4 (N.D. Cal. Dec. 3, 2024) (citing *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995)). SF explained the progression of events above and its efforts to work with the Port to understand its plans for and commitment to the Second Infringing Mark – particularly given the Port's slow rollout of the name – to no avail. After unsuccessfully seeking discovery regarding the Port's exploitation of and plans for the Second Infringing Mark and whether its adoption meant that the Port put the Enjoined Mark in the rearview mirror, SF immediately sought the Port's stipulation to amend and then filed this motion. Importantly, as noted above, the close of fact discovery is several months away, and the basis for SF's new claims did not arise until just a few months ago.

#### 3. SF Has Not Previously Been Unsuccessful in Stating Its Proposed New Claims

This is not a case where SF has tried unsuccessfully through repeated amendments to state a claim. SF has only amended the complaint once before, less than a month after filing its initial

complaint, and only to name the Port as a separate defendant. Dkt. 12. This is the first time that SF has sought to amend the Complaint to add claims based on the Port's adoption of the Second Infringing Mark.

### 4. Amendment Would Not Be Futile

Finally, amendment would not be futile. "[A] proposed amendment is futile only if *no set of facts* can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). "Courts rarely deny a motion for leave to amend for reason of futility." *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 2730724, at *5 (N.D. Cal. June 16, 2014).

The SAC's new infringement claims premised on the Port's adoption of the Second Infringing Mark are not futile. The Second Infringing Mark, like the Enjoined Mark, mimics the SF Mark, including by emphasizing SF's name, which the Court recognized "is highly likely to be confusing." Dkt. 77 at 12–13, 17. For these reasons, among others, there is a likelihood of confusion between the Second Infringing Mark and SF Mark. Given these facts, SF should be afforded an opportunity to protect its valuable intellectual property rights. *See Fujifilm Corp.*, 2014 WL 2730724, at *5.

Amending the complaint to add a dilution claim also is not futile. As alleged in the SAC, the SF Mark is "highly distinctive of SF's airport services," has been "extensively advertised and promoted" by SF, and "has a high degree of consumer recognition within the Bay Area, the State of California, and across the United States." SAC ¶¶ 75–77; *see also id.* ¶¶ 18–24. The SF Mark "is accordingly famous within the meaning of both Cal. Bus & Prof Code § 14247 and 15 U.S.C. § 1125(c)." *Id.*, ¶ 80. The fame of the SF Mark is further supported by the Court's recognition in the PI Order that the SF Mark "is widely known among air travelers and within the travel industry" and is commercially strong. Dkt. 77 at 10–11. Moreover, the Second Infringing Mark, like the Enjoined Mark, was transparently adopted to create an association between the Oakland airport and

the SF Mark, and reflects what is now a pattern of behavior undertaken by the Port to diminish the distinctiveness of the SF Mark.  SAC, ¶ 37.  These allegations are sufficient to state a claim for dilution.  *See Jackson Family Wines, Inc. v. Enovation Brands, Inc.*, 2018 WL 6981813, at *4 (C.D. Cal. Aug. 10, 2018) (denying motion to dismiss state dilution claim where plaintiffs alleged that asserted mark was registered, enjoys a high degree of consumer recognition, was famous, and that products sold under the mark had received various accolades).  The Port cannot credibly argue that the SAC fails to state a claim.

## V.   CONCLUSION

For all of the foregoing reasons, SF respectfully requests that the Court grant this motion and modify the current Scheduling Order to allow SF to file its SAC.

Dated: November 12, 2025                                COOLEY LLP

By: */s/ Bobby Ghajar*
     Bobby Ghajar
     John Hemann
     Judd Lauter
     Ryan C. Stevens
     Jessica Williams

*Attorneys for SF and Counterclaim Defendant*
CITY AND COUNTY OF SAN FRANCISCO